DEBORAH BOWDEN HART, as Mother and Natural Guardian of S.J.B.H., a minor, as surviving Child of THOMAS BOWDEN;

JAMES BOWDEN, as surviving Sibling of THOMAS BOWDEN;

JENNIFER HENRY, Individually, as surviving Spouse, and Administratrix of the Estate of SHAWN E. BOWMAN, JR., Deceased;

JENNIFER HENRY, as Mother and Natural Guardian of L.E.B.H., a minor, as surviving Child of SHAWN E. BOWMAN, JR.;

JENNIFER HENRY, as Mother and Natural Guardian of J.S.B.H., a minor, as surviving Child of SHAWN E. BOWMAN, JR.;

SHAWN E. BOWMAN, SR., as surviving Father of SHAWN E. BOWMAN, JR.;

CAROL A. BOWMAN, as surviving Mother of SHAWN E. BOWMAN, JR.;

JAMES E. BOWMAN, as surviving Sibling of SHAWN E. BOWMAN, JR.;

JENNIFER BRENNAN WATERHOUSE, Individually, as surviving Spouse, and Administratrix of the Estate of THOMAS BRENNAN, Deceased;

JENNIFER BRENNAN WATERHOUSE, as Mother and Natural Guardian of T.M.B., a minor, as surviving Child of THOMAS BRENNAN;

JENNIFER BRENNAN WATERHOUSE, as Mother and Natural Guardian of C.A.B., a minor, as surviving Child of THOMAS BRENNAN;

JOHN V. BRENNAN, as surviving Father of THOMAS BRENNAN;

ANITA BRENNAN, as surviving Mother of THOMAS BRENNAN;

JOHN O. BRENNAN, as surviving Sibling of THOMAS BRENNAN;

PAUL BRENNAN, as surviving Sibling of THOMAS BRENNAN;

MARY BETH MAGEE, as surviving Sibling of THOMAS BRENNAN;

MICHAEL BRENNAN, as surviving Sibling of THOMAS BRENNAN;

LAURA BUSTILLO, Individually, as surviving Spouse, and Administratrix of the Estate of MILTON BUSTILLO, Deceased;

LAURA BUSTILLO, as Mother and Natural Guardian of A.B., a minor, as surviving Child of MILTON BUSTILLO;

DAYNA SPORDONE, as surviving step-daughter of MILTON BUSTILLO;

MARGARITA BETTER, as surviving Mother of MILTON BUSTILLO;

DISSA BUSTILLO, Individually, and Personal Representative of the Estate of GILBERTO BUSTILLO, SR., as surviving Father of MILTON BUSTILLO; DISSA BUSTILLO, as surviving Sibling of MILTON BUSTILLO;

HENRY BUSTILLO, as surviving Sibling of MILTON BUSTILLO;

MIRNA BUSTILLO, as surviving Sibling of MILTON BUSTILLO;

GILBERTO BUSTILLO, JR., as surviving Sibling of MILTON BUSTILLO;

ELIZABETH CANDELA, Individually, as surviving Spouse, and Administratrix of the Estate of JOHN ANTHONY CANDELA, Deceased;

JULIETTE CANDELA, as surviving Child of JOHN ANTHONY CANDELA;

JOHN ARTHUR CANDELA, as surviving Child of JOHN ANTHONY CANDELA;

JOSEPH G. CANDELA, Individually, and Executor of the Estate of JOHN C. CANDELA, Deceased, as surviving Father of JOHN ANTHONY CANDELA;

JOSEPH G. CANDELA, Individually, and Executor of the Estate of PHYLLIS CANDELA, Deceased, as surviving Mother of JOHN ANTHONY CANDELA;

JOSEPH G. CANDELA, as surviving Sibling of JOHN ANTHONY CANDELA;

VALERIE SPELLER, as surviving Sibling of JOHN ANTHONY CANDELA;

KAREN ANN MEE, as surviving Sibling of JOHN ANTHONY CANDELA;

JOAN BRADY, as surviving Sibling of JOHN ANTHONY CANDELA;

MARIE CARLINO, Individually, as surviving Spouse, and Executrix of the Estate of EDWARD CARLINO, Deceased;

LISA TORRES, as surviving Child of EDWARD CARLINO;

TERESEA CUNNINGHAM, Individually, as surviving Spouse, and Administratrix of the Estate of MICHAEL J. CUNNINGHAM, Deceased;

TERESA CUNNINGHAM, as Mother and Natural Guardian of W.C., a minor, as surviving Child of MICHAEL J. CUNNINGHAM;

PAUL CUNNINGHAM, as surviving Sibling of MICHAEL J. CUNNINGHAM;

JULIEANNE CUNNIINGHAM, as surviving Sibling of MICHAEL J. CUNNINGHAM;

BERNADETTE T. HAYES, as surviving Sibling of MICHAEL J. CUNNINGHAM;

SEAN CUNNINGHAM, as surviving Sibling of MICHAEL J. CUNNINGHAM;

ANDREW CUNNINGHAM, as surviving Sibling of MICHAEL J. CUNNINGHAM;

KAREN D'AMBROSI, Individually, as surviving Spouse, and Executrix of the Estate of JACK L. D'AMBROSI, JR., Deceased;

JACQUELINE D'AMBROSI, as surviving Child of JACK L. D'AMBROSI;

EMILY D'AMBROSI, as surviving Child of JACK L. D'AMBROSI, JR.;

TINA D'AMBROSI, Executrix of the Estate of JACK L. D'AMBROSI, SR., Deceased, as surviving Father of JACK L. D'AMBROSI, JR.;

DENISE BONOLI, as surviving Sibling of JACK L. D'AMBROSI, JR.;

DEAN J. D'AMBROSI, as surviving Sibling of JACK L. D'AMBROSI, JR.;

MARY DANAHY, Individually, as surviving Spouse, and Executrix of the Estate of PATRICK W. DANAHY, Deceased;

MARY DANAHY, as Mother and Natural Guardian of K.T.D., a minor, as surviving Child of PATRICK W. DANAHY;

MARY DANAHY, as Mother and Natural Guardian of G.A.D, a minor, as surviving Child of PATRICK W. DANAHY;

ALISON M. DANAHY, as surviving Child of PATRICK W. DANAHY;

JOHN DIMEGLIO, Individually, and Administrator of the Estate of DAVID DIMEGLIO, Deceased;

JOHN DIMEGLIO, as surviving Father of DAVID DIMEGLIO;

PATTI S. DIMEGLIO, as surviving Mother of DAVID DIMEGLIO;

DANIEL DIMEGLIO, as surviving Sibling of DAVID DIMEGLIO;

SANDRA FELT, Individually, as surviving Spouse, and Executrix of the Estate of EDWARD P. FELT, Deceased;

KATHRYN FELT, as surviving Child of EDWARD P. FELT;

ADRIENNE FELT, as surviving Child of EDWARD P. FELT;

SHIRELY A. FELT, as surviving Mother of EDWARD P. FELT;

LAWRENCE FELT, as surviving Sibling of EDWARD P. FELT;

GORDON FELT, as surviving Sibling of EDWARD P. FELT;

NANCY FOSTER, Individually, as surviving Spouse, and Administratrix of the Estate of NOEL J. FOSTER, Deceased;

NANCY FOSTER, as mother and Natural Guardian of Megan Foster, an incapacitated adult, as surviving Child of NOEL J. FOSTER;

NICOLE FOSTER, as surviving Child of NOEL J. FOSTER;

BARBARA GALLUCCI, Individually, as surviving Spouse, and Administratrix of the Estate of VINCENZO GALLUCCI, Deceased;

ALYSSA GALLUCCI, as surviving Child of VINCENZO GALLUCCI;

ANGELA GALLUCCI, as surviving Mother of VINCENZO GALLUCCI;

JOSEPH GALLUCCI, as surviving Father of VINCENZO GALLUCCI;

FILOMENA GRACE SANTORELLI, as surviving Sibling of VINCENZO GALLUCCI;

MICHAEL J. GIORDANO, Individually, and Administrator of the Estate of DONNA GIORDANO, Deceased;

MICHAEL J. GIORDANO, as surviving Child of DONNA GIORDANO; DOMENICK D'AMBOLA, Individually, and Personal Representative of the Estate of JESSAMINE D'AMBOLA, Deceased, as surviving Mother of DONNA GIORDANO;

DOMENICK D'AMBOLA, as surviving Father of DONNA GIORDANO;

ELAINE BARRETT, as surviving Sibling of DONNA GIORDANO;

LYZBETH GLICK BEST, Individually, as surviving Spouse, and Administratrix of the Estate of JEREMY GLICK, Deceased;

LYZBETH GLICK BEST, as Mother and Natural Guardian of E.G., a minor, as surviving Child of JEREMY GLICK;

LLOYD GLICK, as surviving Father of JEREMY GLICK;

JOAN GLICK, as surviving Mother of JEREMY GLICK;

JENNIFER GLICK, as surviving Sibling of JEREMY GLICK;

JED GLICK, as surviving Sibling of JEREMY GLICK;

JARED GLICK, as surviving Sibling of JEREMY GLICK;

JOANNA GLICK, as surviving Sibling of JEREMY GLICK;

JONAH GLICK, as surviving Sibling of JEREMY GLICK;

JILL GOLDSTEIN, Individually, as surviving Spouse, and Administratrix of the Estate of STEVEN GOLDSTEIN, Deceased;

JILL GOLDSTEIN, as Mother and Natural Guardian of H.G., a minor, as surviving Child of STEVEN GOLDSTEIN;

HANNA GOLDSTEIN, as surviving Child of STEVEN GOLDSTEIN;

125

ELSA G. STRONG, Individually, and Executrix of the Estate of LINDA K. GRONLUND, Deceased;

DORIS GRONLUND, as surviving Mother of LINDA K. GRONLUND;

BARBARA GRONLUND, Personal Representative of the Estate of ARTHUR G. GRONLUND, Deceased, as surviving Father of LINDA K. GRONLUND;

ELSA G. STRONG, as surviving Sibling of LINDA K. GRONLUND;

EILEEN HANNAFORD, Individually, as surviving Spouse, and Administratrix of the Estate of KEVIN J. HANNAFORD, Deceased;

EILEEN HANNAFORD, as Mother and Natural Guardian of K.J.H., a minor, as surviving Child of KEVIN J. HANNAFORD;

EILEEN HANNAFORD, as mother and Natural Guardian of P.H., a minor, as surviving Child of KEVIN J. HANNAFORD;

BARBARA RACHKO, Individually, as surviving Spouse, and Administratrix of the Estate of BRYAN JACK, Deceased;

JAMES T. JACK, Individually, and Personal Representative of the Estate of JAMES H. JACK, Deceased, as surviving Father of BRYAN JACK;

JAMES T. JACK, Individually, and Executor of the Estate of HELEN M. JACK, Deceased, as surviving Mother of BRYAN JACK;

JAMES T. JACK, as surviving Sibling of BRYAN JACK;

THOMAS S. JOHNSON, Individually, and Administrator of the Estate of SCOTT JOHNSON, Deceased;

THOMAS S. JOHNSON, as surviving Father of SCOTT JOHNSON;

MARGARET ANN JOHNSON, as surviving Mother of SCOTT JOHNSON;

MARGARET WAGER, Executrix of the Estate of THOMAS P. JOHNSON, Deceased, as surviving Sibling of SCOTT JOHNSON;

MARGARET WAGER, as surviving Sibling of SCOTT JOHNSON;

MICHELE JONES FERRELL, Individually, as surviving Spouse, and Executrix of the Estate of DONALD T. JONES, II, Deceased;

MICHELE JONES FERRELL, as Mother and Natural Guardian of D.T.J., a minor, as surviving Child of DONALD T. JONES, II;

TAYLOR N. JONES, as surviving Child of DONALD T. JONES, II;

JUDITH JONES, Individually, and Executrix of the Estate of DONALD T. JONES, SR., as surviving Father of DONALD T. JONES, II;

JUDITH JONES, as surviving Mother of DONALD T. JONES, II;

WILLIAM B. JONES, as surviving Sibling of DONALD T. JONES, II;

LORI KANE, Individually, as surviving Spouse, and Administratrix of the Estate of HOWARD KANE, Deceased;

JASON B. KANE, as surviving Child of HOWARD KANE; ROCHELLE KANE, as surviving Mother of HOWARD KANE;

ADAM KANE, Individually, and Executor of the Estate of BRUCE KANE, Deceased, as surviving Father of HOWARD KANE;

ADAM KANE, as surviving Sibling of HOWARD KANE;

HOLLY ANN TANZ, as surviving Sibling of HOWARD KANE;

ROSE KELLER D'ALESSANDRO, Individually, as surviving Spouse, and Administratrix of the Estate of JOSEPH J. KELLER, Deceased;

ROSE KELLER D'ALESSANDRO, as Mother and Natural Guardian of S.K., a minor, as surviving Child of JOSEPH J. KELLER;

JOSEPH DANIEL KELLER, as surviving Child of JOSEPH J. KELLER;

JUNE SASLOW, as surviving Mother of JOSEPH J. KELLER;

JENNIFER LUTZ, as surviving Sibling of JOSEPH J. KELLER;

H. MICHAEL KEDEN, Executor of the Estate of ADAM J. LEWIS, Deceased;

PATRICIA D. LEWIS, as surviving Spouse of ADAM J. LEWIS;

PATRICIA D. LEWIS, as mother and Natural Guardian of S.L., a minor, as surviving Child of ADAM J. LEWIS;
REILLY LEWIS, as surviving Child of ADAM J. LEWIS;
ARTHUR LEWIS, as surviving Child of ADAM J. LEWIS;
CAROLINE LEWIS, as surviving Child of ADAM J. LEWIS;
GERALDING LEWIS, as surviving Mother of ADAM J. LEWIS;
PAMELA PASSERETTA, as surviving Sibling of ADAM J. LEWIS;
KATHRYN HEBERT, as surviving Sibling of ADAM J. LEWIS;

CAMERON F. MACRAE, III, Individually, and Administrator of the Estate of CATHERINE F. MACRAE, Deceased;
CAMERON F. MACRAE, III, as surviving Father of CATHERINE F. MACRAE;
ANN B. MACRAE, as surviving Mother of CATHERINE F. MACRAE;
ANN C. MACRAE, as surviving Sibling of CATHERINE F. MACRAE;

AUDREY MAGNUSON, Individually, as surviving Spouse, and Executrix of the Estate of RONALD E. MAGNUSON, Deceased;
JEFFREY A. MAGNUSON, as surviving Child of RONALD E. MAGNUSON;
SHERYL A. MAGNUSON, as surviving Child of RONALD E. MAGNUSON;
KNUT MAGNUSON, as surviving Sibling of RONALD E. MAGNUSON;

KATHERINE MAHER, Individually, as surviving Spouse, and Executrix of the Estate DANIEL L. MAHER, Deceased;
DANIEL R. MAHER, as surviving Child of DANIEL L. MAHER;
JOSEPH MAHER, as surviving Child of DANIEL L. MAHER;
JAMES MAHER, Individually, and Executor of the Estate of JEANNE MAHER, Deceased, as surviving Mother of DANIEL L. MAHER;
JAMES MAHER, as surviving Sibling of DANIEL L. MAHER;

JEANNE BRANDOFINO, as surviving Sibling of DANIEL L. MAHER;

CHRISTINA MAHER, Executrix of the Estate of RAYMOND MAHER, JR., Deceased, as surviving Sibling of DANIEL L. MAHER;

MARGARET MEYER, Individually, as surviving Spouse, and Executrix of the Estate of DAVID R. MEYER, Deceased;

HEIDI MENNONA, as surviving Child of DAVID R. MEYER;

HEATHER VULPONE, as surviving Child of DAVID R. MEYER;

DAWN MEYER-FUCHS, as surviving Child of DAVID R. MEYER;

KRISTINE MEYER, as surviving Sibling of DAVID R. MEYER;

CHARLES MEYER, as surviving Sibling of DAVID R. MEYER;

ELLEN ROBB and FRANK MONTANARO, Individually, and Co-Administrators of the Estate of KRISTEN MONTANARO, Deceased;

ELLEN ROBB, as surviving Mother of KRISTEN MONTANARO;

FRANK MONTANARO, as surviving Father of KRISTEN MONTANARO;

JAMIE MONTANARO, as surviving Sibling of KRISTEN MONTANARO;

KAREN MONTANARO, as surviving Sibling of KRISTEN MONTANARO;

BETH K. MURPHY, Individually, as surviving Spouse, and Administratrix of the Estate of KEVIN J. MURPHY, Deceased;

CONNOR J. MURPHY, as surviving Child of KEVIN J. MURPHY;

CAITLYN B. MURPHY, as surviving Child of KEVIN J. MURPHY;

SALLY F. RYAN, Individually, and Personal Representative of the Estate of TIMOTHY F. MURPHY, JR., Deceased, as surviving Father of KEVIN J. MURPHY;

SALLY F. RYAN, as surviving Mother of KEVIN J. MURPHY;

MICHAEL MURPHY, as surviving Sibling of KEVIN J. MURPHY;

TIMOTHY P. MURPHY, as surviving Sibling of KEVIN J. MURPHY;

JOHN F. MURPHY, as surviving Sibling of KEVIN J. MURPHY;

MARY BETH DOUGHERTY, as surviving Sibling of KEVIN J. MURPHY;


ARLENE ORSINI, Individually, as surviving Spouse, and Executrix of the Estate of RONALD ORSINI, Deceased;

DANIELLE ORSINI PANDOLFI, as surviving Child of RONALD ORSINI;

ROBERT ORSINI, as surviving Sibling of RONALD ORSINI;

BARBARA STANG, as surviving Sibling of RONALD ORSINI;


JOAN PARKER, Individually, as surviving Spouse, and Administratrix of the Estate of PHILIP LACEY PARKER, Deceased;

STEPHANIE PARKER, as surviving Child of PHILIP LACEY PARKER;


JENNIFER PRICE-SALKEVER, Individually, and Administratrix of the Estate of JEAN H. PETERSON, Deceased;

JENNIFER PRICE-SALKEVER, as surviving Child of JEAN H. PETERSON;

CATHERINE AUSTIN STOVER, as surviving Child of JEAN H. PETERSON;

GRACE PRICE SHERWOOD, as surviving Child of JEAN H. PETERSON;

RICHARD HOADLEY, Individually, and Executor of the Estate of WALTER E. HOADLEY, Deceased, as surviving Father of JEAN H. PETERSON;

RICHARD HOADLEY, Individually, and Executor of the Estate of HELEN M. HOADLEY, Deceased, as surviving Mother of JEAN H. PETERSON;

RICHARD HOADLEY, as surviving Sibling of JEAN H. PETERSON;


MARGARET ECKERT, Personal Representative of the Estate of SEAN ROONEY, Deceased;

MARGARET ECKERT, Individually, and Executrix of the Estate of BEVERLY ECKERT, Deceased, as surviving Spouse of SEAN ROONEY;

CYNTHIA BLEST, Individually, and Executrix of the Estate of ROSEMARY ROONEY, Deceased, as surviving Mother of SEAN ROONEY;

CYNTHIA BLEST, as surviving Sibling of SEAN ROONEY;

MAURA ROONEY, as surviving Sibling of SEAN ROONEY;

SHEILA ROONEY, as surviving Sibling of SEAN ROONEY;

BRENDAN ROONEY, as surviving Sibling of SEAN ROONEY;

BRIAN ROONEY, as surviving Sibling of SEAN ROONEY;

PATRICIA RYAN, Individually, as surviving Spouse, and Executrix of the Estate of JOHN J. RYAN, Deceased;

LAURA RYAN, as surviving Child of JOHN J. RYAN;

KRISTEN RYAN, as surviving Child of JOHN J. RYAN;

COLIN RYAN, as surviving Child of JOHN J. RYAN;

JOHN SANDERS, Individually, and Administrator of the Estate of STACEY SANDERS, Deceased;

JOHN SANDERS, as surviving Father of STACEY SANDERS;

MARTHA SANDERS, as surviving Mother of STACEY SANDERS;

LAURA SANDERS WYATT, as surviving Sibling of STACEY SANDERS;

TOMOKO T. SCHLAG, Individually, as surviving Spouse, and Executrix of the Estate of STEVEN F. SCHLAG, Deceased;

DAKOTA I. SCHLAG, as surviving Child of STEVEN F. SCHLAG;

GARRETT M. SCHLAG, as surviving Child of STEVEN F. SCHLAG;

SIERRA A. SCHLAG, as surviving Child of STEVEN F. SCHLAG;

DONALD SCHLAG, as surviving Father of STEVEN F. SCHLAG;

PATRICIA SCHLAG, as surviving Mother of STEVEN F. SCHLAG;

JEAN NEBBIA, as surviving Sibling of STEVEN F. SCHLAG;
ELLEN HUGHES, as surviving Sibling of STEVEN F. SCHLAG;

SUZANNE SISOLAK PENAVIC, Individually, as surviving Spouse, and Administratrix of the Estate of JOSEPH M. SISOLAK, Deceased;
ELLEN SISOLAK, Individually, and Executrix of the Estate of PAUL SISOLAK, Deceased, as surviving Father of JOSEPH M. SISOLAK;
ANNA J. POWELL, as surviving Mother of JOSEPH M. SISOLAK;
TERESA RELLER, as surviving Sibling of JOSEPH M. SISOLAK;
YVONNE SISOLAK, Individually, and Executrix of the Estate of THOMAS P. SISOLAK, Deceased, as surviving Sibling of JOSEPH M. SISOLAK;

MARY SMITH, Individually, as surviving Spouse, and Administratrix of the Estate of DANIEL SMITH, Deceased;
ELIZABETH SMITH, as surviving Child of DANIEL SMITH;
MICHAEL SMITH, as surviving Child of DANIEL SMITH;
MCCARTHY SMITH, as surviving Sibling of Daniel Smith, Deceased, SEAN PATRICK SMITH, as surviving Sibling of DANIEL SMITH;
SUSAN HICKS, as surviving Sibling of DANIEL SMITH;

MICHELE TANNER, Individually, as surviving Spouse, and Executrix of the Estate of MICHAEL TANNER, Deceased;
SASHA TANNER, as surviving Child of MICHAEL TANNER; GIANNA TANNER, as surviving Child of MICHAEL TANNER;
RENEE ABBATE, Individually, and Executrix of the Estate of MARY TANNER, Deceased, as surviving Mother of MICHAEL TANNER;
RENEE ABBATE, as surviving Sibling of MICHAEL TANNER;
KENNETH C. TANNER, as surviving Sibling of MICHAEL TANNER;

MARIA MARASCIULO, as surviving Sibling of MICHAEL TANNER;
NICOLE TANNER-D'AMBROSIO, as surviving Sibling of MICHAEL TANNER;

JENNIFER TARANTINO, Individually, as surviving Spouse, and Executrix of the Estate of KENNETH JOSEPH TARANTINO, Deceased;
JENNIFER TARANTINO, as Mother and Natural Guardian of J.J.T., a minor, as surviving Child of KENNETH JOSEPH TARANTINO;
KENNETH JAMES TARANTINO, as surviving Child of KENNETH JOSEPH TARANTINO;

AMY C. VASEL, Individually, as surviving Spouse, and Administratrix of the Estate of SCOTT VASEL, Deceased;
AMY C. VASEL, as Mother and Natural Guardian of M.J.V., a minor, as surviving Child of SCOTT VASEL;
RYAN A. VASEL, as surviving Child of SCOTT VASEL;
JANYNE V. DEMBICKI, Individually, and Executrix of the Estate of CHARLES VASEL, Deceased, as surviving Father of SCOTT VASEL;
JANYNE V. DEMBICKI, Individually, and Executrix of the Estate of MYNDA VASEL, Deceased, as surviving Mother of SCOTT VASEL;
JANYNE V. DEMBICIKI, as surviving Sibling of SCOTT VASEL;

KATHLEEN M. WISNIEWSKI, Individually, as surviving Spouse, and Administratrix of the Estate of ALAN L. WISNIEWSKI, Deceased;
JESSICA M. WISNIEWSKI, as surviving Child of ALAN L. WISNIEWSKI;
ERICA C. WISNIEWSKI, as surviving Child of ALAN L. WISNIEWSKI;
MATTHEW P. WISNIEWSKI, as surviving Child of ALAN L. WISNIEWSKI;

CHIEMI YORK, Individually, as surviving Spouse, and Administratrix of the Estate of KEVIN P. YORK, Deceased;
CHIEMI YORK, as Mother and Natural Guardian for A.Y., a minor, as surviving Child of KEVIN P. YORK;

CONNOR YORK, as surviving Child of KEVIN P. YORK;
JOHN YORK, as surviving Father of KEVIN P. YORK;
TIMOTHY YORK, as surviving Sibling of KEVIN P. YORK;

ROSEANN ZISA, Individually, as surviving Spouse, and Administratrix of the Estate of SALVATORE ZISA, Deceased;
CHRISTINA ZISA, as surviving Child of SALVATORE ZISA;
JOSEPH ZISA, as surviving Child of SALVATORE ZISA;
ROSEMARIE MARTIE, Individually, and Executrix of the Estate of JOSEPH ZISA, Deceased, as surviving Father of SALVATORE ZISA;
JOSEPHINE ZISA, as surviving Mother of SALVATORE ZISA;
ANTHONY ZISA, as surviving Sibling of SALVATORE ZISA;
JANE PRESTO, as surviving Sibling of SALVATORE ZISA;
PHYLLIS A. KELLY, as surviving Sibling of SALVATORE ZISA;

--------------------------------------------------------------------x
CHERYL SCHNEIDER, Individually and
as surviving spouse and the Executrix of the
ESTATE OF IAN SCHNEIDER, Deceased;

NANCY DIMINO, Individually and
as surviving spouse and as the Executrix of
the ESTATE OF STEPHEN DIMINO, Deceased;

MATILDE SALCEDO, Individually and as the
as the surviving spouse and the Personal Representative
of the ESTATE OF ESMERLIN SALCEDO, Deceased;

SUSAN CONNORS, Individually and
as surviving spouse and as the Executrix of the
ESTATE OF JONATHAN M. CONNORS, Deceased;
GERARD JEAN BAPTISTE, Individually, as surviving Parent,
and as the Personal Representative of the
ESTATE OF GERARD BAPTISTE, Deceased;

**Jonathan C. Reiter Law Firm, PLLC**

134

DEBORA ANN CRISMAN, Indivdually as surviving
Parent, and as the Personal Representative of the
ESTATE OF DANIEL HAL CRISMAN, Deceased;

                                        Plaintiffs,

v.

KINGDOM OF SAUDI ARABIA,

                                        Defendant.
------------------------------------------------------------------X

## COMPLAINT

Plaintiffs, by and through their undersigned counsel, hereby allege:

1.      Plaintiffs are the surviving spouses, children, parents, siblings and estate

representatives of the victims murdered in the September 11, 2001 terrorist attacks on the United

States (the "September 11th Attacks") and individuals who suffered personal injuries in the

September 11th Attacks.

2.      Plaintiffs bring this action against the defendant Kingdom of Saudi Arabia under

the 2016 Justice Against Sponsors of Terrorism Act (JASTA), which Congress enacted over a

Presidential veto

> to provide civil litigants with the broadest possible basis, consistent with the Constitution
> of the United States, to seek relief against…foreign countries, wherever acting and
> wherever they may be found, that have provided material support, directly or indirectly,
> to foreign organizations or persons that engage in terrorist activities against the United
> States…

28 U.S.C. §2333 note; as a result, JASTA establishes federal court jurisdiction over the tortious

acts of a foreign state anywhere in the world that cause injury and death in a terrorist attack in

the United States.

3.      Plaintiffs seek such relief against the Kingdom of Saudi Arabia for the attributable

acts of the Kingdom's governmental Ministries and bodies, alter-egos, and officers, employees

135

and agents acting within the scope of their office, employment or agency by knowingly providing material support and resources to the al Qaeda terrorist organization and facilitating the September 11th Attacks, in that, as set forth in detail herein, they:

a.      raised, laundered and paid substantial financial support to al Qaeda to fund its budget and terrorist activities, including the preparation and execution of the September 11th Attacks;

b.      funded the terrorist training camps in Afghanistan where al Qaeda indoctrinated and taught their hijackers the skills they used to carry out the September 11th Attacks;

c.      provided critical logistical support and resources to al Qaeda around the world, funding safe houses, furnishing false passport and travel documents, transferring al Qaeda money, weapons and equipment across international borders and other assistance, all of which enabled al Qaeda to conduct the September 11th Attacks;

d.      actively supported al Qaeda in its final preparations for the September 11th Attacks through a network of the Kingdom's officers, employees and/or agents who met with and aided the hijackers, providing them with money, cover, advice, contacts, transportation, assistance with language and U.S. culture, identification, access to pilot training and other material support and resources.

4.      The defendant Kingdom of Saudi Arabia is a foreign state within the meaning of 28 U.S.C. §1603(a), and "Saudi Arabia" as used hereinafter refers to the Kingdom of Saudi Arabia, its government Ministries and other bodies (including but not limited to its Ministry of Islamic Affairs, Ministry of the Interior, Ministry of Foreign Affairs and Embassies throughout the world), its alter-egos, and its officials, employees, or agents not only in the United States but throughout the world, while acting within the scope of their office, employment, or agency.

5.      The defendant Kingdom of Saudi Arabia is subject to jurisdiction pursuant to 28 U.S.C. §1330 and JASTA's 28 U.S.C. §1605B, in that, as set forth in detail below, this action: seeks money damages against the Kingdom of Saudi Arabia for injury and death caused by the September 11th Attacks, which constitute an act of "international terrorism" in the United States as defined in 18 U.S.C. §2331; alleges that the September 11th Attacks and the resulting injuries and deaths were caused by a tortious act or acts of Saudi Arabia, by providing material support and resources to and facilitating the al Qaeda leaders, planners and hijackers responsible for the September 11th Attacks, and that such act or acts constitute more than mere negligence, and were intentional, knowing, reckless, willful and/or grossly negligent.

6.      The defendant Kingdom of Saudi Arabia is also subject to jurisdiction pursuant to 28 U.S.C. §1330 and 28 U.S.C. §1605(a)(5), in that, as set forth in detail below, this action seeks money damages against the Kingdom of Saudi Arabia for injury and death occurring in the United States and caused by the tortious act or omission of the Kingdom of Saudi Arabia and/or one or more of its officials or employees acting within the scope of their office or employment.

7.      Venue in this District is proper pursuant to 28 U.S.C. §§1391(b)(2) and 1391(f)(1), as a substantial part of the events giving rise to this litigation occurred within this District, as well as 28 U.S.C. §2334(a).

8.      The plaintiffs who are the estate representatives of a decedent are listed as such in the caption, have been duly appointed by a court prior to the commencement of this action and have the legal authority to bring this action to recover the damages set forth herein, including wrongful death damages on behalf of all legally entitled beneficiaries of the decedent and survival damages for the decedent's personal injuries.

9.      For years prior to and on September 11, 2001, Saudi Arabia established, owned,

operated and controlled a series of state-run "charity" organizations, namely

- the Muslim World League (MWL),
- the International Islamic Relief Organization (IIRO),
- the Rabita Trust,
- the World Assembly of Muslim Youth (WAMY),
- the Benevolence International Foundation (BIF),
- the al Haramain Islamic Foundation (AHIF),
- the Saudi High Commission for Relief of Bosnia and Herzegovina (SHC),
- the Saudi Joint Relief Committee for Kosovo and Albania (SJRC), and
- the Saudi Red Crescent (SRC),

and these organizations are referred to hereinafter as "Saudi Arabia's charity organizations" and,

as further described herein, each of these organizations (i) were so closely related to Saudi

Arabia that they must be considered as part of Saudi Arabia, and/or (ii) were government agents

of Saudi Arabia and/or (iii) were alter-egos of Saudi Arabia, because Saudi Arabia: established,

controlled, operated and regulated each organization through its King, Council of Ministers, the

Supreme Council of Islamic Affairs, the Council of Senior Ulema, Ministry of Islamic Affairs,

Ministry of Foreign Affairs, other Ministries and bodies and Saudi Arabia's Embassies

throughout the world; maintained significant, repeated and extensive control of the day-to-day

operations of each organization; provided each organization with virtually all of its funding and

determined how its funds were distributed; established guidelines, plans and policies that each

organization was required to follow; appointed Saudi Arabia officials and employees to the lead

positions within each organization; staffed each organization with Saudi Arabia's officials and

employees; hired, fired and directed each organization's officers and employees; required each

organization to obtain its approval for ordinary business decisions, including purchases, the

locations of its operations and offices, banking, budgeting and grant decisions; used each

organization's personnel and property as its own; ignored the separate legal status, if any, of each

organization; treated each organization as a part of Saudi Arabia; used each organization to

perform its core governmental functions, including foreign affairs and the advancement of Saudi

Arabia's state religion of Wahhabism throughout the world; and operated, controlled and used

each organization in such a manner that it would work a fraud or injustice to regard the

organization as a legal entity separate from Saudi Arabia.

## I.
### Saudi Arabia's knowledge of
### al Qaeda and its terrorist agenda against
### the United States prior to September 11, 2001

10.     In 1986-89, Saudi Arabia's MWL, IIRO, WAMY, BIF, SRC and AHIF

collaborated with Osama Bin Laden to open offices in Pakistan and Afghanistan as a means to

establish al Qaeda and provide material support and resources for its terrorist operations, and a

top ranking Saudi Arabia official together with other officials, employees and agents of Saudi

Arabia joined in this effort including:

- SRC Director-Pakistan Wael Jelaidan, a close friend and schoolmate of Osama Bin
  Laden, who along with the SRC's Aqeel Abdulaziz al Aqeel, founded the AHIF in
  Pakistan in 1988 as a division of the SRC and in 1989 took charge of the MWL/IIRO
  office in Pakistan;

- MWL's Mohamed Khalifa, Osama Bin Laden's brother-in-law, who established the
  offices of the MWL and IIRO in Peshawar, Pakistan in 1986 using funds provided by
  Osama Bin Laden, pursuant to the instructions of Abdullah Naseef, then MWL's
  Secretary General;

- WAMY's Adel Batterjee, a close friend of Osama Bin Laden who in 1988-89 established
  the operations of the WAMY and BIF (then called Lajnat al Bir al Islamiyah, or LBI) in
  Pakistan;

- a top ranking Saudi Arabia official who controlled the Afghan Jihad Support Committee
  and used it to provide funding for al Qaeda through the various charities, in conjunction
  with a 1988 speech of Osama Bin Laden in Saudi Arabia that solicited contributions to
  that Committee;

- MWL's Naseef, who met at MWL's office in Peshawar, Pakistan in 1988 with Osama Bin Laden and discussed how the MWL could provide operational support for al Qaeda, including but not limited to using MWL's offices as a base for al Qaeda operations and providing covert assistance to al Qaeda operatives to cross international borders;

and with the material support and resources provided by Saudi Arabia's officials, employees and agents, and its MWL, IIRO, WAMY, BIF, SRC and AHIF, Osama Bin Laden, Wael Jelaidan, Mohamed Khalifa, Abdullah Naseef, Adel Batterjee and others founded al Qaeda in Pakistan in late 1988 - early 1989.

11.     At all relevant times mentioned herein, Saudi Arabia: adopted an extremist version of Islam, Wahhabism, as the state religion; declared that its propagation was a core function of the state; and, sought to advance it around the world through Saudi Arabia's Ministry of Islamic Affairs, Embassies, Saudi Arabia's charity organizations and other government agents.

12.     As detailed herein, Saudi Arabia knew from at least the early 1990s that al Qaeda had begun to pursue and carry out terrorist attacks against the United States, and used Wahhabism to justify its campaign of anti-American violence, but Saudi Arabia's charitable organizations and Saudi Arabia's officials, employees and agents continued to provide material support and resources for al Qaeda through and including September 11, 2001.

13.     From 1988 to 1990, Saudi Arabia knew that Osama Bin Laden made public speeches at his family's mosque in Jeddah and other locations in Saudi Arabia where he declared that the United States was the primary target of al Qaeda; as an example, in 1990 he stated that:

The Americans won't stop their support of Jews in Palestine until we give them a lot of blows.  They won't stop until we do jihad against them.

14.     For years prior to September 11, 2001, as further detailed herein, Saudi Arabia, including but not limited to its Embassies, its Ministry of Islamic Affairs, its Ministry of the

Interior and Saudi Arabia's charity organizations, had a relationship and communications with

Osama Bin Laden and al Qaeda's operatives, associates and activities throughout the world.

15.     For at least a decade prior to and on September 11, 2001, as detailed herein, Saudi

Arabia knew that numerous officials, employees and agents of Saudi Arabia were al Qaeda

operatives or sympathizers who actively supported al Qaeda's terrorist agenda against the United

States.

16.     For years prior to and including September 11, 2001, Saudi Arabia's passport

offices and authorities applied a secret marker/indicator to the passports of persons who had

known ties to al Qaeda, and this marker/indicator was found in the passports of at least three of

the 19 hijackers responsible for the September 11th Attacks, including Nawaf al Hazmi and

Khalid al Mihdhar, and others who assisted them, including Omar al Bayoumi, a Saudi Arabia

employee and agent who aided the hijackers in 2000-2001 in California, as detailed herein, and

information about this marker/indicator was not known by United States consular officers,

immigration or law enforcement agencies.

17.     For at least a decade prior to and on September 11, 2001, as detailed herein, Saudi

Arabia had knowledge of the violent goals of al Qaeda and its leader Osama Bin Laden to wage

terrorist attacks against the United States and its citizens and that al Qaeda had engaged in

numerous terrorist attacks and attempted attacks against United States targets.

18.     For at least a decade prior to and on September 11, 2001, support for al Qaeda's

terrorist agenda against the United States was pervasive among officials and employees of Saudi

Arabia, and Saudi Arabia was duplicitous: it presented a public face to the United States and

other Western countries of a nation fighting al Qaeda and terrorism while at the same time, as

detailed herein, Saudi government actors gave al Qaeda substantial material support and resources.

19.     For many years prior to and on September 11, 2001, Saudi Arabia knew of many attempts by al Qaeda to conduct terrorist attacks directed against the United States, including the December 1992 attempt by al Qaeda to attack the United States by bombing two hotels in Sanaa, Yemen where al Qaeda thought U.S. military personnel were staying.

20.     On or shortly after February 26, 1993, Saudi Arabia knew that terrorists affiliated with al Qaeda exploded a truck bomb in the parking garage of the World Trade Center in New York City, with the intent to topple one of the towers into the other, resulting in 6 deaths and over 1,000 injuries.

21.     In or about October 1993, Saudi Arabia knew that al Qaeda was involved in the attack on U.S. military forces in Somalia that resulted in 18 deaths and numerous injuries to U.S. soldiers.

22.     From at least early in 1995, Saudi Arabia knew of an al Qaeda plan to attack the United States called the "Bojinka" plot to simultaneously bomb 10 or more commercial aircraft operated by United States carriers over the Pacific and that al Qaeda did a test run of that plot on December 11, 1994, when it bombed a Philippine Airlines flight, killing one passenger and injuring numerous others.

23.     From at least 1996 through and on September 11, 2001, the United States shared with Saudi Arabia specific information about the threat of al Qaeda terrorist attacks against the United States, including the specific threat of hijacking by al Qaeda of commercial aircraft operated by U.S. carriers.

24.     Specifically, from the first half of 1996 through and including September 11, 2001, the United States urgently told Saudi Arabia that it needed background and financial information and other assistance regarding al Qaeda's leader Osama Bin Laden in order to disrupt or interdict the threat of al Qaeda terrorist attacks against the United States and its nationals.

25.     In May 1996, Saudi Arabia knew that Osama Bin Laden had to move al Qaeda's base of operations from Sudan to Afghanistan and that Osama Bin Laden's flight from Sudan to Afghanistan received air traffic control services and clearance from Saudi Arabia to overfly its territory.

26.     In August 1996, Saudi Arabia knew that al Qaeda through its leader Osama Bin Laden declared and publicized a fatwa for jihad urging the use of terrorism to attack the United States and United States citizens.

27.     From 1996 through and including September 11, 2001, Saudi Arabia knew that the Taliban rulers in Afghanistan were providing a safe haven for al Qaeda, Osama Bin Laden and their terrorist operations, including the Afghan terrorist training camps and safe houses described herein.

28.     In February 1998, Saudi Arabia knew that al Qaeda through its leader Osama Bin Laden declared and publicized a second fatwa for jihad urging the use of terrorism to attack the United States and its nationals in all nations throughout the world.

29.     For at least one year prior to and including August 7, 1998, Saudi Arabia's AHIF knew that al Qaeda was planning to conduct a terrorist attack against the United States Embassies in Kenya and Tanzania, and had specific information that the planned attack against the U.S. Embassy in Kenya would be a suicide bombing carried out by crashing a vehicle into

the Embassy gate and Saudi Arabia's AHIF and IIRO provided material support and resources to al Qaeda to carry out the attack.

30.     On or shortly after August 7, 1998, Saudi Arabia knew that al Qaeda carried out the twin suicide bombing attacks of the United States Embassies in Kenya and Tanzania that resulted in over 200 deaths.

31.     On or shortly after August 20, 1998, Saudi Arabia knew that President Clinton issued Executive Order 13099, defining al Qaeda and its leader Osama Bin Laden as terrorists because of their role in the U.S. Embassy bombings and ordered the U.S. military to conduct a cruise missile strike to destroy al Qaeda terrorist bases in Afghanistan.

32.     On or shortly after October 8, 1999, Saudi Arabia knew, from public announcements made by the U.S. government and other sources, that al Qaeda was formally designated by the U.S. Secretary of State under section 219 of the Immigration and Nationality Act, 8 U.S.C. §1189, as a Foreign Terrorist Organization, and Saudi Arabia subsequently knew that the designation of al Qaeda as a Foreign Terrorist Organization remained in force from October 1999 through and including September 11, 2001.

33.     In or shortly after December 1999, Saudi Arabia knew that al Qaeda prepared and attempted to execute a "millennium" bomb attack on the United States, planned for January 1, 2000 at the Los Angeles International Airport, but was thwarted by U.S. and Canadian authorities.

34.     On or shortly after October 12, 2000, Saudi Arabia knew that al Qaeda bombed the U.S.S. Cole while it was being refueled in Yemen, resulting in 17 deaths and numerous injuries to U.S. Navy sailors.

144

35.    From May 2001 to September 11, 2001, Saudi Arabia knew that the United States made urgent requests for assistance from Saudi Arabia concerning an individual in Saudi Arabia who was in contact with a senior al Qaeda operational coordinator concerning an upcoming al Qaeda terrorist attack against the United States; a high level U.S. government officer later stated that had those requests been heeded, the September 11th Attacks could have been avoided.

## II.
### Saudi Arabia's tortious acts were a proximate cause of the September 11th Attacks

36.    The planning for the September 11th Attacks began in 1996 with initial discussions among al Qaeda members of the feasibility of hijacking planes and crashing them into landmarks in the United States and Osama Bin Laden's suggestion that large passenger aircraft be used as the mode of attack; between 1997 and 1999, al Qaeda reconnaissance teams travelled to the U.S. to look at potential targets; in November 1999, a "dry run" was conducted on a U.S. passenger flight to test cockpit security; during 1999 and 2000, the hijackers were recruited by al Qaeda, mainly in Saudi Arabia, and then indoctrinated and trained at various terrorist camps in Afghanistan; in January 2000, the first two hijackers arrived in the United States, and in 2000 and 2001 additional hijackers came to the United States, received flight training and made their final preparations, and then assembled in September 2001 to conduct the attacks.

37.    On September 11, 2001, the 19 al Qaeda hijackers violently broke into the cockpits of four commercial airliners and piloted those planes as weapons in a coordinated terrorist attack on the United States and its citizens, flying two planes into the World Trade Center Towers in New York and a third plane into the Pentagon in Virginia; the fourth plane

crashed in Shanksville, Pennsylvania as the passengers fought with the hijackers over control of the aircraft and thwarted their plans to destroy the U.S. Capitol or White House.

38.     As detailed herein, at each stage of al Qaeda's planning and execution leading up to the September 11th Attacks, Saudi Arabia knowingly provided al Qaeda with support, financing and resources that were material, substantial and critical to the success of the September 11th Attacks.

**A.  Saudi Arabia's direct funding of al Qaeda**

39.     During the decade prior to and including September 11, 2001, Saudi Arabia was responsible for substantial funding of al Qaeda that was vital to the operation of that terrorist organization and its preparations for and realization of the September 11th Attacks, including but not limited to the following:

a.     Saudi Arabia's MWL, IIRO, Rabita Trust, WAMY, BIF, AHIF, SJC, SHC and SRC made substantial financial contributions to al Qaeda, as confirmed by U.S., French, German, Swiss and Saudi Arabia government reports, United Nations reports, the statement of al Qaeda's Zacarias Moussaoui and other sources;

b.     top ranking Saudi Arabia officials made substantial financial contributions to al Qaeda;

c.     from 1995 through and including September 11, 2001, Saudi Arabia, acting through its employees and agents, including Khalid al Suwailem, a diplomat and senior official of the Ministry of Islamic Affairs at the Saudi Arabia Embassy in Washington, D.C. and Omar Abdi Mohamed, employed by Saudi Arabia's Ministry of Islamic Affairs with the job title of "Propagator": fraudulently sought and obtained a visa for Mohamed to enter the United States as a "religious worker" and intentionally disguised the fact that Mohamed was a Saudi Arabia

employee; had Mohamed form and operate the Western Somali Relief Agency (WSRA), a California non-profit corporation in San Diego, California; and, used WSRA in a scheme to send substantial funds to al Qaeda;

d.      from 1998 through and including September 11, 2001, Saudi Arabia, acting through its aforesaid employees and agents of Saudi Arabia's Ministry of Islamic Affairs: (i) fraudulently obtained and/or maintained 26 U.S.C. §501(c)(3) charitable status for WSRA from the Internal Revenue Service, despite the fact that WSRA never performed any charitable acts; (ii) used WSRA to receive money from various sources affiliated with al Qaeda, including but not limited to the AHIF, and (iii) had WSRA send over $350,000 to al Qaeda, via Dahab Shil, a money transfer agency used by al Qaeda, including but not limited to the Dahab Shil office in Karachi, Pakistan, which was founded, staffed and controlled by al Qaeda;

e.      during the same time period that Saudi Arabia's employees and agents sent over $350,000 via WSRA to al Qaeda, including through the Dahab Shil office in Karachi, Pakistan, Khalid Sheikh Mohamed, the mastermind of the September 11th attacks, was located in Karachi and was handing and sending a total of approximately $400,000 in cash to the hijackers which constituted the primary funding for the September 11th Attacks;

f.      from 1998 through and including September 11, 2001, Saudi Arabia, acting through its employees and agents, including but not limited to Fahad al Thumairy, funded al Qaeda by sending substantial sums of money from Saudi Arabia through the King Fahad Mosque, also known as the Ibn Tamiyah Mosque, in Culver City, California, to al Qaeda, or through various organizations, individuals and/or private businesses, including but not limited to charities and/or other businesses, to al Qaeda;

g.      from 1998 through and including September 11, 2001, Fahad al Thumairy: (i) was

an accredited diplomat working at Saudi Arabia's Los Angeles Consulate for Saudi Arabia's

Ministry of Islamic Affairs; (ii) reported to more senior officials of Saudi Arabia's Ministry of

Islamic Affairs at Saudi Arabia's Embassy in Washington, D.C.; (iii) had been selected for his

job in Los Angeles by Saudi Arabia's Head of Islamic Affairs in Washington, D.C.; and (iv) was

an extremist Imam at the King Fahad Mosque, which was founded and funded by Saudi Arabia;

h.      from 1998 through and including September 11, 2001, Saudi Arabia funded al

Qaeda by sending substantial sums of money through the Islamic Center of San Diego, or

through various organizations, individuals and/or private businesses, including but not limited to

U.S.-based Somali charities and/or other businesses, to al Qaeda;

i.      Saudi Arabia hired and paid employees and agents, including Omar al-Bayoumi

and Osama Basnan, who Saudi Arabia knew were al Qaeda operatives and/or sympathizers and

who provided al Qaeda with substantial assistance to prepare for the September 11th Attacks;

j.      Bayoumi was employed by Saudi Arabia from the 1970s, and starting in 1995

through and including September 11, 2001, he was assigned by Saudi Arabia to work in San

Diego and was compensated by Saudi Arabia through various "ghost jobs" that Bayoumi never

actually performed;

k.      in 2000, Bayoumi had a ghost job as a "Senior DSS Programmer" and Saudi

Arabia was paying him $3,000 per month when, as detailed herein, he was instructed by two

officials from Saudi Arabia's Ministry of Islamic Affairs to provide substantial assistance for

two al Qaeda hijackers in California, and Saudi Arabia paid Bayoumi an additional $4,000 per

month, categorized as "Other Allowances," that was tied to his work to assist those hijackers and

raised his total compensation to $7,000 per month from April 2000 through September 2001,