a.       in a pleading previously filed before this Court, the SJRC specifically asserted that it was immune from suit because of its status as a foreign sovereign, namely Saudi Arabia;

     b.       Dr. Abdulrahman al Swailem, President of the SJRC, provided affidavit testimony that the SJRC was created in 1999 pursuant to a High Order issued by the King of Saudi Arabia upon the recommendation of the Council of Ministers of Saudi Arabia and has "always functioned as a political subdivision, agency, or instrumentality of the Kingdom of Saudi Arabia";

     c.       the SJRC and its component organizations, the MWL, IIRO, WAMY, AHIF and SRC, was directed and controlled by Saudi Arabia's Minister of Interior together with other high ranking representatives of Saudi Arabia's Ministries;

     d.       Saudi Arabia provided all of SJRC's funding;

     e.       the existence of the SJRC was subject to the ongoing approval of Saudi Arabia and could be terminated at any time by Saudi Arabia;

     f.       employees of SJRC were considered to be employees of Saudi Arabia and deemed themselves employees of Saudi Arabia bound to follow policies and dictates set by Saudi Arabia; and

     g.       such additional facts as set forth herein or that may be determined through further investigation and discovery.

     51.     At all relevant times prior to and on September 11, 2001, the SRC was part of Saudi Arabia, an alter-ego of Saudi Arabia and/or an agent of Saudi Arabia, and it would work a fraud or injustice to regard it as a legal entity separate from Saudi Arabia, as evidenced by the following:

a.      in a pleading previously filed before this Court, the SRC specifically asserted that it was immune from suit because of its status as a foreign sovereign, namely Saudi Arabia;

b.      Abdulrahman al Swailem, President of the Saudi Arabian Red Crescent Society, testified that he was appointed by Royal Order of Saudi Arabia's King, that he holds "Excellency level status within the Saudi Arabian Government", and that Saudi Arabia "sponsors and supervises the [SRC], and... appoints all of its directors."

c.      the SRC requires that the directors of the SRC include members of Saudi Arabia's Council of Ministers;

d.      Saudi Arabia provided all of the SRC's funding;

e.      the existence of the SRC was subject to the ongoing approval of Saudi Arabia and could be terminated at any time by Saudi Arabia;

f.      employees of SRC were considered to be employees of Saudi Arabia and deemed themselves employees of Saudi Arabia bound to follow policies and dictates set by Saudi Arabia; and

g.      such additional facts as set forth herein or that may be determined through further investigation and discovery.


### FIRST CAUSE OF ACTION TO RECOVER
### PERSONAL INJURY AND WRONGFUL DEATH DAMAGES
### PURSUANT TO THE JASTA AND THE ANTI-TERRORISM ACT

52.     Plaintiffs repeat and reallege all of the preceding paragraphs as if fully set forth herein.

53.     This action is brought pursuant to 18 U.S.C. § 2333(a) for the injuries and deaths suffered by U.S. nationals in the September 11th Attacks.

54.     Those attacks constituted acts of international terrorism pursuant to 18 U.S.C. §2331 that violated federal and state laws against murder, kidnapping, assault and aircraft hijacking, including but not limited to 18 U.S.C. §2332b (prohibiting terrorist acts of kidnapping, assault and murder) and 49 U.S.C. §46502 (prohibiting aircraft hijacking), and at the time those acts were committed, planned and authorized, al Qaeda was designated as a Foreign Terrorist Organization under section 219 of the Immigration and Nationality Act, 8 U.S.C. §1189.

55.     Pursuant to 18 U.S.C. §2333(a), (d), Saudi Arabia aided and abetted al Qaeda through numerous acts detailed herein by knowingly providing it with substantial assistance to prepare and carry out an act or acts of international terrorism.

56.     Pursuant to 18 U.S.C. §2333(a), (d), Saudi Arabia conspired with al Qaeda and others to provide it with substantial material support and resources, with the shared understanding, knowledge and intent that said support and resources would be used by al Qaeda to prepare and carry out an act or acts of international terrorism.

57.     The others in the conspiracy currently known to plaintiffs are named herein, and include Saudi Arabia's officials, employees and agents, Saudi Arabia's charity organizations, Osama Bin Laden and al Qaeda operatives; the names of additional persons involved in the conspiracy await discovery and further investigation.

58.     Pursuant to §2333(a), Saudi Arabia committed an act or acts of international terrorism, as defined in 18 U.S.C. § 2331(1)(A), in violation of federal and state criminal laws, or that would have been a criminal violation if committed within the United States or any state, including but not limited to a violation of the following:

- 18 U.S.C. §2(a) – Aiding, abetting, counseling, commanding, inducing or procuring a federal crime;
- 18 U.S.C. §371 – Conspiring to commit a federal crime;
- 18 U.S.C. §2332 – Conspiring to attempt to kill or kill a U.S. national;

- 18 U.S.C. §2332a – Conspiring to use a weapon of mass destruction;
- 18 U.S.C. §2332b – Conspiring to commit an act of terrorism;
- 18 U.S.C. §2339A - Providing material support to terrorists;
- 18 U.S.C. §2339B - Providing material support or resources to designated foreign terrorist organizations;
- 18 U.S.C. §2339C - Prohibitions against the financing of terrorism;
- 49 U.S.C. §46502 – Conspiring to commit aircraft piracy;
- N.J.S.A. §2C:2-6 – Accomplice liability;
- N.Y. Penal Law §20.00 - Criminal liability for conduct of another;
- N.Y. Penal Law §115.00 - Criminal facilitation in the fourth degree;
- Mass. Gen. Laws ch. 274, §2 – Accessory or aiding in the commission of a felony;
- 18 Pa. C.S. §306 – Accomplice liability; and
- Va. Code Ann. §18.2-18 – Accessory before the fact.

59.     The Kingdom of Saudi Arabia's conduct amounted to a violation of 18 U.S.C. §2(a) because Saudi Arabia intentionally aided, abetted and counseled the commission of a criminal act or acts of international terrorism by al Qaeda, including its hijackers and other operatives, by providing the terrorist organization with material support, resources and funding with the knowledge that al Qaeda would use such assistance to prepare for and commit such a criminal act or acts.

60.     Saudi Arabia's conduct amounted to a violation of 18 U.S.C. §371 because it conspired with al Qaeda and others to provide it with substantial material support and resources with the shared understanding, knowledge and intent that said support and resources would be used by al Qaeda to prepare for and carry out a criminal act or acts of international terrorism.

61.     Saudi Arabia's conduct amounted to a violation of 18 U.S.C. §2339A in that on and prior to September 11, 2001, it provided material support or resources for al Qaeda and/or conspired with al Qaeda and others to provide material support or resources for al Qaeda, with the knowledge or intent that they would be used in preparation for, or in carrying out a violation of the statutes specified in 18 U.S.C. §2339A, including 18 U.S.C. §2332b (prohibiting terrorist acts of kidnapping, assault and murder) and 49 U.S.C. §46502 (prohibiting aircraft hijacking).

62.     Saudi Arabia's conduct amounted to a violation of 18 U.S.C. § 2339A in that on and prior to September 11, 2001, it concealed or disguised the nature, location, source, or ownership of al Qaeda's material support or resources and/or conspired with Saudi Arabia's employees and agents, Saudi Arabia's charity organizations, al Qaeda, al Qaeda operatives and sympathizers and others, known and unknown, to conceal or disguise the nature, location, source or ownership of al Qaeda's material support or resources, with the knowledge or intent that they would be used in preparation for, or in carrying out a violation of the statutes specified in 18 U.S.C. §2339A, including 18 U.S.C. §2332b (prohibiting terrorist acts of kidnapping, assault and murder) and 49 U.S.C. §46502 (prohibiting aircraft hijacking).

63.     Saudi Arabia's conduct amounted to a violation of 18 U.S.C. §2339B in that on and prior to September 11, 2001, it knowingly provided material support or resources to al Qaeda, and/or Saudi Arabia conspired to knowingly provide material support or resources to al Qaeda with Saudi Arabia's employees and agents, Saudi Arabia's charity organizations, al Qaeda, al Qaeda operatives and sympathizers and/or others, known and unknown, with the knowledge that al Qaeda was a designated Foreign Terrorist Organization, has engaged or engages in terrorist activity or has engaged or engages in terrorism.

64.     Saudi Arabia's conduct amounted to a violation of 18 U.S.C. §2339C in that on and prior to September 11, 2001, as detailed within, it provided or collected funds for al Qaeda and/or conspired with Saudi Arabia's employees and agents, Saudi Arabia's charity organizations, al Qaeda, al Qaeda operatives and sympathizers and others, known and unknown, to provide or collect funds for al Qaeda, with the intention that such funds be used, or with the knowledge that such funds were to be used, in full or in part, to carry out an act or acts of international terrorism.

65.     Saudi Arabia's conduct amounted to a violation of relevant state criminal laws on facilitating, aiding and abetting a crime, and conspiracy, including but not limited to those cited above, in that it:

a.      intentionally aided, abetted and counseled al Qaeda by providing it with material support, resources and funding with the knowledge that al Qaeda would use such assistance to commit an act or acts of international terrorism; and/or

b.      believing it was probably rendering aid in the form of material support or resources and funds to al Qaeda to engage in a crime, provided al Qaeda with the means or opportunity for the commission thereof and which in fact aided al Qaeda to commit the September 11th Attacks; and/or

c.      conspired with Saudi Arabia's employees and agents, Saudi Arabia's charity organizations, al Qaeda, al Qaeda operatives and sympathizers and others known and unknown, to violate relevant state criminal laws on facilitating and aiding and abetting a crime and committing an act or acts of terrorism, including assault, hijacking, kidnapping and murder.

66.     As detailed herein, the aforesaid act or acts of international terrorism:

a.     involve a violent act or acts dangerous to human life, as demonstrated by the known and foreseeable outcomes of injury and death resulting from providing substantial assistance to al Qaeda terrorists;

b.      were committed primarily outside the territorial jurisdiction of the United States and also transcended national boundaries in terms of the means by which they were accomplished, the persons they appear intended to intimidate or coerce, and the locales in which their perpetrators operated; and

c.      appeared to be intended to intimidate or coerce a civilian population; to influence the policy of a government by intimidation or coercion; or, to affect the conduct of a government by mass destruction, kidnapping or assassination.

67.     The aforesaid acts of Saudi Arabia were not mere negligence, but each act individually and/or in combination with one or more acts, constituted conduct that was intentional, reckless, willful and/or grossly negligent and each of those acts individually and/or in combination with one or more of those acts was a proximate cause of the September 11th Attacks and the resulting injuries and deaths of plaintiffs' decedents.

68.     The September 11th Attacks could not have occurred absent the knowing and substantial assistance provided to al Qaeda by Saudi Arabia and those attacks and resulting injuries and deaths were a natural, probable and reasonably foreseeable consequence of Saudi Arabia's conduct.

69.     As a result, the Kingdom of Saudi Arabia is liable to plaintiffs for all damages resulting from the injuries and deaths in the September 11th Attacks.

70.     Plaintiffs, the surviving family members of each decedent, the decedents and their Estates have suffered and will continue to suffer past and future damages as a result of the injuries and deaths sustained in the September 11th Attacks, including but not limited to: personal injury damages, wrongful death damages, survival damages, economic damages, pecuniary loss, non-economic damages, pain and suffering, torture, imprisonment, kidnapping,

fear of impending death, physical trauma, mental anguish, mental distress, grief, loss of enjoyment of life, loss of earnings, financial support, services, companionship, care, guidance, consortium, solatium, burial costs, medical and other expenses and other provable damages allowed by law.

WHEREFORE, plaintiffs pray that judgment(s) for relief in the form of an award or awards of monetary damages for personal injury, wrongful death, all recoverable losses under 28 U.S.C. §2333 and other appropriate relief be entered on their first cause of action in favor of the plaintiffs individually and as estate representatives and against the defendant Kingdom of Saudi Arabia, with separate awards for each plaintiff, where appropriate, plus interest, costs, punitive damages, treble damages, attorney's fees, and such other relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION FOR PERSONAL INJURY AND WRONGFUL DEATH DAMAGES PURSUANT TO STATE TORT LAW

71.     Plaintiffs repeat and reallege all of the preceding paragraphs as if fully set forth herein.

72.     On March 10, 2004, a class action complaint seeking damages for a class defined as the spouses, children, parents, siblings and legal representatives of those individuals killed in the September 11th Attacks (excluding the 19 hijackers) was timely filed against the Kingdom of Saudi Arabia under the caption, *O'Neill v. Kingdom of Saudi Arabia, et al*, 04-CV-01922 (GBD), and the *O'Neill* case currently remains pending before this Court.

73.     *O'Neill* asserted state tort law claims against the Kingdom of Saudi Arabia for causing the deaths of plaintiffs' decedents in the September 11th Attacks, including claims for wrongful death, survival, aiding and abetting, conspiracy and negligence, including intentional,

knowing, reckless, willful, wanton, grossly negligent and/or negligent tortious acts and omissions.

74.    Plaintiffs herein include members of the class defined in *O'Neill*, but to date no determination regarding class certification has been made by this Court.

75.    This cause of action is brought before that determination and plaintiffs present these state tort law claims to assert and protect their rights to pursue such claims, for example, in the event that the *O'Neill* class is not certified by this Court.

76.    Pursuant to the doctrine first declared by the Supreme Court in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), the time for plaintiffs who are members of the *O'Neill* class to bring their state law claims has been tolled from the date the *O'Neill* action was brought until this Court makes its determination on class certification.

77.    For years prior to and including September 11, 2001, Saudi Arabia: participated and associated with al Qaeda in its terrorist agenda as set forth herein; provided al Qaeda and its hijackers with substantial material support, financing and resources; knew that it was assisting a terrorist organization that had conducted and was actively planning attacks against the United States; and committed tortious acts and omissions that were intentional, knowing, reckless, willful, wanton, grossly negligent and/or negligent.

78.    Saudi Arabia's conduct was a proximate cause of the deaths, injuries and resulting damages suffered by plaintiffs, as it furnished the essential support networks, cover and funding used by al Qaeda to successfully plan and execute the September 11th Attacks.

79.    Saudi Arabia tortiously aided and abetted al Qaeda by providing substantial assistance in the form of funding, support and resources to al Qaeda and its hijackers with the knowledge that they planned to use such assistance to prepare for and conduct terrorist attacks

against the United States and its citizens and/or with reckless disregard of the known probable risk that such assistance would be used for those terrorist purposes.

80.     Saudi Arabia tortiously conspired with al Qaeda and others to provide al Qaeda and its hijackers with substantial material support and resources, with the shared agreement, understanding, knowledge and intent that said support and resources would be used by al Qaeda to plan and carry out terrorist acts against the United States.

81.     For years prior to and including September 11, 2001, Saudi Arabia knew that its officers, employees and agents and Saudi Arabia's charitable organizations were engaging in illegal and/or criminal activity by using Saudi Arabia's offices, equipment and other resources to provide substantial material support and resources to al Qaeda and, that Saudi Arabia's officers, employees and agents, including but not limited to Adel Batterjee, Wael Jelaidan, Soliman al Buthe, Aqeel al Aqeel, Abdelhamid al Mujil, Enaam Arnaout, Fahad al Thumairy, Omar al Bayoumi, Omar Abdi Mohamed, Osama Basnan, Hamdan Shalawi, Mohamed al Qudhaieen, Mohamed al Fakihi and others were al Qaeda operatives or sympathizers who were using their government positions to provide substantial assistance to al Qaeda.

82.     Despite such knowledge, Saudi Arabia intentionally and/or recklessly failed to properly supervise its officers, employees and agents and Saudi Arabia's charitable organizations to stop them from using Saudi Arabia's offices, equipment and other resources to provide substantial assistance to al Qaeda despite the known and/or foreseeable risk that such assistance was being used by al Qaeda to prepare and conduct a terrorist attack against the United States and its citizens.

83.     Moreover, Saudi Arabia intentionally and/or recklessly selected, hired and retained as its officers, employees and agents various individuals, including Adel Batterjee, Wael

Jelaidan. Soliman al Buthe, Aqeel al Aqeel, Abdelhamid al Mujil, Enaam Arnaout, Fahad al

Thumairy, Omar al Bayoumi, Omar Abdi Mohamed, Osama Basnan, Hamdan Shalawi,

Mohamed Qudhaieen, Mohamed Fakihi and others, who Saudi Arabia knew were al Qaeda

operatives or sympathizers, despite the known and/or foreseeable risk that those employees and

agents would use and/or were using their government positions to provide substantial assistance

to al Qaeda to prepare and conduct a terrorist attack against the United States and its citizens.

84.    The aforesaid intentional, criminal, knowing, reckless, willful, wanton, grossly

negligent and/or negligent acts and/or omissions of Saudi Arabia were individually and/or in

combination with one or more of those acts and/or omissions a proximate, substantial cause of

the September 11th Attacks and the plaintiffs' injuries, deaths and resulting damages.

WHEREFORE, plaintiffs pray that judgment(s) for relief in the form of an award or

awards of monetary damages for personal injury, wrongful death and other appropriate relief be

entered on their second cause of action in favor of the plaintiffs individually and as estate

representatives and against the defendant Kingdom of Saudi Arabia, with separate awards for

each plaintiff, where appropriate, plus interest, costs, punitive damages, treble damages,

attorney's fees, and such other relief as the Court deems just and proper.

### THIRD CAUSE OF ACTION FOR
### PERSONAL INJURY AND WRONGFUL DEATH
### DAMAGES PURSUANT TO THE ALIEN TORT CLAIMS ACT

85.    Plaintiffs repeat and reallege all of the preceding paragraphs as if fully set forth

herein.

86.    *O'Neill* asserted claims under the Alien Tort Claims Act against the Kingdom of

Saudi Arabia for causing the deaths of plaintiffs' decedents in the September 11th Attacks based

on violations of international law resulting in injury and death in the September 11th Attacks.

87.     Plaintiffs herein include members of the class defined in *O'Neill*, but to date no determination regarding class certification has been made by this Court.

88.     This cause of action is brought before that determination and plaintiffs present these Alien Tort Claims Act claims to assert and protect their rights to pursue such claims, for example, in the event that the *O'Neill* class is not certified by this Court.

89.     The Alien Tort Claims Act, 28 U.S.C. §1350, allows aliens to sue for torts committed in violation of the law of nations, international law or a treaty of the United States.

90.     The conduct of Saudi Arabia as detailed herein to provide substantial material support, resources and sponsorship for al Qaeda and its acts of international terrorism resulting in the September 11th Attacks constitutes a clear violation of the law of nations and international law, which includes international legal norms prohibiting crimes against humanity, mass murder, genocide, torture, extrajudicial killing, air piracy, financing of terrorism, and terrorism, which can be found in and derived from, among other things, the following conventions, agreements, U.N. declarations and resolutions, and other documents:

(1)     Charter of the International Military Tribunal, Aug. 8, 1945, 59 Stat. 1544, 82 U.N.T.S. 279;

(2)     Allied Control Council Law No. 10 (Dec. 20, 1945);

(3)     Convention on the Prevention and Punishment of the Crime of Genocide, Dec. 9 1948, 78 U.N.T.S. 277;

(4)     Geneva Convention (IV) Relative to the Protection of Civilian Persons in Time of War, Aug. 12, 1949, 75 U.N.T.S. 287;

(5)     Hague Convention for the Suppression of Unlawful Seizure of Aircraft (Hijacking), Dec. 16, 1970, 22 U.S.T. 1641, 860 U.N.T.S. 105;

(6)     International Convention for the Suppression of Terrorist Bombings, Dec. 15, 1997, 2149 U.N.T.S. 284 (entered into force May 23, 2001);

(7)     International Convention for the Suppression of the Financing of Terrorism, Dec. 9, 1999, 2178 U.N.T.S. 229 (entered into force Apr. 10, 2002);

(8)     U.N. Security Council Resolution 1267, U.N. Doc. S/RES/1267 (Oct. 15, 1999);

(9)     U.N. Security Council Resolution 1373, U.N. Doc. S/RES/1373 (Sept. 28, 2001);

(10)    Protocol Additional (I) to the Geneva Conventions of 12 August 1949, and Relating to the Protection of Victims of International Armed Conflict, June 8, 1977, 1125 U.N.T.S. 3;

(11)   Protocol Additional (II) to the Geneva Conventions of 12 August 1949, and Relating to the Protection of Victims of Non-International Armed Conflicts, June 8, 1977, 1125 U.N.T.S. 609;

(12)   Statute of the International Criminal Tribunal for the Former Yugoslavia (ICTY), in Report of the Secretary-General pursuant to paragraph 2 of S.C. Res.808, May 3, 1993, U.N. Doc. 8/25704, adopted unanimously by S.C. Res. 827, U.N. SCOR, 48th Sess., 3217th mtg., 16, U.N. Doc. S/PV.3217 (1993);

(13)   The Convention on the Prevention and Punishment of Crimes Against International Protected Persons, Including Diplomatic Agents, 28 U.S.T. 1975, T.I.A.S. No. 8532 (1977), implemented in 18 U.S.C. § 112l;

(14)   The General Assembly Resolutions on Measures to Prevent International Terrorism, G.A. Res. 40/61 (1985) and G.A. Res. 42/159 (1987); and

(15)   The Convention on the High Seas, April 29, 1958, arts. 14-22 (piracy), 13 U.S.T. 2312, 450 U.N.T.S. 11.

91.   Saudi Arabia's conduct was a substantial cause of the September 11th Attacks and the plaintiffs' injuries, deaths and resulting damages.

WHEREFORE, plaintiffs pray that judgment(s) for relief in the form of an award or awards of monetary damages for personal injury, wrongful death and other appropriate relief be entered on their third cause of action in favor of the plaintiffs individually and as estate representatives and against the defendant Kingdom of Saudi Arabia, with separate awards for each plaintiff, where appropriate, plus interest, costs, punitive damages, treble damages, attorney's fees, and such other relief as the Court deems just and proper.

Dated: New York, New York
    June 1, 2017

KREINDLER & KREINDLER LLP

By:    /s/ James P. Kreindler
    James P. Kreindler (JK7084)
    Justin T. Green (JG0318)
    Andrew J. Maloney, III (AM8684)
    Steven R. Pounian (SP5795)
    750 Third Avenue
    New York, NY  10017
    (212) 687-8181
    (212) 972-9432 (Fax)

Barasch McGarry Salzman Penson & Lim
Michael Barasch, Esq.
11 Park Place, Suite 1801
New York, NY 10007
(212) 385-8000
(212) 385-7845 (fax)

Baumeister and Samuels, P.C.
Michel Baumeister, Esq.
One Exchange Plaza
New York, NY 10006
(212) 363-1200
(212) 363-1346 (fax)

Speiser Krause
Frank Granito, Esq.
800 Westchester Avenue, Suite S-608
Rye Brook, New York 10573
(914) 220-5333

Jonathan C. Reiter Law Firm PLLC
Jonathan C. Reiter, Esq.
350 Fifth Avenue, Suite 6400
New York, NY 10118
(212) 244-2000

Sullivan Papain Block McGrath & Cannavo P.C.
120 Broadway
New York, NY 10271
(212) 732-9000

Ungaro & Cifuni, Attorneys at Law, LLP
291 Broadway #1400
New York, NY 10007
(212) 766-5800

David M. Peterson, P.C.
65 Broadway
New York, NY 10006
(212) 558-6884

Pitta & Giblin LLP
120 Broadway, 28th Floor
New York, NY 10271
(212) 652-3890