# Exhibit 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (FM)<br>ECF Case |
| --- | --- |

*This document relates to:*
*Burnett, et al. v. Al Baraka Investment & Development Corp., et al.; 03-cv-09849*
*Federal Insurance Co, et al. v. Al Qaida, et al.*
*Vigilant Insurance, et al. v. Kingdom of Saudi Arabia, et al.; 03-cv-08591*
*Estate of John P. O'Neill v. Kingdom of Saudi Arabia, et al.; 04-cv-01922*
*New York Marine and General Insurance Co., et al. v. Al Qaida, et al.; 04-cv—06105*
*Cantor Fitzgerald Assoc., LP, et al. v. Akida Investment Co. Ltd., et al.; 04-cv-07065*
*Pacific Employers Insurance Co., et al. v. Kingdom of Saudi Arabia, et al.; 04-cv-07216*
*EuroBrokers, Inc., et al. v. Al Baraka Investment & Development Corp., et al.; 04-cv-07279*
*Bowrosen, et al. v. Kingdom of Saudi Arabia; 16-cv-08070*
*McCarthy, et al. v. Kingdom of Saudi Arabia, et al.; 16-cv-08884*
*Aguilar, et al. v. Kingdom of Saudi Arabia, et al.; 16-cv-09663*
*Addesso, et al. v. Kingdom of Saudi Arabia, et al.; 16-cv-09937*
*Hodges, et al v Kingdom of Saudi Arabia, et al.; 17-cv-00117*
*Desimone, et al. v. Kingdom of Saudi Arabia, et al.; 17-00348*
*Aiken, et al. v. Kingdom of Saudi Arabia, et al.; 17-cv-00450*
*Ashton, et al. v. Kingdom of Saudi Arabia, et al.; 17-cv-02003*
*The Underwriting Members of Lloyd, et al. v. Kingdom of Saudi Arabia, et al.; 17-cv-02129*
*Abrams et al v. Kingdom of Saudi Arabia et al.; 1:17-cv-04201-GBD-SN*
*General Reinsurance Corporation et al v. Kingdom of Saudi Arabia; 1:17-cv-03810-GBD-SN*
*Abarca et al. v. Kingdom of Saudi Arabia et al.; 1:17-cv-03887-GBD-SN*
*Arrowood Indemnity Company et al v. Kingdom of Saudi Arabia et al.; 1:17-cv-03908-GBD-SN*
*Beazley Furlonge Ltd. et al v. Saudi Binladin Group, Inc. et al.; 1:16-cv-07456-GBD-SN*

**PLAINTIFFS' FIRST SET OF JURISDICTIONAL REQUESTS
FOR PRODUCTION OF DOCUMENTS DIRECTED
TO THE KINGDOM OF SAUDI ARABIA**

THE MDL 1570 PLAINTIFFS'
EXECUTIVE COMMITTEES
June 21, 2017

**PLAINTIFFS' FIRST SET OF JURISDICTIONAL REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO THE KINGDOM OF SAUDI ARABIA**

The Plaintiffs' Executive Committees on behalf of the Plaintiffs in the *In re Terrorist Attacks on September 11, 2001* multidistrict litigation, 03 MDL 1570, with claims asserted against the Kingdom of Saudi Arabia ("the Kingdom" or "Saudi Arabia" or "the Saudi government" or "Defendant"), propound and serve on Defendant the following Requests for Production of Documents to be answered fully and under oath, pursuant to Rule 34 of the Federal Rules of Civil Procedure, within 30 days of their receipt.

## <u>INSTRUCTIONS</u>

1.      In producing documents and other things, Defendant is requested to furnish all documents or things in its possession, custody or control, regardless of whether such documents or things are possessed directly by Defendant or by Defendant's employees, agents, attorneys, accountants, auditors, investigators, or other representatives.

2.      Documents are to be produced in full; redacted documents will not constitute compliance with this request. If any requested document or thing cannot be produced in full, Defendant is requested to produce it to the extent possible, indicating which document or portion of that document is being withheld and the reason that document or portion of that document is being withheld.

3.      In producing documents, Defendant is requested to produce the original of each document requested together with all non-identical copies and drafts of that document. If the original of any document cannot be located, an identical copy shall be provided in lieu thereof, and shall be legible and bound or stapled in the same manner as the original.

4.      Documents shall be produced as they are kept in the usual course of business or the documents shall be organized and labeled to correspond to the categories in this request. All

2

documents shall be produced in the file folder, envelope, or other container in which the documents are kept or maintained by Defendant. If, for any reason, the container cannot be produced, produce copies of all labels or other identifying marks.

5.      Documents shall be produced in such fashion as to identify any organization, department, branch, or office in whose possession it was located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian.

6.      Documents attached to each other should not be separated.

7.      If any documents requested herein have been lost, discarded, destroyed, or are otherwise no longer in Defendant's possession, custody or control, they shall be identified as completely as possible including, without limitations, the following information: date of disposal, manner of disposal, reason for disposal, person authorizing the disposal and person disposing of the document.

8.      Documents shall be produced in such fashion as to identify which request(s) they are responsive to.

9.      Each of these requests shall be continuing. If at any time after production of these requests any information becomes available that calls for any supplement to a previous response, provide such documents within a reasonable time period from the time when it becomes available.

10.      If Defendant asserts a privilege or other authorized protection with respect to any document requested herein, Defendant is required to provide a privilege log that conforms with the requirements set out in the November 19, 2012 Order Governing Identification of Privileged Documents (ECF No. 2644), including providing the following information concerning each document withheld:

        a.   The type of document or information (e.g., letter, notebook, telephone conversation, etc.);

    b.   The general subject matter of the document;

    c.   The date of the document;

    d.   The authors of the document, the addressees of the document and any other recipients, and where not apparent, the relationship of the authors, addressees, and recipients to one another;

    e.   If the document is an electronic document, its file size; and

    f.   The basis for the privilege or protection claimed, and if the privilege is governed by state law, the state's privilege rule being invoked.

11.    For the purpose of these discovery requests, except to the extent specifically indicated in the "Definitions" section of this Set of Requests, the words used herein are considered to have, and should be understood to have, their ordinary, everyday meaning and Plaintiffs refer Defendant to any collegiate dictionary such as *Webster's New World Dictionary,* Second College Edition by Prentice Hall Press. In the event Defendant asserts that the wording which has been used is somehow vague, ambiguous, unintelligible, indecipherable, confusing or such other boiler plate objections to avoid squarely addressing the specific discovery request, Plaintiffs refer Defendant to *Webster's Dictionary* for the plain meaning of the terms defined herein.

12.    If you object to any request for production on the ground that it is overbroad, is unreasonably burdensome, or seeks information which is not relevant to the subject matter of this action, you should state what you contend to be the proper scope of the request for production and respond in accordance with what you contend is the proper scope.

13.    Any request referring to any entity, organization, office, or association includes any official, employee, representative or agent of that entity, organization, office, or association.

14.    Unless otherwise specified, the relevant scope of discovery will be for the time period from January 1, 1992 through July 22, 2004.  *See* ECF No. 2059 ("[T]he appropriate temporal scope of discovery should reasonably begin in 1992").

## DEFINITIONS

1.      All terms used herein that are defined in Local Civil Rule 26.3 have the meaning as defined therein. To the extent that any term is defined herein in a manner that is inconsistent with Local Civil Rule 26.3, the rule governs.

2.      The terms "document" or "documents" are defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

3.      The term "Plaintiffs" shall refer to Plaintiffs in cases in the above-referenced MDL proceedings, *In re Terrorist Attacks on September 11, 2001*, 03 MDL 1570, (including plaintiffs in cases filed and indicated as being "associated" or "related to" the MDL proceedings), who have claims asserted against the Kingdom of Saudi Arabia, including those cases referenced in the caption of this set of Requests.

4.      The terms "Defendant," "You," "Your," "the Kingdom of Saudi Arabia," "the Kingdom," or "the Saudi government" shall refer to the government of the Kingdom of Saudi Arabia, including without limitation any ministry, council, agency, instrumentality, organ, political subdivision, government committee, Saudi embassy or consulate, or component of the Saudi government, as well as any official or employee of the Saudi government.

5.      The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), whether oral or written.

6.      The term "person" is defined as any natural person or any business, legal, or government entity or association.

7.      The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

8.      The terms "all," "any" and "each" shall be construed as encompassing any and all.

9.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

10.     The use of the singular form of any word includes the plural and vice versa.

11.     The term "the Da'awa Organizations" includes the following organizations:

- Muslim World League ("MWL");
- International Islamic Relief Organization ("IIRO");
- Al Haramain Islamic Foundation ("AHIF");
- World Assembly of Muslim Youth ("WAMY");
- Rabita Trust;
- Saudi High Commission ("SHC");
- Saudi Joint Relief Committee ("SJRC");
- Benevolence International Foundation ("BIF");
- Saudi Red Crescent ("SRC");
- Global Relief Foundation ("GRF");
- Al Haramain al Masjil al Aqsa;
- Western Somali Relief Agency ("WSRA"); and
- King Fahad Mosque or King Fahd Mosque (Culver City, CA);

and references to said Da'awa Organizations, either collectively or individually shall mean said organization or organizations together with any branch office, officer, director, trustee, employee, attorney, consultant, accountant, agent, alter ego, volunteer, or representative acting on behalf of and/or at the direction of said organization or organizations.

6

25.     The term "Supreme Council for Islamic Affairs" shall mean the Supreme Council for Islamic Affairs of the Saudi government, including any member, official, employee, representative or office of the Supreme Council for Islamic Affairs.

26.     The term "Ministry of Islamic Affairs" shall mean the ministry of the Saudi government known also known as the "Ministry Of Islamic Affairs, Dawah and Guidance" or the "Ministry Of Islamic Affairs, Endowments, Dawah and Guidance," including any member, official, employee, representative or office of the Ministry of Islamic Affairs, as well as any Islamic Affairs or Da'awah office of any Saudi diplomatic mission.

27.     The term "Saudi diplomatic mission" shall mean any embassy or consulate of the Kingdom of Saudi Arabia, including any office or organization located within any such embassy or consulate, as well as any agency engaged in diplomatic, consular, or related activities under the control and direction of the government of Saudi Arabia.

27.     The term "9/11 Hijackers" shall mean any of the 19 men who hijacked aircraft on September 11, 2001, and crashed the aircraft into the World Trade Center buildings in New York, the Pentagon in Virginia, and a field in Shanksville, Pennsylvania, including:

| | |
|---|---|
| Abdulaziz Mohamed al Omari; | Mohamed Atta; |
| Ahmed Abdullah al Nami; | Mohand al Shehri; |
| Ahmed Ibrahim al Haznawi; | Nawaf Mohamed al Hazmi; |
| Ahmed Saleh al Ghamdi; | Salem Mohamed al Hazmi; |
| Hamzeh Saleh al Ghamdi; | Satam al Suqami; |
| Hani Saleh Hanjour; | Saeed Abdullah al Ghamdi; |
| Fayez Banihammad; | Wail Mohamed al Shehri; |
| Khalid Mohamed al Mihdhar; | Walid Mohamed al Shehri; and |
| Majed al Moqed; | Ziad Jarrah. |
| Marwan al-Shehhi; | |

28.     The term "payment" shall mean the act of paying or transferring any monies, salaries, fees, expenses, living allowances, reimbursements, or other transfer of value.

## DOCUMENTS REQUESTED

1.      Please provide any and all royal decrees or official government records pursuant to which the Saudi government established the Supreme Council for Islamic Affairs, as well as any royal decrees, laws, rules or regulations detailing the functions, authorities, and responsibilities of the Supreme Council for Islamic Affairs.  The time period for this request extends back to the time period that the entity was being formed.

**ANSWER:**


2.      Please provide any and all royal decrees or official government records pursuant to which the Saudi government established the Ministry of Islamic Affairs, as well as any royal decrees, laws, rules or regulations detailing the functions, authorities, and responsibilities of the Ministry of Islamic Affairs.  The time period for this request extends back to the time period that the entity was being formed.

**ANSWER:**


3.      Please provide all documents concerning the formation, organization, founding and/or initial funding of the Da'awa Organizations, including documents concerning the involvement of the Saudi government in the forming, organizing, founding and/or initial funding of any of the Da'awa Organizations.  The time period for this request extends back to the time period during which each of the Da'awa Organizations was being established.

**ANSWER**

4.      Please provide all documents concerning the funding of the Da'awa Organizations by the Saudi government.

**ANSWER:**


5.      Please provide any documents concerning decisions, directives, approvals, denials, work plans or decrees of the Saudi government concerning the funding, fundraising, budgets, projects, priorities, initiatives, operations, travel or expenditures of the Da'awa Organizations.

**ANSWER:**


6.      Please provide any decisions, directives, approvals, denials work plans, or decrees of the Supreme Council for Islamic Affairs or Ministry of Islamic Affairs concerning  the funding, fundraising, budgets, projects, priorities, initiatives, operations, travel, or expenditures of the Da'awa Organizations.

**ANSWER:**


7.      Please provide any documents concerning the involvement of the Saudi government, including but not limited to the Supreme Council for Islamic Affairs or Ministry of Islamic Affairs, in the direction, oversight, staffing, review or supervision of the Da'awa Organizations and/or of any projects or initiatives undertaken by the Da'awa Organizations.

**ANSWER:**


8.      Please provide all annual or periodic reports submitted by the Supreme Council for Islamic Affairs and/or Ministry of Islamic Affairs to any other component of the Saudi government

concerning their achievements in fulfilling the Saudi state's "duty regarding the propagation of Islam (Da'wah)."

**ANSWER:**


9.      Please provide all documents concerning the involvement of the Da'awa Organizations in the management, operation, supervision, staffing or funding of any mosque or Islamic center outside of the Kingdom, established or funded by the Saudi government.

**ANSWER:**


10.      Please provide all documents concerning any meeting of the Supreme Council for Islamic Affairs or Ministry of Islamic Affairs pertaining to any project, initiative, or campaign of the Da'awa Organizations.

**ANSWER:**


11.      Please provide any documents concerning the use by any of the Da'awa Organizations of any property owned or controlled by the Saudi government, including without limitation any diplomatic property, residence and/or offices of the Saudi government.

**ANSWER:**


12.      Please provide all documents concerning any compensation, travel expenses, or civil service benefits received or accrued by any official or employee of the Da'awa Organizations from the Saudi government in relation to their roles and/or during their tenures as officials or employees of the Da'awa Organizations.

**ANSWER:**

13.     Please provide all documents concerning Saudi government or diplomatic passports issued to, or used by, any official or employee of the Da'awa Organizations.

**ANSWER:**

14.     Please provide all documents concerning any coordinating committees or bodies that include or have included one or more representatives of the Saudi government and one or more representatives of any of the Da'awa Organizations, such as the Coordinating Committee of the Saudi Organizations in Kenya.

**ANSWER:**

15.     Please provide all documents concerning any request that the Da'awa Organizations be afforded Saudi government diplomatic status or the provision of such status to the Da'awa Organizations by any government.

**ANSWER:**

16.     Please provide all documents concerning reports, resolutions, or requests submitted by the Da'awa Organizations to the Saudi government concerning their activities, achievements, budgets, expenditures, goals or objectives.

**ANSWER:**

17.     Please provide all documents concerning the involvement of the Saudi government in personnel decisions of the Da'awa Organizations, including but not limited to the appointment, recruitment, hiring, firing, promotion, transfer, and compensation of directors, officials and employees of the Da'awa Organizations.

**ANSWER:**


18.     Please provide all documents concerning any audit, financial review, accounting or other examination of books, accounts, or documents of any of the Da'awa Organizations performed by or at the direction of the Saudi government.

**ANSWER:**


19.     Please provide all documents reflecting the status of the heads of the Da'awa Organizations as officials or employees of the Saudi government.

**ANSWER:**


20.     Please provide all documents concerning the appointment or status of any official, or employee of the Saudi government as a director, officer, representative or employee of any of the Da'awa Organizations.

**ANSWER:**


21.     Please provide all documents concerning the involvement or participation of any of the Da'awa Organizations in any Saudi state visits to other countries.

**ANSWER:**

22.     Please provide all documents concerning any special status or privileges afforded to the Da'awa Organizations by the Saudi government and/or under Saudi law.

**ANSWER:**


23.     Please provide all documents supporting the assertions in this litigation by the MWL, IIRO, SHC, SJRC and SRC that they qualify as a "foreign state" within the meaning of 28 U.S.C. § 1603.  The time period for this request extends back to the time period that each entity was established.

**ANSWER:**


24.     Please provide all documents concerning the sworn testimony of Affidavit of Khalid bin Obaid Azzahri, Financial and Administrative Manager of AHIF, that "[AHIF] operates under the supervision of the Saudi Minister of Islamic Affairs, who appoints its Board of Directors and senior management personnel."

**ANSWER:**


25.     Please provide all documents concerning the sworn testimony of Abdulaziz H. al Fahad that "to the extent that the government oversees activities of Islamic organizations such as [MWL and WAMY], that oversight is exercised through government officials who head those organizations."

**ANSWER:**

26.     Please provide all documents concerning the participation of any representatives of the Saudi government on any committees, councils, bodies or components of the Da'awa Organizations.

**ANSWER:**


27.     Please provide all documents concerning correspondence and financial transfers between the Saudi government and the MWL concerning the "Mosques in Every Capitol" project.

**ANSWER:**


28.     Please provide documents concerning list(s) of imams located or stationed outside of the Kingdom whose salaries were paid by the Saudi government.

**ANSWER:**


29.     Please provide any documents concerning or reflecting any arrangement under which the salaries of imams detailed to posts outside of the Kingdom by the Saudi government were paid by any Da'awa Organization.

**ANSWER:**


30.     Please provide any documents concerning or reflecting the signatory authority of any Saudi government official, representative or employee for any bank account in the name of or used by a Da'awa Organization.

**ANSWER:**

31.     Please provide any documents concerning any transfer of funds between any Saudi diplomatic mission and any of the Da'awa Organizations.

**ANSWER:**


32.     Please provide any documents concerning any directive or request by the Saudi government, including but not limited to a Saudi diplomatic mission, that any Da'awa Organization transfer funds or make a payment to any third party.

**ANSWER:**


33.     Please provide any documents concerning any directive or request by any Da'awa Organization that the Saudi government, including but not limited to a Saudi diplomatic mission, transfer funds or make a payment to any third party.

**ANSWER:**


34.     Please provide all documents concerning the "duty" of the Da'awa Organizations to "cooperate and coordinate with the brothers in charge in the host country," as detailed in the 1996 directive from the Director of the Overseas Offices Administration of the IIRO.

**ANSWER:**


35.     Please provide all documents concerning the involvement of the Saudi government in the opening of any branch office of any of the Da'awa Organizations outside of Saudi Arabia. The time period for this request extends back to the time period that each entity was established.

**ANSWER:**

36.     Please provide all documents pertaining to the role of the Saudi Minister of Islamic Affairs in the direction, management, oversight, supervision, or operations of the Da'awa Organizations.

**ANSWER:**


37.     Please provide all documents concerning the statements in the 2001-2002 Annual Report of the IIRO that:

a.      the IIRO's al-Baha branch office operated "under the supervision and directives of HRH Prince Muhammed bin Saud, Governor of al-Baha region and the patronage of his Deputy, HRH Prince Faisal bin Muhammad;"

b.      the IIRO's Gizan office operated pursuant to the "constant instructions of HRH Prince Muhammed bin Nasir, Governor of the Gizan region."

c.      the IIRO's al –Jouf office operated "under the supervision and patronage of HRH Prince Abdul Ilah, Governor of al-Jouf region."

d.      the IIRO's Riyadh office operated under the "generous patronage of HRH Prince Salman bin Abdul Aziz Governor of Riyadh region and his Deputy, Prince Satam bin Abdul Aziz."

e.      the IIRO's offices in the Eastern Region operated under the "patronage of HRH Prince Muhammed bin Fahd, Governor of the Eastern region, and his Deputy, HRH Prince Saud bin Naif, and through the management of HRH Prince Turki bin Jelewi al-Saud."

f.      the IIRO's offices in the Asir region operated "thanks to continuous advices of HRH Prince Khalid al-Faisal, Governor of the Asir region."

g.      the IIRO's office in the al-Kasim area benefitted from the "continued patronage by HRH Prince Faisal bin Bandar, Governor of al-Kasim region."

h.      the IIRO's Madina office operated "through the guidance of HRH Prince Miqurin bin Abdul Aziz, Governor of Madinah region."

i.      "the patronage of HRH Prince Miqurin bin Abdul Aziz, Governor of Madinah region extends to the Yambu office of the IIRO SA."

j.      the IIRO's office in the Makkah area operates "under the constant supervision of HRH Prince Abdul Majeed bin Abdul Aziz, Governor of Makkah region."

k.      the IIRO's Jeddah office enjoys "the kind patronage" of "HRH Prince Abdul Majeed bin Abdul Aziz, Governor of Makkah region," and benefited from the "keen interest of HRH Prince Mish'al bin Majid, Governor of Jeddah."

l.      the IIRO's Taif office "enjoys the support of both HRH Prince Abdul Majeed bin Abdul Aziz, Governor of Makkah, and the Honorable Mayor of Taif, Mr. Fahad a.a. Moamar."

m.      the IIRO's Najran office enjoys the "kind patronage of HRH Prince Mish'al bin Saud, Governor of Najran region."

**ANSWER:**


38.     Please provide all documents the Court previously directed AHIF to produce pursuant to its order of December 10, 2010, ECF # 2393, which AHIF refused to produce based on its claim that the responsive documents were in the exclusive custody and control of the Saudi government.

**ANSWER:**


39.     Please provide all documents concerning the Saudi government's support for its assertion in its White Paper of June 2016 and elsewhere that the AHIF was "notoriously tied to Osama bin Laden, the Taliban and Al Qaeda's terror campaigns."

**ANSWER:**

40.     Please provide all documents concerning any action, direction, or decision of the Saudi government to terminate, close offices, or seize files of any of the Da'awa Organizations' offices outside of the Kingdom.

**ANSWER:**


41.     Please provide all documents describing the functions, authorities, responsibilities, and/or objectives of the Islamic Affairs offices, da'awa offices, and/or religious attaché's offices of the Kingdom's diplomatic missions.

**ANSWER:**


42.     Please provide all documents concerning any contact, communication, or meeting between Omar al Bayoumi and any of the following:

a.      Fahad al Thumairy;
b.      Khalid al Sowailem;
c.      Osama Bassnan;
d.      Omar Abdi Mohamed;
e.      Hamdan Gharib al Shalawi;
f.      Mohamed Qudhaieen;
g.      Mohdhar Mohamed Abdullah (a/k/a "Mihdar Mohammad al Mihdar Zaid";
h.      Oualid Benomrane;
i.      Yazid al Salmi;
j.      Mohamed Quadir Harunani;
k.      Walid Bin Attash a/k/a/ "Khallad"
l.      any personnel at the Institute of Islamic and Arabic Sciences in America ("IIASA");
m.      any Saudi diplomatic mission, including but not limited to personnel at the Saudi consulate in Los Angeles;
n.      any personnel at the Ministry of Islamic Affairs in Saudi Arabia;
o.      any personnel at the Saudi Embassy in Washington, D.C.; and
p.      any of the 9/11 Hijackers.

**ANSWER:**

43.     Concerning Omar al Bayoumi, please provide all documents concerning:

a.      any task, project, work, services, assignment, or favor performed by
        him at the direction, instruction, or request of the Saudi government,
        including but not limited to the Ministry of Islamic Affairs or any
        Saudi diplomatic mission;
b.      his educational or academic activities;
c.      his secondment to Dallah Avco;
d.      his contract(s) of employment;
e.      his personnel, employment and/or consultancy records;
f.      his job title(s), job description(s) and duties;
g.      any records of payments to him or any member of his immediate
        family; and
h.      his United States visa application and supporting papers.

**ANSWER:**


44.     Please provide all documents concerning any contact, communication, or meeting

between Fahad al Thumairy and any of the following:

a.      Omar al Bayoumi;
b.      Khalid al Sowailem;
c.      Osama Bassnan;
d.      Omar Abdi Mohamed;
e.      Hamdan Gharib al Shalawi;
f.      Mohamed Qudhaieen;
g.      Mohdhar Mohamed Abdullah (a/k/a "Mihdar Mohammad al Mihdar
        Zaid";
h.      Oualid Benomrane;
i.      Yazid al Salmi;
j.      Mohamed Quadir Harunani;
k.      Walid Bin Attash a/k/a/ "Khallad";any personnel at the Institute of
        Islamic and Arabic Sciences in America ("IIASA"); and
l.      any of the 9/11 Hijackers.

**ANSWER:**

45.     Please provide all documents concerning any contact, communication, or meeting

between Osama Yousef Bassnan and any of the following:

        a.       Fahad al Thumairy;
        b.       Omar al Bayoumi;
        c.       Mohammed al Qudhaieen;
        d.       Hamdan al Shalawi
        e.       Omar Abdi Mohamed;
        f.       any personnel at the Institute of Islamic and Arabic Sciences in America ("IIASA");
        g.       any Saudi diplomatic mission, including but not limited to personnel at the Saudi consulate in Los Angeles;
        h.       any personnel at the Ministry of Islamic Affairs in Saudi Arabia;
        i.       any personnel at the Saudi Embassy in Washington, D.C.; and
        j.       any of the 9/11 Hijackers.

**ANSWER:**

46.     Concerning Osama Yousef Bassnan, please provide all documents concerning:

        a.       any task, project, work, services, assignment, or favor performed by him at the direction, instruction, or request of the Saudi government, including but not limited to the Ministry of Islamic Affairs or any Saudi diplomatic mission;
        b.       his contract(s) of employment;
        c.       his personnel, employment and/or consultancy records;
        d.       his job title(s), job description(s) and duties;
        e.       any records of payments to him or any member of his immediate family; and
        f.       his United States visa application and supporting papers.

**ANSWER:**

47.     Please provide all documents concerning any contact, communication, or meeting

between Mohammed al Qudhaeein and any of the following:

        a.       Hamdan al Shalawi;
        b.       Abdullah Naseef;

    c.      any personnel at the Institute of Islamic and Arabic Sciences in America ("IIASA");

    d.      any Saudi diplomatic mission, including but not limited to personnel at the Saudi consulate in Los Angeles;

    e.      any personnel at the Ministry of Islamic Affairs in Saudi Arabia;

    f.      any personnel at the Saudi Embassy in Washington, D.C.; and

    g.      any of the 9/11 Hijackers.

**ANSWER:**


48.     Concerning Mohammed al Qudhaeein, please provide all documents concerning:

    a.      any task, project, work, services, assignment, or favor performed by him at the direction, instruction, or request of the Saudi government, including but not limited to Ministry of Islamic Affairs or any Saudi diplomatic mission;

    b.      his contract(s) of employment;

    c.      his personnel, employment and/or consultancy records;

    d.      his job title(s), job description(s) and duties;

    e.      any records of payments to him or any member of his immediate family; and

    f.      his United States visa application and supporting papers.

**ANSWER:**


49.     Please provide all documents concerning any contact, communication, or meeting

between Hamdan al Shalawi and any of the following:

    a.      Mohammed al Qudhaeein;

    b.      Abdullah Naseef;

    c.      any personnel at the Institute of Islamic and Arabic Sciences in America ("IIASA");

    d.      any Saudi diplomatic mission, including but not limited to personnel at the Saudi consulate in Los Angeles;

    e.      any personnel at the Ministry of Islamic Affairs in Saudi Arabia;

    f.      any personnel at the Saudi Embassy in Washington, D.C.; and

    g.      any of the 9/11 Hijackers.

**ANSWER:**

50.     Concerning Hamdan Gharib al Shalawi, please provide all documents concerning:

a.      any task, project, work, services, assignment, or favor performed by
        him at the direction, instruction, or request of the Saudi government,
        including but not limited to Ministry of Islamic Affairs or any Saudi
        diplomatic mission;
b.      his contract(s) of employment;
c.      his personnel, employment and/or consultancy records;
d.      his job title(s), job description(s) and duties;
e.      any records of payments to him or any member of his immediate
        family; and
f.      his United States visa application and supporting papers.

**ANSWER:**


51.     Please provide all documents concerning any contact, communication, or meeting

between Khalid al Sowailem and any of the following:

a.      Fahad al Thumairy;
b.      Omar al Bayoumi;
c.      Osama Bassnan;
d.      Mohammed al Qudhaeein;
e.      Hamdan al Shalawi;
f.      Omar Abdi Mohamed;
g.      Mohdhar Mohamed Abdullah (a/k/a "Mihdar Mohammad al Mihdar
        Zaid";
h.      Oualid Benomrane;
i.      Yazid al Salmi;
j.      Mohamed Quadir Harunani;
k.      Walid Bin Attash a/k/a/ "Khallad";
l.      any personnel at the Institute of Islamic and Arabic Sciences in
        America ("IIASA"); and
m.      any of the 9/11 Hijackers.

**ANSWER:**

22

52.     Please provide all documents concerning any contact, communication, or meeting

between Muhammed Jaber Hassan Fakihi and any of the following:

a.     Mounir El Motassadeq;
b.     Said Bahaji;
c.     Abdelghani Mzoudi;
d.     Ramzi bin al Shibh;
e.     Zakarya Essabar;
f.     any personnel at the Al Nur Mosque in Berlin, Germany;
g.     Ihsan Garnaoui; and
h.     any of the 9/11 Hijackers.

**ANSWER:**


53.     Please provide all documents concerning any contact, communication, or meeting

between Ahmed Dubayan and any of the following:

a.     Mounir El Motassadeq;
b.     Said Bahaji;
c.     Abdelghani Mzoudi;
d.     Ramzi bin al Shibh;
e.     Zakarya Essabar; and
f.     any personnel at the Al Nur Mosque in Berlin, Germany; and
g.     any of the 9/11 Hijackers.


**ANSWER:**


54.     Please provide all documents concerning any contact, communication, or meeting

between Omar Abdi Mohammed and any of the following:

a.     any personnel at the Saudi consulate in Los Angeles;
b.     any personnel at the Ministry of Islamic Affairs in Saudi Arabia;
c.     any personnel at the Saudi Embassy in Washington, D.C.; and
d.     any of the 9/11 Hijackers.

**ANSWER:**

23

55.     Concerning Omar Abdi Mohammed, please provide all documents concerning:

a.      any task, project, work, services, assignment, or favor performed by
        him at the direction, instruction, or request of the Saudi government,
        including but not limited to the Ministry of Islamic Affairs or any
        Saudi diplomatic mission;
b.      his contract(s) of employment;
c.      his personnel, employment and/or consultancy records;
d.      his job title(s), job description(s) and duties;
e.      any records of payments to him or any member of his immediate
        family; and
f.      his United States visa application and supporting papers.

**ANSWER:**


56.     Please provide all documents, including any photo or video images, concerning the

presence of any of the 9/11 Hijackers at or in the vicinity of any Saudi diplomatic mission and/or

the King Fahd Mosque.

**ANSWER:**


57.     Please provide all documents identifying any official or employee of the Saudi

government who entered the United States pursuant to a visa classification (as set forth in 22 CFR

§ 41.12) other than classifications A1, A2, A3, C3, G1, G2, G3, G4 or G5, and who, while in the

United States, performed any work or service on behalf of, or at the direction or request of, the

Saudi government.

**ANSWER:**


58.     Please provide any documents concerning the activities in the United States of any

official or employee of the Saudi government who entered the United States pursuant to a visa

classification (as set forth in 22 CFR § 41.12) other than classifications A1, A2, A3, C3, G1, G2,

G3, G4 or G5, and who, while in the United States, performed any work or service on behalf of,

or at the directions or request of, the Saudi government.

**ANSWER:**


59.    Please provide any passports, passport records, markers associated with passports,

or other Saudi government indicia of travel for the following individuals:

<u>Saudi Arabian Hijackers responsible for the September 11th Attacks</u>

    a.  Abdulaziz Mohamed al Omari;
    b.  Ahmed Abdullah al Nami;
    c.  Ahmed Ibrahim al Haznawi;
    d.  Ahmed Saleh al Ghamdi;
    e.  Hamzeh Saleh al Ghamdi;
    f.  Hani Saleh Hanjour;
    g.  Khalid Mohamed al Mihdhar;
    h.  Majed al Moqed;
    i.  Mohand al Shehri;
    j.  Nawaf Mohamed al Hazmi;
    k.  Salem Mohamed al Hazmi;
    l.  Satam al Suqami;
    m.  Saeed Abdullah al Ghamdi;
    n.  Wail Mohamed al Shehri;
    o.  Walid Mohamed al Shehri;

<u>Additional Saudi Arabian persons</u>

    p.  Abdullah Bin Laden;
    q.  Wa'el Hamza Jelaidan;
    r.  Abdulrahman A.A. al Ghamdi aka Khalid Sheikh Mohamed;
    s.  Fahad al Thumairy;
    t.  Hamdan Gharib al Shalawi;
    u.  Mohamed Qudhaieen;
    v.  Omar Ahmed al Bayoumi;
    w.  Khalid al Sowailem;
    x.  Osama Mohamed Bin Laden;
    y.  Osama Yousef Bassnan;
    z.  Abd al Hamid Sulaiman Muhammed al-Mujil;
    aa.  Saleh al-Hussayen.

**ANSWER:**

Case 1:17-cv-02003-GBD-SN   Document 27-9   Filed 08/01/17   Page 27 of 28


60.     Please provide all documents explaining the nature, purpose, scope, meaning, and reason for the existence of markings on Saudi passports, including for example the passports of Omar Ahmed Al Bayoumi, Khalid al Mihdhar and Salem al Hazmi, that have been described by U.S. investigators as "indicators of Islamic extremism linked to al Qaeda."  See 9/11 and Terrorist Travel, Staff Report, Aug. 21, 2004, Preface ("Three hijackers carried passports with indicators of Islamic extremism linked to al Qaeda"); see also 9/11 Commission Report at 516, Note 19 to Chapter 7 (discussing presence of cachet in Saudi passport of Omar al Bayoumi); id  at 564, Note 32 to Chapter 12 (discussing presence of indicator in Saudi passport of hijackers Khalid al Mihdhar and Salem al Hazmi).

**ANSWER:**


Dated:  June 21, 2017                    Respectfully submitted,


                                         /s *Robert T. Haefele*_____
                                         Robert T. Haefele
                                         Motley Rice LLC
                                         28 Bridgeside Boulevard
                                         Mount Pleasant, SC 29464
                                         rhaefele@motleyrice.com
                                         For the MDL 1570 Plaintiffs' Executive Committees

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the Plaintiffs' First Set of Jurisdictional Requests

for Production of Documents Directed to the Kingdom of Saudi Arabia are being served via

electronic mail and U.S. first-class mail, postage prepaid, this 21st day of June 2017, upon:

Michael K. Kellogg
MKellogg@kellogghansen.com
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(Counsel for the Kingdom of Saudi Arabia)

- and -

Alan R. Kabat
Kabat@BernabeiPLLC.com
Bernabei & Kabat, PLLC
1775 T Street, N.W.
Washington, D.C.  20009-7102
(Defendants' Executive Committee's appointed representative to receive discovery
requests and responses in MDL 1570)

_____
Robert T. Haefele