# APPENDIX 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— )    Civil Action No. 03 MDL 1570 (GBD) (SN)
                                                    )    ECF Case
IN RE:  TERRORIST ATTACKS ON      )
SEPTEMBER 11, 2001                          )
                                                    )
———————————————————————— )

This document relates to:

*Ashton, et al. v. Kingdom of Saudi Arabia*, No. 17-cv-02003
*Ashton, et al. v. al Qaeda, et al.,* No. 02-cv-6977

### *ASHTON* PLAINTIFFS' PROPOSED JURISDICTIONAL DISCOVERY PLAN

#### Document requests - KSA

1.　　For the years 1992 through and including September 11, 2001, regarding Fahad Thumairy and his employment by the KSA, produce documents concerning:

  a. Thumairy's employment including qualifications, job description and authority, the decision to assign Thumairy to the Los Angeles Consulate, his role as an Imam at the King Fahad Mosque, work reports, performance reviews, bonuses, pay increases, work budget, supervisors, work-related travel
  b. passports, travel records, visa applications
  c. statements of Thumairy
  d. calendar for 1999-2001
  e. credit card and bank records for 1999-2001
  f. communications and/or meetings of Thumairy with
   (i)　　Bayoumi
   (ii)　　Sowailem
   (iii)　　Omar Benomrane
   (iv)　　Mohdar Abdullah
   (v)　　Mihdhar
   (vi)　　Hazmi
   (vii)　　Aulaqi
   (viii)　　Basnan
   (ix)　　Abdi Mohamed
   (x)　　AHIF
   (xi)　　GRF
   (xii)　　his work supervisor(s)
  g. communications and/or meetings with Somali non-profits or charities in San Diego and funding of such organizations
  h. record of apartment rentals in Los Angeles in January and February 2000 by Thumairy, the Saudi Consulate and the King Fahad Mosque, including but not limited to rentals at the Avalon Westside Apartments in Los Angeles

   i. Thumairy's departure from the U.S. immediately prior to the 9/11 attacks, his return to the United States on December 24, 2001, and his subsequent departure.

   j. the denial of entry of Thumairy into the United States in 2003.

2. For the years 1992 through and including September 11, 2001, regarding Omar Bayoumi and his employment by the KSA, produce documents concerning:

  a. Bayoumi's employment in the United States including qualifications, job description and authority, the decision to assign Bayoumi to San Diego, work reports, performance reviews, bonuses, pay increases, work budget, supervisors, work-related travel

  b. Bayoumi's work as an intelligence officer for the KSA

  c. statements of Bayoumi

  d. calendar for 1999-2001

  e. credit card and bank records for 1999-2001

  f. passports, travel records, visa applications

  g. school records, including applications

  h. videotape and/or log entry records of visits of Bayoumi to the KSA's Los Angeles Consulate, including a visit on February 1, 2000

  i. communications and/or meetings of Bayoumi with

    (i) Thumairy

    (ii) Sowailem

    (iii) officials or staff at the KSA's D.C. Embassy or Los Angeles Consulate

    (iv) Omar Benomrane

    (v) Mohdar Abdullah

    (vi) Mihdhar

    (vii) Hazmi

    (viii) Aulaqi

    (ix) Basnan

    (x) Yazid al Salmi

    (xi) Abdi Mohamed

    (xii) his work supervisor(s)

  k. videotapes of events attended by Hazmi and/or Mihdhar

  l. communications and/or meetings with Somali non-profits or charities in San Diego and funding of such organizations

  j. Bayoumi's departure from the U.S. immediately prior to the 9/11 attacks

3. For the years 1992 through and including September 11, 2001, regarding Omar Abdi Mohamed and WSRA, Abdi Mohamed's employment by the KSA and the operations of WSRA, produce documents concerning:

  a. Abdi Mohamed's employment including qualifications, job description and authority, the decision to assign Abdi Mohamed to San Diego, his role with WSRA, work reports, performance reviews, bonuses, pay increases, work budget, supervisors, work-related travel

  b. passports, travel records, visa applications

  c. statements of Abdi Mohamed

  d. communications and/or meetings of Abdi Mohamed with

    (i) Sowailem

    (ii)     Thumairy

    (iii)    officials or staff at the KSA's D.C. Embassy or Los Angeles Consulate

    (iv)    Bayoumi

    (v)     Aulaqi

    (vi)    Basnan

    (vii)   AHIF

   (viii)   GRF

    (ix)    his work supervisor(s)

e. the establishment, purpose and objectives of WSRA

f. WSRA's financial records, including its budget, revenues, ledgers, expenses, money transfers and bank and credit card records

g. funds received by WSRA

h. funds dispersed by WSRA and the intended recipient(s) of such funds

i. communications regarding WSRA

j. communications regarding the transfer of WSRA funds

k. communications with Dahab Shil

4.     For the years 1992 through and including September 11, 2001, regarding Khalid Sowailem and his employment by the KSA, produce documents concerning:

a. Sowailem's employment including qualifications, job description and authority, the decision to assign Sowailem to the Washington, D.C. Embassy, work reports, performance reviews, bonuses, pay increases, work budget, supervisors, work-related travel

b. passports, travel records, visa applications

c. statements of Sowailem

d. communications and/or meetings of Sowailem with

    (i)     Abdi Mohamed

    (ii)    Thumairy

    (iii)   Bayoumi

    (iv)   AHIF

    (v)    GRF

    (vi)   Aulaqi

    (vii)   Basnan

e. communications and/or meetings with Somali non-profits or charities in San Diego and funding of such organizations, including WSRA

f. the departure of Sowailem from the United States in 2003, including messages received from the United States imposing requirements for his departure

5.     For the years 1992 through and including September 11, 2001, regarding Hamdan Shalawi, Mohamed Qudhaieen and their employment by the KSA, produce documents concerning:

a. their employment and schooling, including qualifications, job description and authority, work and school reports

b. remuneration received, including from the KSA, KSA contractors, student stipends, Imam University, Saudi Students Club and/or U.S.-based Islamic Centers or Mosques

c. communications and/or meetings of Shalawi and Qudhaieen with

        (i)  Hani Hanjour
        (ii) Thumairy
        (iii)officials or staff at the KSA's D.C. Embassy or Los Angeles Consulate
        (iv)their work supervisor(s)

   d.  statements of Shalawi
   e.  statements of Qudhaieen
   f.  the IIASA conference in November 1999 in Washington, D.C.
   g.  the purchase of their tickets for America West flight 90 on November 19, 1999
   h.  their passports and visa applications
   i.  any travel to Pakistan or Afghanistan

6.     For the years 1992 through and including September 11, 2001, regarding Soliman al Buthe and his employment by the KSA, produce documents concerning:

   a.  Buthe's employment including qualifications, job description and authority, work reports, performance reviews, his "volunteer" work for AHIF, bonuses, pay increases, work budget, supervisors, work-related travel
   b.  passports, travel records, visa applications
   c.  statements of Buthe
   d.  Buthe's trip to the United States in March 2000, including the purchase of tickets, itinerary and any communications or/or meetings concerning that trip
   e.  communications and/or meetings of Buthe with
        (i)   Ash-Shaikh
        (ii)   Shoumar
        (iii)  Abdi Mohamed
        (iv)  Bayoumi
        (v)   Thumairy
        (vi)  GRF
        (vii) anyone concerning the funds carried by Buthe from the United States to Saudi Arabia in 2000
        (viii) his work supervisor(s)
   f.  WSRA

7.     For the period from Sept. 11, 2001 to present, documents regarding the post-9/11 employment by the KSA of Thumairy, Bayoumi, Abdi Mohamed, Shalawi, Qudhaieen and Buthe, including but not limited to awards, promotions, bonuses and pay increases

8.     For the period from 1992 through and including December 31, 2001, regarding the premises comprising the KSA Embassy and Ambassador's Residence in Kabul, Afghanistan, produce documents concerning:

   a.  the use of any part of the premises by the AHIF
   b.  the use of any part of the premises by al Qaeda
   c.  communications between the KSA and the AHIF regarding the AHIF's use, possession or control of the premises
   d.  communications between the KSA and the AHIF regarding the AHIF providing assistance for citizens of Saudi Arabia in Afghanistan
   e.  the use of any part of the premises as a guest house by extremists, including but not limited to members of al Qaeda

    f.   visits to any part of the premises by Osama Bin Laden

    g.   the sale of any part of the premises

    h.   payments made for maintenances, utilities, services for the premises after September 1998

9.     For the period from 1995 through and including September 11, 2001, regarding Twaik Est, produce documents concerning:

    a.   communications between the KSA and Twaik Est concerning Mamoun Darkazanli, Mohamed Zammar, Abdelfattah Zammar, Mahmdou Mahmud Salim and or Mamoun Darkazanli Import Export Company a.k.a. Darkazanli Export Import Sonderposten

    b.   communications between the KSA and Mamoun Darkazanli, Mohamed Zammar, Abdelfattah Zammar and Mahmdou Mahmud Salim and/or Mamoun Darkazanli Import Export Company a.k.a. Darkazanli Export Import Sonderposten

    c.   financial transactions between Twaik Est and Mamoun Darkazanli, Mohamed Zammar, Abdelfattah Zammar and Mahmdou Mahmud Salim and/or Mamoun Darkazanli Import Export Company a.k.a. Darkazanli Export Import Sonderposten

10.    For the years 1992 through and including September 11, 2001, the KSA passports, passport applications, visa applications and records of travel for the following individuals:

    <u>Hijackers responsible for the September 11th Attacks</u>

    a.   Abdulaziz Mohamed al Omari

    b.   Ahmed Abdullah al Nami

    c.   Ahmed Ibrahim al Haznawi

    d.   Ahmed Saleh al Ghamdi

    e.   Hamzeh Saleh al Ghamdi

    f.   Hani Saleh Hanjour

    g.   Khalid Mohamed al Mihdhar

    h.   Majed al Moqed

    i.   Mohand al Shehri

    j.   Nawaf Mohamed al Hazmi

    k.   Salem Mohamed al Hazmi

    l.   Satam al Suqami

    m.   Saeed Abdullah al Ghamdi

    n.   Wail Mohamed al Shehri

    o.   Walid Mohamed al Shehri

    <u>Additional persons</u>

    p.   Wael Hamza Jelaidan

    q.   Abdulrahman A.A. al Ghamdi aka Khalid Sheikh Mohamed

    r.   Osama Mohamed Bin Laden

      s.   Osama Yousef Bassnan
      t.   Abdul Moshen al Turki
      u.   Abdullah bin Saleh al Obaid
      v.   Abdullah Naseef
      w.  Adnan Khalil Basha
      x.   Abdullah Bin Laden

11.     For each of the following organizations:

1. Al Haramain Islamic Foundation
2. Muslim World League
3. International Islamic Relief Organization
4. World Assembly of Muslim Youth aka Lajnat al Bir, aka Benevolence International Foundation aka al Bir al Dawalia
5. Saudi High Commission
6. Saudi Joint Relief Committee
7. Saudi Red Crescent

**first**, produce documents concerning

     (a) the involvement of the KSA in the founding and formation of the organization
     (b) any laws and Royal decrees of the KSA that mention the organization

**second**, produce documents for the period from 1992 through and including September 11, 2001 concerning:

     (c) contributions, monetary payments and/or donations of property by the KSA to the organization
     (d) the directors, officers and employees of the organization operating under diplomatic status of the KSA
     (e) the issuance of diplomatic license plates used by directors, officers and employees of the organization
     (f) the use of KSA diplomatic and/or government passports by the directors, officers and employees of the organization
     (g) the directors, officers and employees of the organization who were simultaneously employed in other capacities by the KSA
     (h) the directions, review, approval and/or rejection by the KSA of contributions made or proposed (i) by third parties to the organization, and (ii) by the organization to third parties
     (i) reports provided by the organization to the KSA, including but not limited to reports concerning the organization's budget, finances, donations, activities, plans and priorities
     (j) any monetary contribution, remuneration, fringe benefits and/or civil service benefits and/or travel expenses provided by the KSA to the directors, officers and employees of the organization
     (k) the purposes of the organization as declared by the KSA

(l) the participation of any representatives of the KSA on any joint committee, committee, council, body, board or other component of the organization, the use of KSA property, including but not limited to KSA offices, Embassies, Consulates and diplomatic residences, and KSA's office supplies, phones, computers and internet, by the organization

(m) the KSA security clearances provided to any director, officer or employee of the organization

(n) review and/or approval by the KSA of the employment or appointment of the directors, officers and/or employees of the organization

(o) instructions and directions provided by the KSA to the organization concerning the budget, projects, staffing, operations and activities of the organization

(p) supervision of the organization, and/or its local branch, by the KSA's Embassies and/or Consulates, including but not limited to the supervision of the Islamic Affairs Division at any Embassy or Consulate

(q) any bank accounts used by the organization, whether in the name of the organization, the KSA or otherwise, in which a representative of the KSA held signatory authority over the account

**third**, produce documents concerning:

(r) any closure of the organization and/or any office of the organization, including but not limited to the documents concerning the disposition of the assets and/or records of that organization and/or office

## Discovery Pertaining to the Saudi High Commission

1. From 1996 through and including September 11, 2001, regarding the company KA Stan, produce documents concerning:
   a. contracts
   b. payments, loans or advances
   c. project descriptions and cost
   d. correspondence
   e. banking records, including the records of BH Banka and Depozitna Banka, showing any transactions involving KA Stan
   f. records of any meetings or notes involving KA Stan
   g. correspondence or records concerning contacts with Wael Jelaidan, Yasin Kadi and/or Chafiq Ayadi

2. From 1993 through and including September 11, 2001 the employment records including qualifications, job description and authority, assignment decisions, performance reviews, bonuses, pay increases, work budget, supervisors and work-related travel for the following individuals:
   a. Ali Ahmed Ali Hamad
   b. Abdelsamad al Bahrani
   c. Hassam al Din
   d. Abu Miqdad al Dosari

e. Abu Abdelmalik al Libi
f. Yusuf Rahman
g. Abdullah al Matrafi
h. Hussain Jiffry

**Depositions**

1. Fahad al Thumairy (official of the KSA)

Deposition subjects include: the nature and scope of Thumairy's employment with the KSA from 1992-September 11, 2001; the identity and role of his supervisor(s); his relevant contacts with Bayoumi, Sowailem, Abdi Mohamed and others in the Ministry of Islamic Affairs; his contacts and assistance to the two hijackers and the purpose of such assistance; the instructions that he received from others in the KSA and the directions he provided to assist the two hijackers; the identity of the person(s) who "tasked" Thumairy to assist the two hijackers; why Thumairy left his post in Los Angeles shortly before September 11, 2001 and did not return until December 24, 2001; Thumairy's role at the King Fahad Mosque and the laundering of funds from the KSA, AHIF and/or GRF through Somali charities in San Diego, including WSRA; Thumairy's post-9/11 employment by the KSA, including, awards, promotions, bonuses and pay increases.

2. Omar al Bayoumi (official of the KSA)

Deposition subjects include: the nature and scope of Bayoumi's employment with the KSA from 1992-2001; his supervisory personnel; his relevant contacts with Thumairy, Sowailem, Abdi Mohamed and others in the Ministry of Islamic Affairs; his contacts and assistance to the two hijackers and the purpose of such assistance; the identity of the person(s) who "tasked" Bayoumi to assist the hijackers; the instructions that he received from others in the KSA and the directions he provided to give such assistance; his promotion, bonus and additional payments received in April 2000; Bayoumi's post-9/11 employment by the KSA, including awards, promotions, bonuses and pay increases.

3. Khalid al Sowailem (official of the KSA)

Deposition subjects include: his position with the Ministry of Islamic Affairs in 1995 through and including September 11, 2001; his supervision of and contacts with Thumairy; his contacts with Bayoumi; his supervision of, visits and contacts with Abdi Mohamed; the scope of employment of Thumairy, Bayoumi and Abdi Mohamed with the KSA; the laundering of funds from the KSA, AHIF and/or GRF through Somali charities in San Diego, including WSRA; the WSRA contacts with the AHIF and GRF; the ultimate beneficiary or beneficiaries of the WSRA funds sent to Dahab Shil; Sowailem's post-9/11 employment by the KSA, including awards, promotions, bonuses and pay increases.

4. Defendant Wael Jelaidan (as a named defendant and official of the KSA, SRC, SHC and SJRC)

Deposition subjects include: the internal operations of al Qaeda; his role in the diversion of KSA funds to al Qaeda in Pakistan and Afghanistan; his role in using the Rabita Trust in support of al

Qaeda; the SHC contracting his corporate entities; the role of Maram in supporting al Qaeda; his role as Executive Director of SJRC; his trips abroad as a member of a KSA delegation; his post-9/11 employment by the KSA, including awards, promotions, bonuses and pay increases.

5.      Saleh bin Abdulaziz al Ash-Sheikh (as an official of the KSA, AHIF and WAMY)

Deposition subjects include: his responsibilities directing the AHIF and WAMY and with the KSA's Ministry of Islamic Affairs from 1992 through and including September 11, 2001; the day-to-day control of the AHIF by the KSA; the AHIF's use of the Kabul Embassy in Afghanistan; the money laundering operation conducted by Buthe through the AHIF; support by the AHIF and WAMY to al Qaeda; the laundering of funds from the KSA through Somali charities in San Diego; the WSRA and Abdi Mohamed; Ash-Sheikh's post-9/11 employment by the KSA, including awards, promotions, bonuses and pay increases.

6.      Defendant Abdullah Naseef (as a named defendant and official of the KSA, MWL, IIRO and WAMY)

Deposition subjects include: his responsibilities as the Secretary General of the MWL and IIRO and as Vice Chairman of WAMY and as a Vice Chairman of the KSA's Shura Council prior to September 11, 2001; day-to-day control of the MWL, IIRO and WAMY by the KSA; his knowledge of support provided by the MWL, IIRO and WAMY to al Qaeda; his post-9/11 employment by the KSA, including awards, promotions, bonuses and pay increases.

7.      Defendant Abdullah bin Saleh al Obaid (as a named defendant and official of the KSA, MWL, IIRO and WAMY)

Deposition subjects include: his responsibilities as the Secretary General of the MWL and IIRO and as Vice Chairman of WAMY and as a Vice Chairman of the KSA's Shura Council prior to September 11, 2001; the day-to-day control of the MWL, IIRO and WAMY by the KSA; his knowledge of support provided by the MWL, IIRO and WAMY to al Qaeda; reasons for firing the director of the MWL Pakistan; knowledge of funds being diverted to al Qaeda; his post-9/11 employment by the KSA, including awards, promotions, bonuses and pay increases.

8.      Defendant Abdul Moshen al Turki (as a named defendant and as an official of the KSA, MWL and IIRO)

Deposition subjects include: his work as the Minister of Islamic Affairs from 1993 to 1999 and as an officer of the MWL and IIRO from 2000 through and including September 11, 2001; his knowledge concerning support from the MWL or IIRO to al Qaeda during the period; his meetings with Thumairy; his trips to Afghanistan and the United States from 1996-2001; his role as President of Imam Muhammad Ibn Saud University and its recruitment activities for al Qaeda; Turki's post-9/11 employment by the KSA, including awards, promotions, bonuses and pay increases.

9.      Defendant Adnan Khalil Basha (as a named defendant and as an official of the KSA and IIRO)

Deposition subjects include: his responsibilities as the Secretary General of the IIRO and as Vice Chairman of WAMY and as a Vice Chairman of the KSA's Shura Council prior to September 11, 2001; day-to-day control of the MWL, IIRO and WAMY by the KSA; his knowledge of support provided by the MWL, IIRO and WAMY to al Qaeda; Basha's post-9/11 employment by the KSA, including awards, promotions, bonuses and pay increases.

10.    Defendant Soliman Buthe (as a named defendant and as official of the AHIF and the KSA)

Deposition subjects include: his responsibilities for the KSA and the AHIF prior to September 11, 2001; his communications and contacts with and day-to-day control of the AHIF by the KSA; his role in the Chechnya money laundering scheme; the ultimate intended beneficiary or beneficiaries of the funds (approximately $152,000) that Buthe carried from the AHIF in the United States to Saudi Arabia in 2000; his knowledge of support provided by the AHIF to al Qaeda; trips to San Diego; contributions to WSRA; Buthe's post-9/11 employment by the KSA, including awards, promotions, bonuses and pay increases.

11.    Abdullah Bin Laden (as an official of the KSA and of WAMY)

Deposition subjects include: his responsibilities for the KSA and WAMY prior to September 11, 2001; his administrative role with the KSA Embassy in DC and with the Institute of Islamic and Arabic Sciences in America; his role in funding the Benevolence International Foundation; his and WAMY's relationship with Mohamed Quadir Harunani, Sayid Rageah, Anwar Aulaqi; his and the KSA's relationship with Osama Basnan, Sulaiman al Ali, and Omar al Bayoumi; his investments with BMI and Soliman Biheiri; Bin Laden's post-9/11 employment by the KSA, including awards, promotions, bonuses and pay increases.

12.    Rule 30(b)(6) witness(es) of the KSA

In the event of that any of the KSA witnesses listed above 1-11 are found to be unavailable, plaintiffs request that the KSA produce witnesses pursuant to Rule 30(b)(6) to address the subject matters set forth above.

13.    Rule 30(b)(6) witness of the KSA

Deposition subjects: the KSA's application and use of passport indicator markers for persons with ties to extremism and al Qaeda during the decade prior to and including September 11, 2001 and the identification of such markers on the passports of the 19 hijackers, Bayoumi and others.

14.    Rule 30(b)(6) witness of the KSA

Deposition subjects: the closing of the KSA Embassy and Ambassador's Residence in Kabul, Afghanistan ("Embassy premises") in 1998 and for the years 1998-2001: (1) the use of any of the Embassy premises by (a) the AHIF and (b) al Qaeda; (2) the use of the Embassy premises as a guest house; (3) any visits to the Embassy premises by Osama Bin Laden; and (4) any sale of any of the Embassy premises.

15.     Rule 30(b)(6) witness(es) of the KSA's Ministry of Islamic Affairs

Deposition subjects:

(1) regarding Thumairy, for the period that he was working for the KSA in California during the 1990's through and including September 11, 2001: the scope of his employment, authority and job duties, and the names of his supervisor(s) in the United States and Saudi Arabia;

(2) regarding Abdi Mohamed, for the period that he was working for the KSA during the 1990's through and including September 11, 2001: the scope of his employment, authority and job duties, and the names of his supervisor(s) in the United States and Saudi Arabia;

(3) regarding the WSRA, its creation and purpose, the funds received by the WSRA from the Global Relief Foundation and the AHIF in 1998-2000, and the ultimate intended beneficiary or beneficiaries of the funds totaling approximately $350,000 sent by WSRA to Dahab Shil in 1998-2000.

### Agreed Facts / Requests to Admit - KSA

The *Ashton* plaintiffs propose that to narrow the scope of necessary discovery that plaintiffs serve requests to admit and that the parties meet and if possible prepare a set of agreed facts.  The relevant facts include authenticating documents (for example, the apartment rental documents signed by Bayoumi, Aff. ¶ 9, KSA's "White Paper" Aff. ¶ 86, the Ernst & Young report Aff. ¶ 101); validating statements made by the KSA (such as press accounts of Prince Bandar Aff. ¶ 47 and Prince Turki Aff. ¶ 46 and KSA's communications with the U.S. government, Aff. ¶ 98); and confirming various facts (such as the KSA's knowledge of al Qaeda and knowledge of al Qaeda's intent to wage terrorist attacks against the United States during the decade prior to the 9/11 attacks, Complaint ¶¶17-35, basic policies regarding the KSA, such as its propagation of Wahhabi Islam, Complaint ¶ 11, and monetary payments by the KSA and the Royal family to MWL/IIRO, Aff. ¶¶ 103, 138).

### Third-party discovery

The *Ashton* plaintiffs request the assistance of the Court to have the 9/11 Commission's materials and the records of U.S. government agencies, including the FBI and the Department of Justice, produced, on a confidential basis if necessary, for the purposes of this litigation.  The U.S. has not yet released most of the investigation materials related to the 9/11 attacks and many of the items that have been released are heavily redacted.  In 2004, the 9/11 Commission agreed that its materials would be made public in 2009.  To date, most of the Commission's materials are still under seal.  In addition, the U.S. has records concerning Abdi Mohamed and WSRA.

Plaintiffs also seek relevant banking records of Bayoumi, Abdi Mohamed, WSRA and the KSA Embassy in Washington, D.C. regarding the payments and money transfers described in the accompanying affidavit.

The extent of necessary third-party discovery will depend in part on whether the KSA will agree to certain facts, the witnesses produced by the KSA and their testimony.

## Discovery of other defendants

As set forth in the accompanying affidavit, plaintiffs are in the process of conducting discovery of other defendants that is directly relevant to the issues raised by the KSA's motion. That discovery includes document production and depositions of the MWL, IIRO, WAMY, individual defendants who worked for those organizations and the KSA, other individual defendants and al Rajhi bank, which has the banking records of the AHIF.