UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
                                          x
                                          :        03 MD 1570 (GBD)
                                          :        ECF Case
                                          :
In re Terrorist Attacks on September 11, 2001    :
                                          :
                                          :
_____ :
                                          x

This document relates to:  *Continental Casualty Co. et
al. v. Al Qaeda Islamic Army*, 04-CV-5970 (GBD)

## PLAINTIFFS' OBJECTIONS TO REPORT AND RECOMMENDATIONS OF MAGISTRATE JUDGE

Pursuant to F.R.C.P. 72(b), 28 U.S.C. §636(b)(1)(C) and Local Rule 72.1, plaintiffs

Continental Casualty Company, Transcontinental Insurance Company, Transportation Insurance

Company, Valley Forge Insurance Company, National Fire Insurance Company of Hartford and

American Casualty Company of Reading, Pennsylvania (collectively, "Plaintiffs"[1]) respectfully

submit the within objections to the report and recommendations (the "Report") of Magistrate

Judge Sarah Netburn, dated November 27, 2017 to the extent (a) recommended Plaintiffs not be

awarded any recovery for the payments they made on reinsurance contracts with other insurers

who had made payments for claims arising of the  September 11th, 2001 terrorist attacks (the

"Attacks") and (b) recommended that prejudgment interest on Plaintiffs' damages be deemed to

accrue from the date of every individual payment that Plaintiffs made to an insured for a claim

arising out of the Attacks.

As described *infra*, both of these recommendations are precluded by the law of the case

doctrine, as this Court has already ruled in this proceeding that similarly situated insurers are

entitled to (i) recovery of the payments they made on reinsurance contracts with other insurers

for claims arising out of the Attacks and (ii) recovery of prejudgment interest accruing as of

_____
[1]Plaintiffs are affiliates (see ECF No. 2, case no. 04 Civ. 5970) and operate under the CNA servicemark.

September 11, 2001. Moreover, even if law of the case was not applicable, Plaintiffs would still be entitled to this relief – recovery of payments on reinsurance payments is permitted by the statute upon which Plaintiffs' cause of action against Iran is based and has been authorized in terrorism cases; and accrual of prejudgment interest as of September 11th is in accord with the governing principles enunciated by the Second Circuit and applied in terrorism cases.

## RELEVANT BACKGROUND

Plaintiffs are insurers who, in accordance with their obligations under applicable insurance and reinsurance policies, paid over $500 million to their insureds and reinsureds in compensation for property and other forms of economic damage resulting from the Attacks. Plaintiffs, in their original pleading, sought recovery for these amounts and alleged causes of action against Iran under Federal and state law utilizing the State Sponsor of Terrorism Exception (the "State Sponsor Exception") to the Foreign Sovereign Immunities Act ("FSIA"), then codified at 28 U.S.C. §1605(a)(7); that pleading was served upon Iran on June 8, 2005 (ECF No. 3344). Congress, on January 28, 2008, amended the FSIA by repealing §1605(a)(7) and replacing that statute with the more expansive 28 U.S.C. §1605A, which created an express cause of action for the benefit of terrorism victims against designated state sponsors of terrorism like Iran. By notices of motion dated September 30, 2016 (ECF Nos. 3350, 3346) Plaintiffs sought to amend their complaint solely as to Iran, to proceed against Iran under §1605A and to enter a default judgment against Iran under §1605A. In an order dated January 5, 2017 (ECF No. 3415), this Court granted the motion to amend the claim against Iran, ruled that service of the amended complaint upon Iran was not necessary, entered a final judgment as to liability against Iran and referred this matter to Magistrate Judge Netburn for the resolution of any remaining issues including damages.

By a notice of motion dated June 19, 2017, Plaintiffs requested an assessment of damages

with respect to that judgment. Plaintiffs contended that the proper measure of their damages

against Iran are the amounts they were compelled to expend under applicable policies of

insurance and reinsurance as the result of the Attacks.  Plaintiffs requested an award of

compensatory damages in their favor and against Iran in the aggregate amount of

$539,357,911.52, broken down as follows:

> Continental Casualty Company: $506,529,819.04.
>
> Transcontinental Insurance Company: $8,489,972.45.
>
> Transportation Insurance Company: $13,714,672.55.
>
> Valley Forge Insurance Company: $8,816,415.23.
>
> National Fire Insurance Company of Hartford: $1,392,930.27.
>
> American Casualty Company of Reading, Pennsylvania: $640,739.98.

In addition, Plaintiffs requested an award of prejudgment interest from September 11, 2001 to

the date of entry of judgment as well as the attorney's fees they have incurred in this action.

In the Report, Magistrate Judge Netburn recommended this Court grant in part and deny

in part Plaintiffs' application as follows:

> A default judgment be entered in favor of Plaintiffs and against Iran
> in the amount of $221,505,968.40 (Report at 6).
>
> Plaintiffs' claim for $3,186,499.40 for claims stemming from their
> participation in an Associated Aviation Underwriters Insurance
> Program be denied without prejudice to a future, more
> particularized application (Report at 7).
>
> Plaintiffs' claim for $8,572,527.43 in claims adjustment costs be
> denied (Report at 8-9).
>
> Plaintiffs' claim in the amount of $305,737,641 for reimbursement
> of the payments they made under reinsurance contracts with other
> insurers be denied (Report at 10).

Plaintiffs' claim for an award of the attorneys' fees incurred in connection with this Action be denied (Report at 11).

Plaintiffs be awarded prejudgment interest at the rate of 9% for all claims arising out of losses in New York State and prejudgment interest at the rate of 4.96% for all claims arising out of losses elsewhere (Report at 12).

Prejudgment interest be computed from each date that Plaintiffs actually made a payment on a claim arising out of the Attacks (Report at 14).

# ARGUMENT

## I.

### UNDER THE APPLICABLE PRINCIPLES OF THE LAW OF THE CASE, PLAINTIFFS ARE ENTITLED TO RECOVERY FOR THE REINSURANCE PAYMENTS THEY HAVE MADE AND TO THE RECOVERY OF PREJUDGMENT INTEREST SINCE SEPTEMBER 11TH, 2001, AS THIS COURT HAS ALREADY AUTHORIZED SUCH RELIEF BY SIMILARLY SITUATED INSURERS

Under the applicable principles of the law of the case, this Court should hold that Plaintiffs are entitled to the recovery for the payments they made on reinsurance contracts with other insurers for claims arising out of the Attacks and to the recovery of prejudgment interest on their damages since September 11, 2001, the date of the Attacks. This Court, in this MDL proceeding, has already directed the entry of judgments authorizing such recoveries by similarly situated insurers and these rulings should be deemed applicable here as well.

Under the doctrine of the law of the case, "when a court decides a rule of law, the decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). Although this doctrine is discretionary, departure from it usually requires "'cogent' or 'compelling' reasons including an intervening change in law, availability of new evidence, or 'the need to correct a clear error or prevent manifest injustice.'" *Johnson v. Holder*, 564 F.3d 95, 99-100 (2d Cir. 2009) (quoting *U.S. v. Quintieri*, 306 F.3d 1217, 1230 (2d Cir. 2002)).

Moreover, a departure from these law of the case principles in a MDL proceeding in particular should be discouraged, as it

> would undermine the purpose of the Multi District Litigation Act, which
> authorizes the coordinated and consolidated pretrial proceedings of civil
> actions involving one or more common issues of fact "for the
> convenience of parties and witnesses and [to] promote the just and

efficient conduct of such actions."  28 U.S.C. §1407(a)…Reversing or otherwise undermining the decisions by the MDL court could lead to the type of inconsistent pretrial rulings that Congress sought to avoid, and therefore frustrate the very purpose of consolidation.  *Deutsch v. Novartis Pharmaceuticals Corp.*, 768 F.Supp.2d 420, 429 (E.D.N.Y. 2011).

In *Federal Insurance Co.  v Al Qaeda*, 03-cv-6978, one of the associated cases in this MDL, the plaintiff-insurers, like the Plaintiffs here, seek recovery of the amounts they paid to their insureds and reinsureds in compensation for property and other forms of economic damage resulting from the Attacks. This Court has already twice entered judgments awarding those plaintiff-insurers reimbursement for amounts they paid as reinsurers and one of those judgments also awarded the plaintiff-insurers prejudgment interest calculated from September 11th.

- On December 22, 2011, this Court entered a judgment (ECF no. 2514) awarding the plaintiff-insurers in *Federal Insurance* a default judgment against defendant Al Qaeda under the Anti-Terrorism Act, 18 U.S.C. §2331 *et seq.*, in the amount of $9,351,247,965.99, adopting, in its entirety, the report and recommendation of Magistrate Judge Maas dated October 13, 2011 (ECF no. 2479).  Those damages represented payments made by those plaintiff-insurers in response to property damage, business interruption and other insurance claims arising out of the Attacks and those damages *included* amounts paid by those plaintiff-insurers to other insurers, under contracts of reinsurance, for claims arising out of the Attacks.

- On March 16, 2016, this Court entered a judgment (ECF no. 3233) awarding the plaintiff-insurers in *Federal Insurance* a default judgment against defendant Iran under the State Sponsor Exception in the amount of $3,040,998,426.03, plus pre-judgment interest, adopting, in its entirety, the report and recommendation of Magistrate Judge Maas dated

December 28, 2015 (ECF no. 3175).  Again, those damages represented payments made

by those plaintiff-insurers in response to property damage, business interruption and other

insurance claims arising out of the Attacks and again, those damages *included* amounts

paid by those plaintiff-insurers to other insurers, under contracts of reinsurance, for

claims arising out of the Attacks. In addition, that judgment awarded those plaintiff-

insurers prejudgment interest calculated from September 11th.

Under the doctrine of the law of the case, the legal principles set forth in these two

judgments in *Federal Insurance* should govern here as well. Plaintiffs' claims for the recovery of

reinsurance payments and prejudgment interest since September 11, 2001 are identical to the

claims asserted by the plaintiff-insurers in *Federal Insurance* and therefore these two judgments

rendered in *Federal Insurance* should be dispositive here. Moreover, applying the law of the case

doctrine here will avoid the kind of inconsistent pretrial rulings that Congress sought to avoid in

the Multi District Litigation Act.

Furthermore, there is no reason, much less a cogent or compelling reason, to depart from

the prior rulings in *Federal Insurance*[2] – there has been no intervening change in the law, there is

no new evidence with calls the prior judgments into doubt and there is no need to correct a clear

error or prevent manifest injustice. Similarly situated parties in the MDL proceeding should not

be subjected to inconsistent pretrial rulings on identical legal issues and, tellingly, the Report was

silent as to why the law of the case doctrine should not be applicable.  Therefore, the law of this

case requires that Plaintiffs be awarded, as damages, the payments they made on reinsurance

---

[2] Curiously, the Report notes that its conclusions with regard to recovery for reinsurance claims and the accrual of prejudgment interest are "in tension with" prior recommendations by Magistrate Judge Maas (Report at 10, 14) but the Report omits to mention the prior *judgments* which adopted those recommendations *in toto*.

contracts with other insurers for claims arising out of the Attacks and to the recovery of

prejudgment interest on their damages since September 11, 2001,

## II.

## EVEN IF THE LAW OF THE CASE DOCTRINE WAS NOT APPLICABLE HERE, PLAINTIFFS WOULD STILL BE ENTITLED TO RECOVERY FOR THE REINSURANCE PAYMENTS THEY HAVE MADE

Even if the law of the case doctrine was not applicable here, Plaintiffs would still be

entitled to recovery for the reinsurance payments they have made. As shown below, not only is

the recovery of reinsurance payments permitted by the statute upon which Plaintiffs' cause of

action is based, but also, such a recovery has been approved by all of the courts which have

addressed that issue in terrorism cases.

The Report's recommendation that Plaintiffs not be awarded any recovery for the

reinsurance payments they had made to other insurers rested upon the conclusion that Plaintiffs,

after making those payments to those other insurers, were not equitably subrogated to those other

insurers' policyholders (Report at 9-10). However, Plaintiffs' claim for the recovery of those

reinsurance payments does not rest upon the equitable doctrine of subrogation[3]. Plaintiffs' sole

---

[3] Even if Plaintiffs' claim for recovery of the reinsurance payments did rest upon equitable subrogation, Plaintiffs would still be entitled to recovery of those payments, as the principles of equitable subrogation are broad enough to authorize the recovery of reinsurance payments. According to the Report, equitable subrogation was not available to Plaintiffs because the losses were sustained by "the insured policy holders who had no contractual privity with Plaintiffs" (Report at 10). However, under New York law, rights of equitable subrogation do not depend upon contractual privity but instead "arise independently of any agreement". *Federal Insurance Co. v. Arthur Andersen & Co.*, 75 N.Y.2d 366, 372, 553 N.Y.S.2d 291, 293 (1990). Subrogation is "the mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity and good conscience ought to pay it." *Id.*, 75 N.Y.2d at 378, 553 N.Y.S.2d at 297. *See also Ocean Accident & Guarantee Corp. v. Hooker Electrochemical Co.*, 240 N.Y. 37, 47 (1925) ("the principle of subrogation ought to be liberally applied for the protection of those who are its natural beneficiaries"). Applying these principles, the court in *Universal Ins. Co. v. Old Time Molasses Co.*, 46 F.2d 925 (5th Cir. 1931) permitted a reinsurer, which had indemnified an insurer for the claim it paid to its insured for the loss of a cargo of molasses, to pursue reimbursement from the shipper who had allegedly caused the underlying damages. As that court ruled, "the equitable considerations which give rise to a right of subrogation in favor of an insurer who pays the loss insured against apply in favor of a reinsurer who complies with his obligation to his reassured...." *Id.* at 927.

cause of action against Iran is based upon the State Sponsor Exception to FSIA, 28 U.S.C.

§1605A.  That statute provides, in subsection (d), that

> [a]fter an action has been brought under subsection (c), actions may also
> be brought for reasonably foreseeable property loss, whether insured or
> uninsured, third party liability, and loss claims under life and property
> insurance policies.

If Congress had intended, in this statute, to limit insurers' causes of action to subrogation claims,

it could have so provided. However, this subsection makes no mention of subrogation claims and

therefore Congress did not limit insurers only to subrogation claims under this subsection.

Instead, Congress authorized insurers to pursue recovery of all reasonably foreseeable property

losses and claims under life and property insurance policies[4].

Here, the two required elements for recovery under §1605A(d) have been satisfied.  First,

an action has been brought here under subsection (c) – thousands of plaintiffs in the MDL seek

recovery against Iran for personal injuries suffered in the Attacks. Second, Plaintiffs' claims for

the reinsurance payments they made are "reasonably foreseeable property loss" and "loss claims

under life and property insurance policies" arising out of the Attacks. Therefore, Plaintiffs are

entitled under §1605A(d) to recovery for the reinsurance payments they have made to other

insurers for claims arising out of the Attacks.

Moreover, the courts which have addressed the issue have unanimously concluded that an

insurer is entitled to recovery of the reinsurance payments that it made for claims arising out of a

terrorist attack. This Court has already ruled twice that the plaintiff-insurers in *Federal Insurance*

---

[4] Curiously, the Report tried to bolster its conclusion by citing Magistrate Judge Maas' report and recommendation
in *Federal Insurance* (ECF No. 2479), which was adopted in its entirety by this Court, for the proposition that
"insurers can only recover for the losses they expended under the doctrine of subrogation" (Report at 8).  However,
the Report fails to mention that Magistrate Judge Maas twice approved the recovery, by the *Federal Insurance*
plaintiffs, of reinsurance payments.

are entitled to the recovery of the reinsurance payments they made and the court in *Certain*

*Underwriters at Lloyd's London v. Great Socialist People's Libyan Arab Jemahiriya*, 811 F.

Supp.2d 53 (D.D.C. 2011) reached a similar conclusion. That case arose out of the hijacking of

an aircraft in 1985 by terrorist operatives of the Abu Nidal Organization (the "ANO") which

resulted in the murder of three Americans, among others, and the destruction of the aircraft. A

syndicate of Lloyd's of London companies had contracted with the aircraft's insurer, MISR, to

reinsure MISR's risk.  Most of those reinsurers sued Syria and its intelligence apparatus under

the State Sponsor Exception alleging that they had supported and sponsored ANO. The court

granted judgment to those plaintiff-reinsurers and awarded them, as damages, the amounts they

had paid out under those reinsurance contracts in connection with that terrorist attack. *Id.* at 74-

75.

     The identical result is required here – Plaintiffs are entitled to recover the amounts they

have paid under reinsurance contracts in connection with the Attacks.

### III.

### EVEN IF THE LAW OF THE CASE DOCTRINE WAS NOT APPLICABLE HERE, PLAINTIFFS WOULD STILL BE ENTITLED TO THE RECOVERY OF PREJUDGMENT INTEREST SINCE SEPTEMBER 11TH, 2001

     Even if the law of the case doctrine was not applicable here, Plaintiffs should still be

entitled to recovery of prejudgment interest since September 11th, as that accrual date is in

accord with the applicable precedents and principles.

     Plaintiffs' judgment against Iran is based upon Federal law – the State Sponsor Exception

to FSIA.  Congress has not legislated an accrual date for the running of prejudgment interest

under Federal law[5] and therefore this issue is left to the broad discretion of the district court. *SEC*

---

[5] Congress has also not legislated the appropriateness or rate of prejudgment interest.

*v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1476-77 (2d Cir. 1996)[6].  In exercising that discretion, a court should take into consideration

> (i) the need to fully compensate the wronged party for the actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court. *Id.* at 1476.

Here, there are multiple reasons why the application of these principles compels a determination that prejudgment interest should be deemed to accrue on September 11, 2001.

First, the decision in *Atlantic Mutual Insurance Company v. Napa Transportation, Inc.*, 399 F.Supp.2d 523 (S.D.N.Y. 2005), *aff'd*, 201 F.App'x (2d Cir. 2006) illustrates how the pertinent policy interests support identifying September 11th as the accrual date. In that case, the plaintiff-insurer, the subrogee of Johnson & Johnson, sued the defendant trucker, alleging that J&J's goods were damaged while being transported by the defendant.  The suit was brought under the Carmack Amendment, 49 U.S.C. §1470, which supplies the exclusive remedy when goods are damaged while being transported by motor carriers in interstate commerce.  An essential element of a plaintiff's case under the Carmack Amendment is proof that the goods, upon arrival at their destination, were damaged.  *New Son Yeng Produce LLC v. United One Transport, Inc.*, 2015 WL 1439884, *3 (S.D.N.Y. March 9, 2015).  Moreover, the plaintiff's actual loss in such cases is measured by the difference between the goods' market value and their value as damaged at their destination.  *Id.*

In *Atlantic Mutual*, the goods were scheduled to be delivered at their destination on December 13, 2001, but were never delivered because of the damage they suffered en route.

---

[6] Since all issues relating to prejudgment interest arise under Federal law, it was error for the Report to conclude that New York law governed the accrual date of the prejudgment interest (Report at 13).

Therefore, for the purposes of the Carmack Amendment, the date of expected delivery was the date that J&J actually suffered its loss. *See Mitsui & Co., Ltd. v. American Export Lines, Inc.*, 636 F.2d 807, 824 (2d Cir. 1981) (in cases involving carriage by land or sea, the shipper "has not suffered any loss until the time when the goods should have been, but were not, delivered").

After ruling that the date of J&J's actual loss, December 13, 2001, was the date of commencement of prejudgment interest[7], the *Atlantic Mutual* court held that because the plaintiff-insurer stood in J&J's shoes and was entitled to recover whatever J&J could have recovered, the plaintiff was entitled to prejudgment interest from the date of loss, *not* from the later date when the plaintiff made its insurance payment to J&J. "Since Johnson & Johnson would no doubt be entitled to prejudgment interest from the date of expected delivery, it stands to reason that plaintiff should have the same rights as to the full amount of that payment." *Id.* at 526. One of the main policy interests which undergirds the award of prejudgment interest is ensuring that the injured party is made whole. *First Jersey Securities*, *supra*, 101 F.3d at 1476, *Mitsui*, *id.* To set a later date for the accrual of prejudgment interest when the plaintiff is a subrogated insurer would grant an undeserved benefit to the defendant

> "based upon the mere fortuity that plaintiff decided to pay Johnson & Johnson's claim and undertake the prosecution of this cause of action. Such a result undermines the policy underlying the awarding of prejudgment interest." 399 F.Supp.2d at 526.

The principles set forth in *Atlantic Mutual* are equally applicable here. Plaintiffs' insureds (and the insureds of their reinsureds) suffered their losses on September 11, 2001, when

---

[7] *See also New Son Yeng Produce LLC, supra,* at *5 (where damaged goods were actually delivered, the date of that delivery was the date of loss and prejudgment interest accrued on that date of loss).

they were injured by the Attacks[8].  Under Federal law, prejudgment interest in tort cases accrues at the time of the underlying injury, as that is when the tortfeasor incurs its obligation to make the injured party whole.  *McCrann v. U.S. Lines, Inc.*, 803 F.2d 771, 773 (2d Cir. 1986).  Had Plaintiffs' insureds (and their reinsureds' insureds) commenced their own actions against Iran to recover the damages they incurred, they would have been entitled to recover prejudgment interest from September 11, 2001.  Plaintiffs now stand in the shoes of those insureds and therefore should be able to collect from Iran the same amounts which their insureds could have collected.  As in *Atlantic Mutual*, to calculate prejudgment interest from the later (and numerous) dates when Plaintiffs made their insurance payments to their insureds would grant the wrongdoer an unwarranted benefit and would undermine the policy underlying the award of prejudgment interest.[9]

---

[8] There are losses that occurred after September 11, 2001, where the injuries resulted from clean-up efforts, or other such circumstances, arising out of the Attacks.  Since this Court has broad discretion with regard to prejudgment interest, since all of these injuries flowed from the Attacks and since one of the applicable considerations in awarding prejudgment interest is "considerations of fairness and the relative equities of the award", *First Jersey Securities*, *supra*, 101 F.3d at 1476, Plaintiffs believe that it is within the discretion of this Court to award prejudgment interest from September 11, 2001 with regard to those claims.  This would also be consistent with the remedial purposes of the State Sponsor of Terrorism Exception and would ensure that the statute fully punishes Iran for its wrongdoing.  If this Court believes that such a result is not within its discretion, prejudgment interest on this group of claims should be awarded from a reasonable intermediate date between the date of the Attacks and the date of the last injury incurred by an insured.  *APL Co. PTE. Ltd v. Blue Water Shipping U.S. Inc.*, 779 F.Supp.2d 358, 371-72 (S.D.N.Y. 2011) (in admiralty action seeking demurrage for four separate shipments of goods, prejudgment interest was deemed to accrue at the midpoint between the first date demurrage was assessed and the date the final shipment was destroyed).

[9] These principles are equally applicable to Plaintiffs' payments to its reinsureds. Plaintiffs reimbursed its reinsureds for payments they had made to their insureds for injuries caused by the Attacks. Since those claimants and those reinsureds could have recovered prejudgment interest on those losses from September 11, 2001, Plaintiffs, who ultimately had to bear those losses, should also be entitled to recover what those claimants and reinsureds would have been entitled to.  Once again, to set a later date for accrual would grant an undeserved benefit to the wrongdoer, Iran. Moreover, in both this MDL and in *Certain Underwriters*, *id.*, reinsurers were held to be entitled to the same recovery of prejudgment interest as subrogated insurers.

Second, the other decisions involving recoveries by insurance companies for terrorism-related losses – the judgment issued by this Court with regard to the *Federal Insurance* plaintiffs (ECF No. 3233) and the ruling in *Certain Underwriters, supra* – have both held that prejudgment interest accrued at the time of the terrorist incident at issue. Indeed, in *Certain Underwriters*, the court expressly stated that the award of prejudgment interest from the date of the attack was, in part, "to prevent…Syria from profiting from its terrorist attacks." *Id.* at 76.

Third, the rationales offered by the Report for its conclusion do not withstand scrutiny. The Report claims that "to the extent the Plaintiffs claim they are entitled to nine percent interest pursuant to New York law, the date from which prejudgment interest begins to accrue likewise must be governed by New York law" (Report at 13). However, Plaintiffs did not assert that the rate of interest was controlled by New York law; instead, Plaintiffs contended that, since the court has discretion to apply the interest rate it deems appropriate, a nine percent rate of interest was appropriate. Moreover, the two cases cited in the Report for the proposition quoted above are readily distinguishable. In both of those cases, the rate of interest not a matter left to the court's discretion; instead, it was controlled by New York law. In *In re September 11 Litigation*, 802 F.3d 314, 343 (2d Cir. 2015), the Federal statute under which the plaintiff had sued expressly required the application of New York's substantive law, which includes the law governing awards of prejudgment interest. Here, there is no analogous provision in the State Sponsor Exception. *Schwimmer v. Allstate Insurance Co.*, 176 F.3d 648 (2d Cir. 1999) was a garden-variety auto insurance coverage dispute which under the applicable choice of law rules was governed by New York law.

To the extent that *American Nat'l Fire Ins. Co. v. Yellow Freight Systems, Inc.*, 325 F.3d 924 (7th Cir. 2003), *Fireman's Fund Ins. Co. v. Never Stop Trucking, Inc.*, 2009 WL 3297780

(E.D.N.Y. Oct. 13, 2009) and *The Sprague & Rhodes Commodity Corp. v. S.S. Toronto*, 1977 A.M.C. 758 (S.D.N.Y. 1977), *aff'd*, 573 F.2d 1296 (2d Cir. 1977) (Report at 14) held that prejudgment interest only accrued when a subrogated insurer made payment for the loss at issue, those cases failed to consider, as discussed in *Atlantic Mutual*, how this supplies an undeserved benefit to the wrongdoer merely because of the fortuity that the lawsuit is brought by an insurer who indemnified the injured party rather than by the injured party. Indeed, given the remedial purpose of §1605A to punish state sponsors of terror and to deter the sponsorship of terrorism, the discretionary factors that the Court should consider and the prior judgment of this Court and the ruling in *Certain Underwriters* as to the accrual date for prejudgment interest, it is, at the very least, inexplicable how the Report could characterize deeming prejudgment interest to accrue on September 11, 2001 as an impermissible "windfall" for Plaintiffs (Report at 14).

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the recommendations in the Report be adopted except that Plaintiffs be awarded recovery for the payments they made on reinsurance contracts with insurers who had made payments for claims arising out of the Attacks and that Plaintiffs be awarded prejudgment interest from September 11, 2001.

Dated:   January 25, 2018
         New York, New York

FERBER CHAN ESSNER & COLLER, LLP

By: _____
      Robert M. Kaplan (RK 1428)

Attorneys for Plaintiffs Continental Casualty
Company, Transcontinental Insurance Company,
Transportation Insurance Company, Valley Forge
Insurance Company, National Fire Insurance
Company of Hartford and American Casualty
Company of Reading, Pennsylvania
One Grand Central Place, Suite 2050
New York, New York 10165
(212) 944-2200

102977