UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

In re:

      TERRORIST ATTACKS ON
      SEPTEMBER 11, 2001

-------------------------------------------------------------------X

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:                               │
│ DATE FILED:    7/6/2018              │
└─────────────────────────────────────┘
```

03-MDL-1570 (GBD)(SN)

OPINION AND ORDER

SARAH NETBURN, United States Magistrate Judge:

On October 6, 2017, the Plaintiffs' Executive Committees ("PECs") filed a motion requesting that the Court impose sanctions on Defendants Soliman Al-Buthe, Abdullah Bin Saleh Al-Obaid, Abdullah Mahsen Al-Turki, Adnan Basha, and Abdullah Omar Naseef (collectively, the "Charity Officials") pursuant to Federal Rule of Civil Procedure 37(b) for failing to comply with the Court's prior orders. The PECs' motion for sanctions is GRANTED in part and DENIED in part.

## BACKGROUND

The PECs allege that the Charity Officials served in leadership roles for various entities and charities that purportedly provided support to al Qaeda, including the International Islamic Relief Organization ("IIRO"), the Muslim World League ("MWL"), Al Haramain Islamic Foundation, and the Rabita Trust. See In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d 659, 667 (2d Cir. 2013). In 2004 and 2005, the Charity Officials filed motions to dismiss based on lack of personal jurisdiction and failure to state a claim. ECF No. 3763 at 1. In support of these motions, the Charity Officials filed various declarations describing their travels to the United States. Id. at 2. The Court granted the Charity Officials' motions to dismiss in 2010. In re Terrorists Attacks on Sept. 11, 2001, 740 F. Supp. 2d 494, 506–07, 509–11 (S.D.N.Y. 2010); In re Terrorist Attacks on Sept. 11, 2001, 718 F. Supp. 2d 456, 476, 483–84 (S.D.N.Y. 2010). In

April 2013, the U.S. Court of Appeals for the Second Circuit vacated the decision and remanded the case for jurisdictional discovery on whether the Charity Officials "controlled and managed some of [the] 'charitable organizations' and, through their positions of control . . . sent financial and other material support *directly* to al Qaeda when al Qaeda allegedly was known to be targeting the United States." In re Terrorist Attacks, 714 F.3d at 678.

On August 22, 2013, the PECs served the Charity Officials with jurisdictional discovery requests. ECF Nos. 3750-3, 3750-4, 3750-5, 3750-6, 3750-7. The requests sought various documents from Al-Obaid, Al-Turki, Basha, and Naseef, including their passports, banking and financial records, documents regarding their travel to foreign countries, and documents relating to their relationships with certain groups and charities. ECF Nos. 3750-4, 3750-5, 3750-6, 3750-7. The requests likewise sought a broad array of materials from Al-Buthe, including his passports, banking and financial records, documents relating to his travel to the United States, and documents regarding his relationships with certain groups and charities. ECF No. 3750-3.

In August and September 2015, the PECs filed motions to compel the Charity Officials to produce additional documents. ECF Nos. 2990, 3024. The PECs argued that Al-Obaid, Al-Turki, Basha, and Naseef had "failed to produce meaningful and responsive documentation" and that they were "engag[ing] in the deliberate obstruction of the discovery process." ECF No. 3024 at 1. The PECs noted that these four defendants had collectively produced only 82 pages of documents in response to the PECs' requests. Id. at 5. In addition, the PECs complained that Al-Buthe had "failed to produce a single document in response to Plaintiffs' discovery requests, choosing instead to interpose a myriad of invalid objections, and implausibly claim[ing] that no relevant documents are within his custody or control." ECF No. 2990 at 1.

On March 22, 2016, the Court held a conference to discuss the motions. ECF No. 3253. During the conference, the Charity Officials argued that the PECs' discovery requests far exceeded the scope of the jurisdictional discovery that the Court of Appeals had ordered. Id. at 73:1–20. The Charity Officials also stated that they did not have MWL or IIRO records in their personal possession and thus could not produce those documents. Id. at 79:4–17. Finally, the Charity Officials asserted that most of the PECs' discovery requests were substantively the same as requests the PECs had served on MWL and IIRO, and they noted that those entities had already produced approximately 460,000 pages of documents. Id. at 72:21–25, 74:4–15. In response to this argument, the PECs explained that after the Court of Appeals remanded the case, the PECs served MWL and IIRO with supplemental discovery requests relating the Charity Officials' activities, but MWL and IIRO apparently refused to supply additional documents, arguing that the supplemental requests were untimely. Id. at 80:9–21.

After hearing the parties' arguments, the Court ordered Al-Obaid, Al-Turki, Basha, and Naseef to produce the following:

> First, a sworn or affirmed certification from each of the four charity defendants that except to the extent to which they have specified that a document is being withheld, they have produced all documents responsive to the requests unless those documents are part of the productions of the MWL or IIRO. Secondly, that there be a privilege log if there are documents being withheld on the basis of privilege.

Id. at 85:12–19. Separately, the Court ordered Al-Buthe to produce "the documents that the plaintiffs seek as well as a certification that Mr. Al-Buthe has produced all the responsive documents in his possession, custody or control." Id. at 113:19–22. When counsel asked whether Al-Buthe was required to respond to all of the PECs' document requests, the Court stated, "I am not carving anything out because my view is the letter which didn't raise specific objections essentially waived those objections and that the general objections that are set forth in the formal document response are not sufficient to assert an objection." Id. at 114:3–7.

3

In June 2017, Al-Obaid, Al-Turki, Basha, and Naseef sent the PECs indexes identifying documents in MWL's and IIRO's productions that the defendants believed were responsive to the PECs' document requests. ECF No. 3750-9 at 1. Counsel explained that the Charity Officials "do not themselves have documents relating to their work at the charities, as those documents remained with the charities after their retirement. Further, since they travelled on official passports, which the government retained after each trip, they do not have personal possession of those passports." Id. In addition, Al-Buthe sent the PECs a letter containing supplemental objections and responses to the PECs' discovery requests as well as a set of responsive documents, including copies of Al-Buthe's passports. ECF No. 3749 at 8; ECF No. 3750-10. None of the five Charity Officials provided certifications or privilege logs. ECF No. 3749 at 7–8.

On September 7, 2017, the parties again appeared before the Court and discussed the outstanding document requests. ECF No. 3725. Addressing defense counsel, the Court stated, "You've been ordered to produce these documents. You failed to do so. . . . I'll give you time to have one last opportunity to cure, to produce these documents, but . . . if they aren't produced within the next 30 days, I am going to invite a sanctions motion from the Plaintiffs' Executive Committee[s]." Id. at 11:17–24. Among the documents to be produced, the Court drew attention to the Charity Officials' passports, stating, "I don't understand why your clients can't obtain . . . certified cop[ies] of their passports from the relevant government entit[ies]." Id. at 11:7–9. In response, counsel merely stated, "Our client inquired about that, and we have not been successful so far." Id. at 11: 12–14. The Court then ordered each Charity Official to produce "certified copies of both the official passport [used for government travel] and any personal passport." Id. at 12:25–13:1. In addition, the Court ordered the Charity Officials to provide the certifications that they had previously been ordered to produce. Id. at 11:1–2, 12:20–21. Finally, the Court

indicated that "[t]o the extent [the Charity Officials] are withholding any documents on privilege grounds . . . a privilege log needs to be produced." Id. at 12:21–23.

On September 26, 2017, Al-Buthe produced a certification stating: "I, Soliman H. Al-Buthe, hereby certify that I have searched for and produced (through my attorneys) all non-privileged documents that are relevant for jurisdictional discovery and responsive to the plaintiffs' jurisdictional discovery document requests. These include documents that were previously produced by the Al Haramain Islamic Foundation, Inc. (USA)." ECF No. 3750-11. On October 17, 2017, after the PECs filed their motion for sanctions, Al-Buthe signed a second certification attesting "under penalty of perjury under the laws of the United States of America":

1. I hereby certify that I have searched for and produced (through my attorneys) all non-privileged documents that are relevant and responsive to the plaintiffs' jurisdictional discovery document requests. These include documents that were previously produced by the Al Haramain Islamic Foundation, Inc. (USA).

2. I have not withheld any documents on the basis of privilege, other than communications with my lawyers after this lawsuit was filed.

ECF No. 3764 Attach. L.

On September 26, 2017, Al-Obaid, Al-Turki, Basha, and Naseef produced supplemental indexes identifying additional documents from MWL's and IIRO's productions that were purportedly responsive to the PECs' discovery requests. ECF No. 3764 Attach. G. Basha also provided a certification stating:

I, Dr. Adnan Basha, hereby certify that, prior to my recent retirement as the Secretary-General of the International Islamic Relief Organization (IIRO), I directed my assistants to guide the IIRO's attorneys through the IIRO's files and archives, and I ensured that the attorneys had full access to the IIRO's files and archives.

I further certify that, through my attorneys, I have produced all documents responsive to the document requests, including both the documents that are available to me, and the documents that were part of the productions of the Muslim World League and the IIRO.

ECF No. 3750-13. On October 2, 2017, Basha provided another certification attesting "[u]nder penalty of perjury" that he traveled to the United States in July 1997, August 1999, and June 2001, and that he does not have the passports that he used from 1992 to 2002. ECF No. 3750-14.

On October 5, 2017, counsel for the Charity Officials sent the PECs a letter indicating that counsel had been unable to reach Naseef, who had been ill for some time. ECF No. 3750-12. Counsel also stated that he had attempted to contact Al-Turki but had not yet received a response. Id. In addition, counsel enclosed a certification from Al-Obaid stating:

> I, Dr. Abdullah bin Saleh Al-Obaid, hereby certify that, as a long-retired Secretary-General of the Muslim World League (MWL) (having served from 1995 to 2000), I no longer have access to the MWL's files and archives.
>
> I further certify that, through my attorneys, I have produced all documents responsive to the document requests, including both the documents that are available to me, and the documents that were part of the productions of the MWL and the International Islamic Relief Organization.

Id.

After the PECs filed their motion for sanctions, on October 14, 2017, Al-Obaid signed a second certification attesting that he no longer had access to MWL's or IIRO's files and archives, that he no longer had the passports he used from 1992 to 2002, and that he visited the United States in August 1997, August or early September 1998, September 2000, and September 2002. ECF No. 3764 Attach. J. Al-Obaid's second certification also stated "under penalty of perjury under the laws of the United States of America":

> I further certify that, through my attorneys, I have produced all non-privileged documents responsive to the jurisdictional discovery document requests, including both the documents that are available to me, and the documents that were part of the productions of the MWL and International Islamic Relief Organization. I have not withheld any documents on the basis of privilege, other than communications with my lawyers after this lawsuit was filed.

Id. None of the Charity Officials has produced a privilege log. ECF No. 3749 at 14.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." "A party may serve on any other party a request" to produce documents within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). "The responding party must either produce documents sought in each request or 'state an objection to the request, including the reasons.'" Pegoraro v. Marrero, 281 F.R.D. 122, 132 (S.D.N.Y. 2012) (quoting Fed. R. Civ. P. 34(b)(2)). "A party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if "a party fails to produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B).

"If a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). In determining the appropriate sanctions to impose, courts generally consider "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance." S. New England Tel. Co. v. Glob. NAPs Inc., 624 F.3d 123, 144 (2d Cir. 2010) (quoting Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302 (2d Cir. 2009)). In addition, "the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).

**DISCUSSION**

During the conference on September 7, 2017, the Court ordered each Charity Official to produce: (1) any other documents that were responsive to the PECs' document requests, including certified copies of the Charity Official's passports; (2) a sworn or affirmed certification that the Charity Official had produced all documents responsive to the PECs' requests, except to the extent documents were withheld on the basis of privilege; and (3) a privilege log listing any documents that were withheld as privileged. ECF No. 3725 at 11–13. The Court also warned the Charity Officials that they would be subject to sanctions if they did not produce the relevant documents and certifications within 30 days. Id. Not one of the Charity Officials has adequately complied with all three of these requirements. Therefore, the Court will impose sanctions on all five Charity Officials.

**I.      Soliman Al-Buthe**

Unlike the other four Charity Officials, Al-Buthe provided copies of his passports to the PECs. ECF No. 3749 at 8. In addition, Al-Buthe provided two certifications affirming that he produced documents in response to the PECs' requests. ECF No. 3750-11; ECF No. 3764 Attach. L. Although Al-Buthe signed the second certification on October 17, 2017, after the PECs' filed their motion for sanctions, he provided this second certification in an attempt to cure deficiencies that the PECs identified in the original certification.

First, the PECs' motion for sanctions noted that Al-Buthe's original certification was not signed under penalty of perjury. ECF No. 3749 at 16. Under 28 U.S.C. § 1746, whenever any matter must be established by a sworn statement, the matter may also be established by an unsworn statement substantially in the following form: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true

and correct. Executed on (date). (Signature)." Al-Buthe's original certification did not contain any attestation that the statement was made under penalty of perjury. But the second certification states, "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct." ECF No. 3764 Attach. L. Thus, the revised certification satisfies the requirements of § 1746.

Second, the PECs noted that Al-Buthe's original certification only affirmed that he had produced documents that were both "*relevant for jurisdictional discovery* and responsive to the plaintiffs' jurisdictional discovery document requests." ECF No. 3749 at 8. The PECs argued that this phrasing enabled Al-Buthe "to withhold documents by unilaterally deeming them beyond the scope or not relevant to jurisdictional discovery." Id. at 14. In his second certification, Al-Buthe stated that he had produced all documents that were "relevant and responsive to the plaintiffs' jurisdictional discovery document requests." ECF No. 3764 Attach. L. Nevertheless, the modified wording does little to correct the problem with the original certification. The second certification still suggests that Al-Buthe unilaterally assessed whether documents were "relevant" before producing them. But the Court did not direct him to produce only those documents that he determined were relevant to jurisdictional discovery. Rather, the Court ordered Al-Buthe to produce all documents that were "responsive" to the PECs' document requests. ECF No. 3253 at 85:12–19; ECF No. 3725 at 12:25–13:1. Thus, Al-Buthe has failed to comply with the Court's prior orders.

In their motion for sanctions, the PECs ask the Court to order Al-Buthe to provide a sworn or affirmed certification that complies with the Court's orders. ECF No. 3749 at 17. The Court has already ordered Al-Buthe to certify that he has produced all documents responsive to the PECs' requests, and ordering him to do so again would hardly serve as a sanction. Still, the

Court is not convinced that Al-Buthe willfully refused to comply. Although his certifications suggest that he only produced documents that he deemed relevant to jurisdictional discovery, it is possible that Al-Buthe actually produced all documents that were responsive to the PECs' document requests but simply executed a poorly drafted certification that did not accurately describe the contents of his production. Thus, Al-Buthe is ORDERED to produce a certification that fully complies with the Court's orders within 30 days of the date of this Opinion and Order. Specifically, the certification must comply with 28 U.S.C. § 1746 and must state whether Al-Buthe has produced all documents that are *responsive* to the PECs' document requests, regardless of whether he believes those documents are relevant to the jurisdictional discovery that the Court of Appeals ordered.

The PECs also request that the Court hold Al-Buthe in contempt for failing to comply with the Court's previous orders. ECF No. 3749 at 17. "The primary purpose of the imposition of a sanction for civil contempt is to coerce the contemnor into future compliance and to remedy past non-compliance, rather than to punish him." In re Dickinson, 763 F.2d 84, 87 (2d Cir. 1985). But "[h]olding a person in civil contempt is a harsh sanction." Rogue Wave Software, Inc. v. BTI Sys. Inc., No. 16-CV-7772 (VM)(KNF), 2017 WL 6805329, at *11 (S.D.N.Y. Dec. 15, 2017). As previously discussed, it is unclear whether Al-Buthe willfully refused to comply with the Court's orders. Thus, the Court finds that an order to show cause why Al-Buthe should not be held in contempt is not warranted under the circumstances—at least at this stage.

In addition, the Court must order Al-Buthe to pay the reasonable attorneys' fees and costs that the PECs incurred in connection with their motion for sanctions unless his failure to comply with the Court's prior orders "was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Al-Buthe has not argued that his failure to

comply with the Court's orders was justified or that other circumstances would make such an award unjust. He merely contends that he has "properly responded to the plaintiffs' jurisdictional discovery requests" and that "any remaining open issues . . . are of minor importance." ECF No. 3763 at 1. But Al-Buthe's failure to provide an adequate certification is not a minor issue. The Court repeatedly ordered him to produce the certification to ensure that he had complied with all of his discovery obligations, and the certification he provided did not fulfill that purpose. Therefore, Al-Buthe is required to pay the reasonable attorneys' fees that the PECs incurred in connection with their motion for sanctions.

## II.     The Other Four Charity Officials

The PECs ask the Court to impose the following sanctions on Al-Obaid, Al-Turki, Basha, and Naseef: (1) strike their objections to the PECs' document requests in their entirety and order them to produce every responsive document; (2) treat these defendants' refusals to comply with the Court's prior orders as acts of contempt; (3) require these defendants to pay the costs and reasonable attorneys' fees that the PECs incurred in connection with the motion for sanctions; (4) order the defendants to provide sworn or affirmed certifications that fully comply with the Court's orders; and (5) impose any other sanctions as the Court deems appropriate. ECF No. 3749 at 17–18. The PECs also request that the Court order defense counsel to clarify whether Al-Turki and Naseef are continuing to participate in this action and indicate when Al-Turki and Naseef were last responsive to counsel's communications. Id.

During the conferences on March 22, 2016, and September 7, 2017, the Court ordered the Charity Officials to produce all documents responsive to the PECs' document requests, unless the documents were listed on a privilege log. ECF No. 3253 at 85:12–19; ECF No. 3725 at 11–12. In doing so, the Court effectively struck all objections to the PECs' document requests that

were not based on privilege. In addition, in response to the motion for sanctions, defense counsel represented that the Charity Officials did not withhold any documents on the basis of privilege, apart from their communications with their counsel after this action was commenced. ECF No. 3763 at 11. At this point, the Court need not strike the Charity Officials objections to the PECs' document requests because the Court has already stricken most of their objections and the Charity Officials have waived any remaining objections that they might have asserted based on privilege.

Despite the Court's repeated orders, Al-Obaid, Al-Turki, Basha, and Naseef have all failed to produce certified copies of their passports. These defendants argue that "the information that plaintiffs are now seeking—their travels to the United States and their passports—[is] largely addressed" through the declarations the defendants provided many years ago in connection with their motions to dismiss and through the certifications they provided in September and October 2017. ECF No. 3763 at 10. But the PECs have frequently reiterated that "the reason the passports were to be produced was to provide evidence of the defendants' travel not only to the United States, but to a multitude of other locations." ECF No. 3770 at 5. Moreover, during the March 22, 2016 and September 7, 2017 conferences, the Court did not limit its orders to information related to the Charity Officials' travels to the United States. On the contrary, the Court ordered the Charity Officials to produce "all documents responsive to the [PECs'] requests." ECF No. 3253 at 85:12–19; ECF No. 3725 at 12:25–13:1.

Al-Obaid, Al-Turki, Basha, and Naseef have also stated—time and time again—that they do not possess their passports and have been unsuccessful in obtaining copies from the relevant government agencies. The defendants note that they "have made multiple efforts over the past year to obtain the passports for four of the five Defendants, including through a formal written

request to the Saudi government." ECF No. 3763 at 11. But the Court is highly skeptical of the suggestion that Al-Obaid, Al-Turki, Basha, and Naseef are entirely unable to obtain copies of the passports, especially in light of the fact that Al-Buthe has already produced copies of his passports. The Court has given the Charity Officials several years to submit requests to the relevant government agencies and go through the processes necessary to obtain certified copies. Furthermore, the Kingdom of Saudi Arabia itself is a codefendant in this matter and is currently engaging in jurisdictional discovery on a parallel track. It seems that Al-Obaid, Al-Turki, Basha, and Naseef could have contacted their codefendant and sought assistance in obtaining copies of the passports that the Court ordered them to produce. The defendants have given no explanation for the Saudi government's refusal to provide copies of the passports, and the Court is not convinced that these defendants have made adequate efforts to obtain them.

On September 7, 2017, the Court warned Al-Obaid, Al-Turki, Basha, and Naseef that they would be subject to sanctions if they did not produce their passports and otherwise comply with the Court's orders within 30 days. The Court has discretion to fashion appropriate relief tailored to these defendants' discovery failures. Accordingly, the Court precludes Al-Obaid, Al-Turki, Basha, and Naseef from offering any testimony or further evidence, other than such evidence that has been produced as of today's date, to rebut admissible evidence offered by a party to establish these defendants' whereabouts on a particular date.

The PECs also ask the Court to treat these defendants' failures to comply with the Court's prior orders as contempt. As discussed above, "civil contempt is a harsh sanction," which the Court does not impose lightly. Rogue Wave Software, 2017 WL 6805329, at *11. At this juncture, the Court will not issue an order to show cause why these defendants should not be

held in contempt. But the Court may consider holding Al-Obaid, Al-Turki, Basha, and Naseef in contempt if they fail to comply with this Opinion and Order.

In addition, the Court must order Al-Obaid, Al-Turki, Basha, and Naseef to pay the reasonable attorneys' fees and costs that the PECs incurred in bringing their motion for sanctions unless these defendants' failures to comply with the Court's prior orders were "substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). The defendants argue that their failure to produce their passports was justified because they do not have the passports in their possession and have been unsuccessful in obtaining them. ECF No. 3763 at 11. But as previously discussed, the Court is not convinced that the defendants made adequate endeavors to obtain copies of their passports, and the Court gave them a substantial amount of time to obtain those copies. Accordingly, Al-Obaid, Al-Turki, Basha, and Naseef must pay the reasonable attorneys' fees and costs that the PECs incurred in connection with their motion for sanctions.

With respect to the remaining sanctions the PECs have requested, the Court will discuss the four defendants individually.

### A.      Abdullah Bin Saleh Al-Obaid

Al-Obaid provided two certifications in response to the Court's orders. The second certification was signed on October 14, 2017, after the PECs filed their motion for sanctions, but this certification attempts to correct the drafting deficiencies that the PECs identified in their motion. Al-Obaid's second certification states, "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct." ECF No. 3764 Attach. J. In addition, the second certification states that Al-Obaid has produced "all non-privileged documents *responsive* to the jurisdictional discovery document requests." Id. (emphasis added).

In other words, Al-Obaid does not limit his certification to documents that he deems relevant to jurisdictional discovery. Al-Obaid has provided a satisfactory certification, albeit somewhat belatedly, and the Court will not require him to produce another certification.

### B.   Adnan Basha

Basha also produced two certifications. The first certification was provided to the PECs on September 26, 2017, and states that Basha "produced all documents *responsive* to the document requests." ECF No. 3750-13 (emphasis added). Basha did not limit his production to documents he determined were relevant to jurisdictional discovery. But contrary to the requirements of 28 U.S.C. § 1746, Basha's first certification contained no affirmation under penalty of perjury that his statements were true and correct. Thus, the first certification did not satisfy the Court's order that Basha produce "a sworn or affirmed certification." ECF No. 3253 at 85:12–19. Basha also produced a second declaration recounting his travels to the United States and explaining that he does not have his passports. ECF No. 3750-14. Although this latter declaration was signed "under penalty of perjury," it does not address whether Basha produced all documents responsive to the PECs' document requests. Therefore, Basha is ORDERED to produce another certification that fully complies with the Court's orders within 30 days of the date of this Opinion and Order. The certification must meet the requirements of 28 U.S.C. § 1746 and must state whether Basha has produced all documents that are responsive to the PECs' document requests. The certification must also identify any specific medical issues that have prevented Basha from fulfilling his discovery obligations in a timely manner. In the alternative, if Basha is currently incapacitated, Basha may submit a competent sworn or affirmed certification from a qualified treating physician identifying the specific medical issues that have prevented him from participating in the discovery process.

### C.     Abdullah Mahsen Al-Turki and Abdullah Omar Naseef

Al-Turki and Naseef have not provided the PECs with any certifications since the March 22, 2016 conference. In response to the motion for sanctions, defense counsel indicated that he had repeatedly attempted to contact Al-Turki and Naseef "through their sons, and through local counsel and colleagues in Saudi Arabia," but had been "unsuccessful in receiving any response." ECF No. 3763 at 10. According to defense counsel, Al-Turki was 77 years old at the time, was "apparently out of the country, which may be for medical purposes, and [was] not responding to [counsel's] communications." Id. Defense counsel also represented that Naseef was 78 years old, was apparently "incapacitated," and was "unable to communicate with others about substantive topics." Id.

Although the Court is sympathetic to the health issues that these two defendants may be facing, the Court first ordered Al-Turki and Naseef to respond to the PECs' document requests and provide certifications in March 2016. Defense counsel has not explained why Al-Turki and Naseef failed to comply with the Court's orders over the many months that elapsed between the Court's original orders and the PECs' motion for sanctions. Moreover, the difficulties defense counsel has experienced in contacting his clients raise questions of whether Al-Turki and Naseef are continuing to participate in this litigation. The Court was troubled to learn that Al-Turki and Naseef have not been responsive to counsel's recent attempts to contact them.

Al-Turki and Naseef are ORDERED to produce certifications that comply with the Court's orders within 30 days of the date of this Opinion and Order. The certifications must comply with 28 U.S.C. § 1746 and must state whether Al-Turki and Naseef have produced all documents responsive to the PECs' document requests. The certifications must also state whether Al-Turki and Naseef are continuing to participate in this case and must identify the

specific medical issues that have prevented them from fulfilling their discovery obligations in a timely manner. In the alternative, if Al-Turki or Naseef is currently incapacitated, that defendant may submit a competent sworn or affirmed certification from a qualified treating physician identifying the specific medical issues that have prevented the defendant from participating in the discovery process. If defense counsel remains unable to contact his clients, defense counsel must file a letter with the Court within 30 days of the date of this Opinion and Order detailing his efforts to contact his clients and indicating when his clients last responded to his communications. At that time, the Court will consider whether a default should be entered against these defendants for failing to participate in their defense. See Fed. R. Civ. P. 55(a).

## CONCLUSION

For the foregoing reasons, the PECs' motion for sanctions is GRANTED in part and DENIED in part. Defendants Al-Obaid, Al-Turki, Basha, and Naseef are precluded from offering any testimony or further evidence, other than such evidence that has been produced as of the date of this Opinion and Order, to rebut admissible evidence offered by a party to establish these defendants' whereabouts on a particular date. In addition, Defendants Al-Buthe, Al-Turki, Basha, and Naseef are ORDERED to produce certifications that fully comply with the Court's orders within 30 days of the date of this Opinion and Order. The certifications from Al-Turki, Basha, and Naseef must describe the specific medical issues that have prevented them from fulfilling their discovery obligations in a timely manner, and the certifications from Al-Turki and Naseef must indicate whether they are continuing to participate in this litigation. In the alternative, if Al-Turki, Basha, or Naseef is incapacitated, that defendant may produce a competent sworn or affirmed certification from a qualified treating physician identifying the specific medical issues that have prevented the defendant from fulfilling his discovery

obligations. If defense counsel is unable to contact Al-Turki and Naseef, counsel must file a letter with the Court within 30 days of the date of this Opinion and Order describing his efforts to contact his clients and indicating when he last had contact with them. The Court will then consider whether a default should be entered against them. If the Charity Officials remain noncompliant with the Court's orders, the Court may impose additional sanctions and may order them to show cause why they should not be held in contempt.

Finally, the Court will require the Charity Officials to pay the reasonable attorneys' fees and costs that the PECs incurred in bringing their motion for sanctions. The parties are ORDERED to meet and confer and make good faith efforts to reach agreement on the reasonable attorneys' fees and costs. Within 60 days of the date of this Opinion and Order, the parties shall file a joint status letter indicating whether they have agreed upon the attorneys' fees and costs that should be imposed. If the parties have not reached agreement, the status letter should propose a reasonable schedule for briefing on the amount of the attorneys' fees and costs.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 3748.

**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge

DATED:     July 6, 2018
           New York, New York