UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:

       TERRORIST ATTACKS ON
       SEPTEMBER 11, 2001

-----------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __ 8/27/2018
```

03-MD-1570 (GBD)(SN)

<u>OPINION AND ORDER</u>

SARAH NETBURN, United States Magistrate Judge:

       On December 1, 2017, the Plaintiffs' Executive Committees ("PECs") filed a motion to impose sanctions on Defendants Muslim World League ("MWL") and International Islamic Relief Organization ("IIRO"). ECF No. 3822. The PECs also filed a motion to compel MWL and IIRO to produce various categories of documents. ECF No. 3827. The motion for sanctions is DENIED, and the motion to compel is GRANTED in part and DENIED in part.

## BACKGROUND

       Plaintiffs served initial document requests on MWL and IIRO in 2005 and served several supplemental document requests on the organizations over the years that followed. ECF No. 3825 at 2; ECF Nos. 3829-1, 3829-2, 3829-3, 3829-4, 3829-5, 3829-6, 3829-7, 3829-8. MWL and IIRO note that Plaintiffs have served a total of 275 requests, many of which include various subparts. ECF No. 3585 at 3. The PECs contend that MWL's and IIRO's responses to Plaintiffs' discovery requests were generally deficient between 2005 and 2012. ECF No. 3825 at 2–3. The PECs also assert that during that time period, MWL and IIRO's counsel, Mr. Martin McMahon, misrepresented that MWL and IIRO had already produced all responsive documents, misstated the manner in which records were kept in MWL's and IIRO's branch offices, produced the same documents multiple times, and blamed his clients' discovery failures on language barriers and a purported lack of familiarity with the U.S. judicial system. Id. at 3, 8. MWL and IIRO point out

that Mr. McMahon does not read or speak Arabic and relied heavily on MWL and IIRO staff to review documents written in Arabic, even though the staff had "little understanding of the tasks they were being asked to perform." ECF No. 3858 at 3.

In early 2011, Plaintiffs filed two motions to compel MWL and IIRO to produce certain categories of documents. See ECF No. 3829-23. On April 12, 2011, the parties appeared before the Honorable Frank Maas, who ordered MWL and IIRO to search for and produce documents falling into eight specific categories. Id. at 39–42. At subsequent conferences, Judge Maas issued further orders directing MWL and IIRO to search for additional categories of documents. See ECF No. 3825 at 2–3. The PECs claim that MWL and IIRO remained largely noncompliant with the Court's orders and Plaintiffs' requests. Thus, in August 2011, Plaintiffs filed a motion requesting that the Court impose case-dispositive sanctions on MWL and IIRO. See id. at 3–4. During a conference held on November 16, 2011, Judge Maas stated that although he might be open to imposing less severe sanctions, including an award of attorneys' fees, he was not prepared to grant the dispositive sanctions that Plaintiffs requested. ECF No. 3826-86 at 15–16, 24–26. Judge Maas also directed MWL and IIRO to search all of its branch offices for documents responsive to Plaintiffs' requests and warned that an inadequate search "may lead to dispositive sanctions." Id. at 15–16.

In late 2012, MWL and IIRO retained Lewis Baach PLLC as counsel to assist in searching for and producing documents in compliance with the Court's orders and Plaintiffs' requests. ECF No. 3857 at 1–2. Using a team of U.S. attorneys fluent in Arabic, the firm conducted a large-scale search and gathered documents from 17 branch offices in 14 countries. Id. at 2. MWL and IIRO produced nearly 500,000 pages of records and produced indices that purportedly organize the documents by specific categories of document requests. Id. at 2, 18.

Nevertheless, on December 1, 2017, the PECs filed another motion for sanctions and another motion to compel MWL and IIRO to produce various categories of documents. ECF Nos. 3822, 3827. The PECs argue that the Court should impose sanctions on MWL and IIRO for "their pattern of blatant and material misrepresentations to plaintiffs and the Court, and their consistent disregard for multiple Court orders." ECF No. 3825 at 1. In addition, the PECs contend that MWL and IIRO "have failed to produce scores of documents that are responsive to plaintiffs' document requests and, in many cases, fall within the scope of prior orders issued by this Court compelling production of documents in specified categories." ECF No. 3828 at 2. Thus, the PECs ask the Court to compel MWL and IIRO to produce additional documents. Id.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "A party may serve on any other party a request" to produce documents within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). "The responding party must produce documents sought in each request or 'state an objection to the request, including the reasons.'" Pegoraro v. Marrero, 281 F.R.D. 122, 132 (S.D.N.Y. 2012) (quoting Fed. R. Civ. P. 34(b)(2)). "A party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if "a party fails to produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B). "If a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery, including an order under Rule . . . 37(a), the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A).

## SANCTIONS

First, the PECs ask the Court to impose sanctions on MWL and IIRO pursuant to Federal Rule of Civil Procedure 37 for allegedly failing to produce responsive documents and misrepresenting that the organizations had produced all responsive documents at various points between 2005 and 2011. ECF No. 3825 at 7–19. "[A] motion for Rule 37 sanctions should be promptly made, thereby allowing the judge to rule on the matter when it is still fresh in his mind." Mercy v. Suffolk County, 748 F.2d 52, 55 (2d Cir. 1984). "While Rule 37 does not establish any time limits within which a motion for sanctions must be filed, unreasonable delay may render such motions untimely." Shamis v. Ambassador Factors Corp., 34 F. Supp. 2d 879, 886 (S.D.N.Y.), on reargument, 187 F.R.D. 148 (S.D.N.Y. 1999). Instead of filing their motion promptly, the PECs waited to bring their motion for sanctions until more than six years after MWL's and IIRO's alleged misconduct. This is most certainly an unreasonable delay.

The PECs contend that they waited to bring their motion for sanctions because (1) "as plaintiffs received more documents from MWL-IIRO the scope of their prior misconduct and misrepresentations became even clearer," (2) "plaintiffs did not want to take any action that would chill the production of additional documents," and (3) "plaintiffs believed they had a claim that the amount of the sanctions was to be based upon how grievous the error, including how long MWL-IIRO took to correct the error." ECF No. 3825 at 5 n.5. These excuses for the delay are unavailing. Courts impose sanctions "to achieve the orderly and expeditious disposition of cases." Goodyear Tire & Rubber Co. v. Haeger, 137 S. Ct. 1178, 1186 (2017) (quoting Link v. Wabash R.R., 370 U.S. 626, 630–31 (1962)). Indeed, as the PECs acknowledge, "an award of sanctions under Rule 37 should effectuate its three purposes: (1) obtaining compliance with discovery orders; (2) ensuring the disobedient party does not benefit from non-compliance; and

(3) providing a general deterrent in the particular case and litigation in general." <u>Nieves v. City of New York</u>, 208 F.R.D. 531, 535 (S.D.N.Y. 2002). The PECs should have sought sanctions years ago, and if MWL and IIRO continued to be noncompliant with their discovery obligations, the PECs could have asked the Court to impose more severe sanctions. But because the PECs waited to file their sanctions motion until many years after the alleged misconduct and after document discovery closed, any sanctions the Court imposes now would do little to obtain compliance with the Court's discovery orders and would hardly serve as a deterrent to future misconduct.

Moreover, at this point, the discovery issues underlying the PECs' motion for sanctions are far from being fresh in the Court's mind. <u>See</u> <u>Mercy</u>, 748 F.2d at 55. Judge Maas, who dealt with these discovery disputes more than seven years ago, has now retired from the bench. The PECs ask me to dig into a voluminous record from seven to thirteen years ago to decipher whether and to what extent MWL and IIRO failed to comply with their discovery obligations and made misrepresentations about their production. Thereafter, I am expected to gauge the appropriate sanctions for misconduct that allegedly occurred nearly a decade ago under another judge's supervision. Such an endeavor would be time-consuming, inefficient, and nearly impossible to conduct with any degree of accuracy. Thus, the Court will not engage in that exercise. The PECs' motion for sanctions is DENIED as untimely.

## MOTION TO COMPEL

### I.     Branch Offices

The PECs contend that MWL and IIRO have not searched all of the organizations' branch offices for those branches' banking records and the categories of documents identified in the Court's April 12, 2011 Order. ECF No. 3828 at 4. In response, MWL and IIRO note that they

only "agreed to facilitate attorney reviews of branch offices with reasonable connections to allegations made in Plaintiffs' complaint . . . consistent with the proportionality standard of the Federal Rules." ECF No. 3857 at 16. MWL and IIRO also point out that "[a] search of every office, including offices with no connection to Plaintiffs' allegations—Argentina and Brazil, for instance—would be unduly burdensome, unlikely to yield useful information and not proportional to the needs of this case." Id. at 17 (footnote omitted).

But during the November 16, 2011 conference, the Court directed MWL and IIRO to search for records located at all of their branches:

> It also seems to me that the request, unless Mr. Carter tells me otherwise, extends to each branch of the organization. And to the extent that there are nonduplicative files in the branches, those have to be produced, whether it's burdensome or not.
>
> This whole case is about money being diverted toward terrorist goals. As I understand it, the lion's share of the effort is to see where money went. So the notion that this is a lot of paper or bytes of information and therefore burdensome, Mr. McMahon, doesn't really resonate to me. . . .
>
> Except to the extent that the two sides can agree that some branch office is not relevant, if each branch office is not queried and the documents from that branch produced, as far as I'm concerned that will have been an inadequate search and may lead to dispositive sanctions.

ECF No. 3826-86 at 15–16. The Court will not allow MWL and IIRO to relitigate an issue that has already been decided. Thus, within 60 days of this Opinion and Order, MWL and IIRO are ORDERED to search every branch office that has not already been searched (unless the parties can agree that a branch is not relevant) and produce any banking records from those offices and any documents that fall within the categories identified in the Court's April 12, 2011 Order. In light of the parties' discussions in 2013 and continuing conversations in 2016 about the branch offices that should be included in the search, the plaintiffs are strongly encouraged to evaluate whether it is truly necessary for MWL and IIRO to search all of their branch offices or whether a search of a more targeted group of branch offices will be sufficient.

## II.    Other Document Requests

The PECs also contend that MWL and IIRO have failed to produce responsive documents that fall within various other categories of requests, including records relating to the organizations' committees, boards, councils, and internal bodies; records from audits and internal investigations; records concerning senior officials of MWL and IIRO; communications with Saudi government ministries and embassies; records concerning the Rabita Trust and Al Haramain Al Masjed Al Aqsa; and records concerning MWL's and IIRO's alleged support for jihadist universities. ECF No. 3828 at 4–18. For each of these categories, however, the PECs summarily conclude that MWL's and IIRO's productions have been incomplete, and the PECs speculate that there must be more documents that MWL and IIRO have not yet produced. Although the PECs point to various records suggesting that there *might* be more documents, the PECs have not offered any concrete evidence showing that there are actually more documents in MWL's and IIRO's possession and control that the organizations have failed to produce.

Furthermore, MWL and IIRO note that they retained Lewis Baach PLLC in 2012 to conduct a massive search for documents responsive to the PECs' voluminous requests. According to MWL and IIRO, "dozens of overseas trips were taken by a team of U.S. attorneys fluent in Arabic to review and gather records from 17 offices scattered across 14 countries and over 300 days have been spent reviewing an estimated 2 million pages of documents, predominately in Arabic." ECF No. 3857 at 2 (footnotes omitted). As a result of these efforts, MWL and IIRO have produced nearly 500,000 pages of records responsive to the PECs' requests. Id. MWL and IIRO also point to documents that have been produced in response to categories of requests that the PECs have identified as deficient, and the organizations provide reasoned explanations for the small numbers of documents that were located in certain

categories. Id. at 6–15. Apart from their failures to search all of their branches for documents (as discussed above), MWL and IIRO have adequately searched for documents responsive to the Court's prior orders and the PECs' requests.

### III.    Organization of the Documents

Finally, the PECs argue that the documents MWL and IIRO have produced are largely disorganized and that the indices MWL and IIRO provided to help identify responsive documents are relatively useless. ECF No. 3828 at 19–20. But the PECs do not offer any suggestions on how this issue should be ameliorated or what actions the Court should take in response. See id. It is unclear how the parties can address this purported lack of organization at this late stage in the discovery process. Moreover, MWL and IIRO have made good faith efforts to assist the PECs in reviewing the numerous documents that were produced. MWL and IIRO have provided the PECs with indices that organize the documents by specific categories of discovery requests, have provided additional information regarding the provenance of certain documents, and have identified individual documents that are responsive to specific requests. ECF No. 3857 at 18–19. Accordingly, any relief the PECs seek with respect to the purported lack of organization of MWL's and IIRO's documents is DENIED.

### CONCLUSION

The PECs' motion for sanctions (ECF No. 3822) is DENIED as untimely. In addition, the PECs' motion to compel (ECF No. 3827) is GRANTED in part and DENIED in part. Within 60 days of the date of this Opinion and Order, MWL and IIRO are ORDERED to search all of the branch offices that they have not already searched and produce any banking records from those offices and any documents falling within the categories identified in the Court's April 12, 2011

Order. MWL and IIRO are not required to search for any other documents at this time. The Clerk

of Court is respectfully directed to terminate the motions at ECF Nos. 3822 and 3827.

**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge

DATED:      August 27, 2018
            New York, New York