# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE: TERRORIST ATTACKS ON         :
SEPTEMBER 11, 2001                  :          MDL 03-1570 (GBD)(SN)

**This Document Relates To:**

*Havlish, et al. v. bin Laden, et al.,* **Case No. 03-CV-09848**
*Ashton, et al. v. al Qaeda Islamic Army, et al.*, **Case No. 02-CV-06977**
*Burnett, Sr., et al., v. Islamic Republic of Iran,* **Case No. 15-CV-9903**
*Burlingame, et al. v. bin Laden, et al.*, **Case No. 02-CV-07230**
*Bauer, et al. v. al Qaeda Islamic Army, et al*., **Case No. 02-CV-07236**
*O'Neill, Sr., et al. v. Republic of Iraq, et al.*, **Case No. 04-CV-1076**
*Federal Insurance Co., et al. v. al Qaida, et al.,* **Case No. 03-CV-06978**

----
*Dillaber, et al. v. Islamic Republic of Iran, et al.,* **Case No. 18-CV-03162**
*Agyeman, et al. v. Islamic Republic of Iran, et al.,* **Case No. 18-CV-05320**
*Morris, et al. v. Islamic Republic of Iran, et al.,* **Case No. 18-CV-05321**
*Derubbio, et al. v. Islamic Republic of Iran, et al.,* **Case No. 18-CV-05306**
*Schlissel, et al. v. Islamic Republic of Iran, et al.,* **Case No. 18-CV-05331**
*Kamardinova, et al. v. Islamic Republic of Iran, et al.,* **Case No. 18-CV-05339**
*Ades, et al. v. Islamic Republic of Iran, et al.,* **Case No. 18-CV-07306**

**DECLARATION OF TIMOTHY B. FLEMING
IN SUPPORT OF THE *HAVLISH* PLAINTIFFS' RENEWED MOTION
FOR AN ORDER CREATING A COMMON BENEFIT FUND AND
AUTHORIZING CERTAIN DISBURSEMENTS THEREFROM**

Timothy B. Fleming declares as follows:

1. I am an attorney based in Washington, D.C. I am admitted to practice before this Court *pro hac vice*.

2. I am of counsel to the law firm Wiggins, Childs, Pantazis, Fisher, Goldfarb, PLLC, which is one of the counsel for the *Havlish*, judgment holders in *Havlish, et al. v. bin Laden, et al.,* Case No. 03-CV-09848.

3. I submit this Declaration in support of the above-titled motion, and it is based upon facts of which I have personal knowledge.

4. In its first year, the law that created the United States Victims of State Sponsored Terrorism Fund ("USVSST Fund"), 42 U.S.C. §10609, required a good deal of interpretation by the congressionally-appointed Special Master due to some rather obtuse provisions, especially one relating to USVSST claims based on terrorism judgments emanating from the *In Re: Terrorist Attacks on September 11, 2001* multi-district litigation. In this one particular, the legislation provided:

> in the event that a United States person, or the immediate family member of such person has an eligible claim under this section and has received an **award or an award determination** under Section 405 of the Air Transportation Safety and System Stabilization Act (49 U.S.C. 40101 note), the amount of compensation to which such person, or the immediate family member of such person, was determined to be entitled under Section 405 of the Air Transportation Safety and System Stabilization Act (49 U.S.C. 40101 note) ["ATTSSA"] **shall be considered controlling for the purposes of this section**, notwithstanding any compensatory damages amounts such person, or immediate family member of such person, is deemed eligible for or entitled to pursuant to a final judgment [under the FSIA].

42 34 U.S.C. §20144 d.3.A.(ii)(III) (*Boldface added*).

5. In the summer of 2016, the Special Master stated, on the USVSST website and verbally in two nationwide "town hall" style conference calls held on June 24, 2016 and June 29, 2016, that he interpreted the above-quoted provision to mean that all 9/11 family members who received any money from any distribution to a 9/11 decedent's estate from the 9/11 Victims' Compensation Fund ("VCF1") were subject to the "controlling" language in the USVSST law, and that this meant that any such person would have the amount of their VCF1 payment constructively substituted for the amount of their FSIA judgment and, further, the amount of

their VCF1 payment would then be subtracted from their constructive FSIA judgment amount as an offset to derive their USVSST payment, which would be, perforce in every case, a net of zero.

6. This interpretation of the "controlling" language meant – and the Special Master expressly acknowledged this – that everyone who had received any money – even $1 – from the VCF1 fifteen years before would receive no payment from the USVSST because, although they were statutorily "eligible" for a USVSST payment, their payment would be calculated to be zero.

7. Further, the Special Master stated that this interpretation would apply to any person who received VCF1 money derivatively by virtue of having been an heir of the 9/11 decedent that received the award.

8. The Air Transportation Safety and System Stabilization Act ("ATSSSA") authorized VCF1 "awards" only to the estates of 9/11 decedents and no one else. Thus, those monies would pass to the heirs of the 9/11 decedent, whether by will or the terms of an intestacy statute, and the VCF1 Special Master required that the personal representatives of the 9/11 decedents' estates make thorough disclosures of the heirs and submit a distribution plan so that the VCF1 Special Master could ensure that the right persons received the monies under a will or intestacy statute. Those monies were not, however, VCF1 "awards" to such heirs.

9. In the town hall conference calls, the undersigned *Havlish* counsel challenged this announced interpretation by the Special Master directly, arguing to the Special Master that such distributions were not VCF1 awards, but rather were inheritances, to which the family members were entitled not "under" the ATSSA, but under a will or intestacy statute. Thus, none of the family members of 9/11 decedents who received VCF1 money years before had received that money as VCF1 "awards" to them, but rather as inheritances from their loved ones, and therefore the "controlling" language in the USVSST law was inapplicable.

10. In response during the town hall conference calls, the Special Master expressed sympathy for the unfairness aspect of the argument, but held fast to his interpretation. In this timeframe, he also published on the USVSST website, draft "FAQ's" (Frequently Asked Questions, and answers thereto), the same interpretation.

11. *Havlish* counsel followed up by filing written comments following the publication of draft regulations, more fully expressing the reasoning that these VCF1 distributions were not "awards" under the ATTSSA but rather, were inheritances. *See* Ex. 2.

12. Thereafter, the Special Master changed his interpretation, embraced *Havlish* counsel's reasoning, rewrote the FAQ's, and determined that immediate family members of 9/11 decedents who received VCF1 money via a will or intestacy had indeed received inheritances and not awards, and therefore their eligible USVSST claims would not be subject to the "controlling" language or its net zero calculation.

13. Without this change of interpretation, every 9/11 family member who received any VCF1 money as an inheritance by virtue of the distribution of an estate's VCF1 award would, despite clear USVSST eligibility, have received zero from the USVSST. This interpretation would have continued to zero-out all such 9/11 claimants for the entire ten-year duration of the USVSST.

14. The USVSST Special Master also stated, initially in the town hall conference calls, and later in the published draft FAQ's, that USVSST payments would be decreased by an offset of any monies received by 9/11 families from payments on insurance claims or pension benefits.

15. Again, it was the undersigned *Havlish* counsel that objected, arguing in the town hall conference calls, and again in written comments submitted to the Special Master, that

insurance policy payments are a contractual benefit, bought and paid for by the estates of 9/11 decedents with the foresight and means to purchase them, and such a contractual benefit could not be appropriated by the USVSST Fund such that the offset amount would then be spread to other eligible claimants.

16. The undersigned *Havlish* counsel also argued that the same reasoning applied to pension benefits, which had been earned by the particular 9/11 decedent over many years of work.

17. Finally, the undersigned *Havlish* counsel argued that the law establishing the USVSST did not, on its face, authorize or even imply any offsets whatsoever, and none could properly be inferred by the Special Master.

18. On these issues, the Special Master also reversed course and ultimately determined that neither insurance payments nor pension benefits would be offset against any USVSST payments awards. Although it appears the Special Master may not have accepted *Havlish* counsel's argument that no offsets are authorized by the law, there apparently have been, in fact, no (or very few) offsets applied by the Special Master in calculating USVSST payments, other than an offset that creates the net zero result as to spouses and then minor dependent children of 9/11 decedents, which the Special Master inferred from the "controlling" language for a somewhat different reason.

19. The Special Master interpreted the "controlling" provision to result in a net zero payment to all eligible USVSST claimants who are spouses or then minor children of 9/11 decedents and who received $100,000 payments from the VCF1 back in 2002-03.

20. The ATSSA did authorize payments of $100,000 to spouses and minor dependent children, but did so specifically as part of the VCF1 awards *to the 9/11 decedents' estates*. Thus,

all such spouses and the minor dependent children of 9/11 decedents who hold FSIA judgments have been deemed eligible for USVSST payments but have received no payments because, by the Special Master's interpretation, the "controlling" language has caused their payments to be calculated as a net of zero ($100,000 {instead of $12,500,000 or $8,500,000} minus $100,000 = $0).

21.     The undersigned *Havlish* counsel argued in the town hall conference calls, and again in written comments submitted to the Special Master, and yet again in a telephone hearing with the Special Master, that this interpretation was wrong (as well as patently unfair).  The Special Master agreed it was patently unfair but did not change his interpretation, apparently because the ATSSA authorizes such $100,000 payments.

22.     *Havlish* counsel maintains that the Special Master's interpretation remains incorrect as to these spouses and children because the ATSSA authorizes those $100,000 payments expressly as an element of non-economic losses *within the awards to 9/11 decedent estates*.  Spouses and children were not listed in the ATSSA as "eligible claimants" entitled to receive "awards" or "award determinations" in their own right.  *See* 28 C.F.R. §104.2(b); *cf.* §104.3(b) and (c).  Instead, their $100,000 payments were paid "for claims on behalf of decedents" – including money "for" – not "to" – the spouses and dependents.  This is specifically stated in §104.44 of the ATTSSA:

> **Determination of presumed noneconomic losses for death for claims on behalf of decedents.**  The presumed non-economic losses for an eligible death shall be $250,000 plus an additional $100,000 for the spouse and each dependent of the deceased victim. Such presumed losses include a noneconomic component of replacement services loss.

23.     Because only the 9/11 decedents' estates were "eligible claimants," it was the estates' "awards" that caused $100,000 payments to spouses and minor dependent children.  *See*

§104.41 ("in determining the amount of compensation to which a claimant is entitled, the Special Master shall take into consideration the harm *to the claimant*, the facts of the claim, and the *individual circumstances of the claimant. The individual circumstances of the claimant may include the financial needs or financial resources of the claimant or the victim's dependents and beneficiarie*s."). (*Italics added*.)

24. Thus, all of the Responding Plaintiffs who received VCF1 money (lamentably, other than spouses and children who received $100,000 from the VCF1 in 2002) via an inheritance from a 9/11 decedent, or received insurance payments from their loved one's death, or received their loved one's pension benefits, will benefit from *Havlish* counsel's advocacy on behalf of 9/11 families generally in regard to the USVSST Fund Special Master's interpretation of the law. No one else was there to so advocate for the 9/11 families because, as of the spring and summer of 2017, no (or few) 9/11 families other than the *Havlish* and *Hoglan* Plaintiffs had obtained FSIA judgments against Iran for its direct and material support of the 9/11 hijackers.

Dated: March 1, 2019
Washington, DC

Respectfully submitted,

*[signature]*

Timothy B. Fleming
*Of Counsel*
WIGGINS CHILDS PANTAZIS FISHER GOLDFARB, PLLC
1211 Connecticut Avenue, NW, Suite 420
Washington, D.C. 20036