October 10, 2019

Hon. Sarah Netburn, U.S.M.J.
United States District Court, Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

    Re: **In re Terrorist Attacks on September 11, 2001**
       **Case No. 03-MDL-01570 (GBD)(SN)**
       **Response to October 3, 2019 Order**

Dear Judge Netburn:

  We are plaintiffs in the <u>Ashton</u> cases who were formerly represented by the Baumeister & Samuels, P.C. ("B&S") law firm. We are submitting this letter in response to the Court's Order of October 3, 2019, directing us to file a brief letter providing the basis for our opposition to the entry of an attorney charging lien in B&S's favor.

  We oppose B&S's claim for a charging lien because, during the course of their representation of us, B&S and its attorneys, specifically Michel F. Baumeister, Esq. and Dorothea M. Capone, Esq., committed multiple acts of improper conduct.

  Initially, B&S solicited us through prior B&S clients from a support group that those clients started for 9/11 victims' families. Through B&S's statements at meetings and through the retainer, we understood that B&S would advocate for our rights and best protect our interests, whether through litigation, political lobbying, or with respect to any funds set up to help recovering 9/11 families. We later discovered that B&S's approach was to their self-interest. They did nothing but ministerial paper-pushing.

  After we retained B&S, they exerted undue pressure on us to enter VCF1, even though we had repeatedly told them that we wanted to instead sue the airlines and other liable parties. We understand that B&S prepared a complaint on our behalf, solely because there was a deadline looming, and then continued pressuring us to submit to VCF1 with the threat that there would be no recovery against the airlines. Eventually, we relented to B&S's pressure and agreed to enter VCF1. In hindsight, it appears to us that B&S simply did not want to put in the time and effort that it would take to sue the airlines and delay their fees with a litigation that was likely to take many years. In any event, B&S submitted applications to VCF1 on behalf of our respective deceased loved-ones' estates.

B&S joined us to a complaint naming the Islamic Republic of Iran as a defendant, and then utterly failed to properly pursue the case. Rather, B&S's apparent strategy was to simply follow Jim Kreindler's lead and copy what he was doing. B&S then joined us to Kreindler's lawsuit against the Kingdom of Saudi Arabia. Kreindler, and therefore B&S, pursued the Saudi Arabia case to the exclusion of the Iran case. Whatever actual work B&S may have done or may be doing in either case is a mystery to us, because B&S does not keep its clients informed. From what we can tell, however, B&S appears to be merely tagging along with the Plaintiff's Executive Committee, filling out forms, and collecting attorney's fees.

While B&S was ignoring the Iran litigation, our new attorneys, the Wiggins Child consortium, were actively and diligently pursuing the case on behalf of the Havlish plaintiffs. The Wiggins consortium gave the Iran case proper attention and their work was instrumental in the Havlish plaintiffs (and eventually all plaintiffs) obtaining judgments against Iran.

Subsequently, the United States Victims of State Sponsored Terrorism law was passed, and it allowed Iran judgment holders to recover from a new Fund. The USVSST's Special Master, however, interpreted the new law, which, in his mind, precluded 9/11 widows and children who applied to VCF1 from recovering from the USVSST Fund. The Special Master's "interpretation" did not preclude 9/11 widows and children who chose to sue the airlines from collecting from the Fund, and allowed extended-family (i.e., in-laws, cousins, etc.) judgment holders to recover from the Fund. We did not know at the time (in 2016) that the Special Master was having town-hall style conference calls and accepting written submissions regarding his plans for administering the Fund. Our supposed counsel, B&S, failed to advise us of this opportunity, and failed to appear and advocate for us before the Special Master. B&S failed to properly advocate for us with respect to our preclusion from the Fund.

Instead of advocating for their initial and original clients to get into the Fund, B&S then proceeded to solicit and engage 9/11 victims' extended-family members as clients. This prejudiced their then-existing widow and children clients and clearly presented B&S with a conflict of interest for which they did not properly seek a waiver. After signing up the extended-family members, B&S hastily obtained judgments against Iran on their new clients' behalf, solely for the purpose of submitting applications to the Fund and obtaining a huge amount of attorney's fees for doing very little work. They simply relied on the work done by the Wiggins consortium.

While B&S was in a "fire drill" signing up clients, getting them added to the lawsuit and obtaining them judgments, we were pleading with B&S to take action to help us, to appeal to the Special Master to change his interpretation of the law. B&S failed to take any steps to correct the injustice. Although B&S obtained a judgment for us and submitted our applications to the Fund, after the Special Master awarded us "zero" because our husbands' respective estates recovered from VCF1, they did the absolute minimum and did not truly advance our interests. They were too busy advancing their own pecuniary interests. When our applications were zeroed-out, we expected B&S to appeal to the Special Master for a hearing so that we could address the inequity of the circumstances directly with the Special Master, as was our right under the USVSST law. B&S, however, failed to timely advise us of the results of our applications and negligently permitted the three-day limitations period to expire without seeking a hearing with the Special Master. Presumably, B&S was too busy stumbling over themselves to make millions from signing

up our deceased husbands' extended family and obtain them judgments to recognize the conflicts of interest, ethical breaches, negligence and breaches of fiduciary duty they were engaging in. B&S's actions and omissions caused us to suffer through the unfairness of the Special Master's inexplicable statutory interpretation, and also resulted in the obvious detrimental family situations caused by the extended members recovering millions while the deceased victims' spouses and children got nothing from the Fund.

When we began pushing and repeatedly questioning B&S about these situations and continued to ask them to advocate to change the Fund and help us through this hardship, they did not step up. Rather, having made their money from our loved ones' extended family members, they abandoned us. When we expressed our frustrations with how they failed to advocate for us and instead advanced their own interests by taking the easy money, and just as we were preparing to fire them and replace them with attorneys who would properly protect our interests, and then sue B&S for their breaches of duty, they "beat us to the punch" and purported to terminate the representation.

B&S's self-dealing and self-serving actions did not stop there. When we retained new counsel, B&S would not produce our files (in all likelihood B&S's "files" for us are very thin, so we very much doubt that their objection to this had anything to do with the files' volume). B&S then refused to sign a substitution of counsel form (even though they allegedly fired us) and instead insisted that our new attorneys make a motion to effect the change. B&S then would not consent to the form of our new attorneys' motion, because B&S apparently wanted to set up its plea to the Court for a "charging lien," in an attempt to take even more from us in the future. We cannot sufficiently express to Your Honor how utterly galling it is to have these attorneys self-righteously take this position after their reprehensible conduct and consummate failure in their duties to us.

When it became clear to us that, despite their fiduciary obligations to us, B&S was not going to help us get into the Fund, and instead abandoned us, we then devoted the time and effort that they should have with respect to the Fund issue. In just a few months, we have made significant progress and it appears that we will in fact be permitted to recover from the Fund in the next distribution. Had B&S advocated for us in 2016 and/or not discouraged us from advocating against the Special Master's interpretation of the USVSST law, then the result would have been the same and we would not have missed the first two Fund distributions.

B&S has demonstrated that it is always looking out for themselves rather than their clients' rights. They should not be permitted any lien against any of our future recoveries. The did not adequately represent us, and rather caused us mental anguish, undue stress and other damages. We respectfully urge the Court to deny B&S a charging lien, which would result in an unwarranted windfall for them. B&S does not deserve to receive any recovery, particularly with respect to any recovery from the Fund, for which we, not B&S, did the necessary work to make us eligible for distributions. Alternatively, if the Court has any doubt, then we respectfully request that the Court not rule on this issue now and instead defer a resolution until the matter may be fully litigated.

In submitting this brief letter, we are not intending to waive any of our rights to affirmatively seek redress for B&S's improper actions, whether through litigation or otherwise. Because the Court has requested that we be brief, we have not provided all of the facts and

circumstances that are relevant to B&S's egregious behavior, but rather we are only providing the Court with the primary reasons why we believe B&S is not entitled to the benefit of any portion of a future recovery and should therefore not be granted a charging lien.

Respectfully submitted:

KATHERINE MAHER, individually and on behalf of the ESTATE OF DANIEL MAHER a/k/a DANIEL L. MAHER, DANIEL R. MAHER and JOSEPH F. MAHER

By: _____
Katherine Maher


PATRICIA RYAN, individually and on behalf of the ESTATE OF JOHN J. RYAN, LAURA RYAN, COLIN RYAN and KRISTEN RYAN

By: _____
Patricia Ryan

4