UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) |
|---|---|

*This document relates to*:
*Ashton, et al. v. Kingdom of Saudi Arabia*, No. 17-cv-02003

**PLAINTIFFS' REPLY TO SAUDI ARABIA'S OPPOSITION AND IN FURTHER SUPPORT OF PLAINTIFFS' FED. R. CIV. P. 72 OBJECTIONS TO THE MAGISTRATE JUDGE'S MARCH 13, 2023 ORDER**

The *Ashton* Plaintiffs respectfully submit this brief in reply to the Opposition of the Kingdom of Saudi Arabia, ECF No. 8981, and in further support of their Fed. R. Civ. P. 72 Objections to Magistrate Judge Netburn's March 13, 2023 Order, ECF No. 8923.

1. **Saudi Arabia has failed to affirm to this Court that its answers to interrogatories about the work of Omar al Bayoumi and Fahad al Thumairy inside the U.S. are truthful.** Plaintiffs' motion demonstrates that Saudi Arabia finally needs to address a question at the heart of this litigation: what exactly were the roles and assignments of Bayoumi and Thumairy for Saudi intelligence in the U.S.? Rather than provide a straight answer, Saudi Arabia's Opposition conjures an elaborate smokescreen to divert attention away from the key facts. Saudi Arabia seeks the cover of this Court's prior rulings for its ruse. Saudi Arabia claims that the Court "knew of and approved" its position that it "did not need to provide discovery answers based on information in the possession of its intelligence agencies," ECF 8981 at 14, as if this somehow granted Saudi Arabia a license to lie. At a minimum, this Court should now direct Saudi Arabia to answer Plaintiffs' interrogatories with the information held by Saudi

1

Arabia's intelligence agency. Saudi Arabia has a duty to tell the truth about the intelligence roles of Bayoumi and Thumairy based on its actual, complete knowledge.

2. **Contrary to Saudi Arabia's claims, the requested discovery is compelled by "actual evidence."** The newly produced June 2017 intelligence report of the FBI's Washington Field Office ("June 2017 FBI Report") details how Omar al Bayoumi worked as a "cooptee" of the Saudi Intelligence Agency under the supervision of the Saudi Embassy in Washington, DC. ECF 8871-4 at EO 2638-39. The June 2017 FBI Report is not, as Saudi Arabia complains, merely "rumor", "conjecture", or "speculation", ECF No. 8981 at 1-2. Rather it contains a finding of the U.S. government's premier law enforcement agency, which in the words of the Report itself specifically and unequivocally "*confirms*" the prior allegations that Bayoumi was working inside the U.S. for Saudi intelligence. ECF 8871-4 at EO 2639 (italics added) ("Allegations of Albayoumi's involvement with Saudi intelligence were not confirmed at the time of the 9/11 Commission Report. The above information confirms these allegations.").

3. **Saudi Arabia's interrogatory answers are a continuing fraud on this Court and unfairly prejudice the Plaintiffs.** It is undisputed that, because of the request made by Saudi Arabia at the outset of discovery, the Kingdom's answers to interrogatories and document production to date have excluded information from the Saudi intelligence agency. The Kingdom's answers to interrogatories swore that Bayoumi was a "student" – the false cover that the Saudi government had established for Bayoumi to live inside the U.S.[1] The June 2017 FBI Report shows that the Saudi intelligence agency holds information that Bayoumi performed an intelligence function, and that Saudi Arabia's discovery responses are therefore false. The exclusion of information from the Saudi intelligence agency has unfairly presented the Court and

---

[1] Bayoumi was indicted in the Southern District of California for immigration fraud in September 2001. Thumairy was similarly working for Saudi Arabia in the U.S. under false pretenses as a Saudi government consular official.

2

the Plaintiffs with a misleading and incomplete record. This Court can and should take the necessary remedial action now by ordering Saudi Arabia's lawyers to include information from the Saudi intelligence agency through properly sworn answers to simple interrogatories regarding Bayoumi and Thumairy's true status in the United States during the relevant time period.[2] Responding to the Court's order would not be unduly burdensome on Saudi Arabia and would prevent further unfair prejudice to the Plaintiffs.

4. **Saudi Arabia's citation to Omar al Bayoumi's testimony compounds its ongoing fraud on this Court and the unfair prejudice.** Saudi Arabia cites the June 2021 deposition testimony of Omar al Bayoumi (which it continues to argue should be kept under seal) that "he is not a Saudi intelligence officer, has never been one, and has never had any assignment from a Saudi intelligence agency." ECF 8981 at 2.[3] The carefully worded leading questions from Saudi Arabia's attorney at the deposition, along with Bayoumi's scripted responses, offer an example of the tradecraft deployed by Saudi Arabia and its attorneys to mislead this Court and the Plaintiffs. Bayoumi's denial was deliberately narrow in scope: first, he denied having been an intelligence "officer," but failed to address his relevant work as a "cooptee;" second, he denied that his assignments came "from a Saudi intelligence agency," but failed to account for his taskings and reporting chain through officials at the Saudi Embassy (led by the Saudi Ambassador, Prince Bandar) in Washington, DC. This Court should not countenance Saudi Arabia's blatant gamesmanship in shaping its discovery responses and finessing the deposition testimony of its officials to evade the truth.

---

[2] Saudi Arabia has already been caught in material misrepresentations regarding the role and status of Thumairy. It provided Thumairy with diplomatic cover and reported to the 9/11 Commission that he worked at the Saudi Consulate in Los Angeles. At his deposition, however, Thumairy testified that he never worked at the Consulate, but rather was an Imam at the King Fahd Mosque, which was funded and controlled by Saudi Arabia.

[3] The same citation to Bayoumi's deposition testimony is repeated, slightly paraphrased, later in Saudi Arabia's brief, ECF 8981 at 13: "[Al Bayoumi] testified that he was not and had never been a Saudi intelligence officer and never had any assignment for any Saudi intelligence agency."

3

5. **Plaintiffs have not had an "adequate" or fair opportunity to obtain discovery.** Contrary to Saudi Arabia's argument, the record is not "well developed," ECF 8981 at 14. Rather, it is uncontested that the record contains a significant gap because all of Saudi Arabia's discovery responses omitted information from its intelligence agency. Plaintiffs were not only denied basic discovery from Saudi Arabia on this central issue but were thus prevented from properly exercising their rights to cross-examine Bayoumi, Thumairy, and other Saudi government witnesses. The June 2017 FBI Report and other documents about Bayoumi's and Thumairy's work for Saudi intelligence were withheld by the FBI from its original production (presumably as a "state secret") and were only released because of President Biden's Executive Order 14040 of September 3, 2021 – after depositions had concluded. Plaintiffs' opportunities to obtain truthful and complete information from Saudi Arabia have been severely and unjustly affected, and the record is incomplete as a result.

6. **There is no unfair prejudice to Saudi Arabia.** Saudi Arabia has demonstrated that it can provide answers promptly in response to an Order from this Court. In June 2018, once it had secured the order it sought to exclude its intelligence agency from discovery, Saudi Arabia responded to Plaintiffs' interrogatories within three weeks. Responding truthfully to direct interrogatories should occur promptly since the information requested is already within Saudi Arabia's actual knowledge. Saudi Arabia's comity argument is contrary to this Court's existing Order that Plaintiffs are entitled to discovery about the "nature and scope of the agency" of the work of Bayoumi and Thumairy for the Saudi government. *In re Terrorist Attacks on September 11, 2001*, 298 F. Supp. 3d 631, 651 (S.D.N.Y. 2018). Relying purely on lawyer's argument, Saudi Arabia asserts that it has interests "in protecting its sensitive intelligence files." ECF No. 8981 at 16. But Saudi Arabia has no right to conceal information about the work of its agents

inside the U.S. who provided material support to Al Qaeda terrorists. Even if this Court were to identify legitimate concerns about burden or sensitivity, the Court can tailor interrogatories and document discovery to ensure that it does not go beyond what is necessary to establish the relevant facts. Finally, Saudi Arabia is the party responsible for the delays in providing information from its intelligence agency. As detailed in our moving papers, Plaintiffs have diligently pursued discovery responses from the Saudi intelligence agency since the outset of discovery, including the filing of motions to compel production. Plaintiffs timely filed this latest request after the Executive Order production was obtained and this Court ruled on Plaintiffs' Rule 54(b) motions.[4]

7.  **Saudi Arabia ignores the proof regarding the Saudi government support network that was used to provide material assistance for 9/11 hijackers Nawaf al Hazmi and Khalid al Mihdhar.** Saudi Arabia quotes selectively from the FBI's May 2021 Electronic Communication "to administratively close" the investigation into Bayoumi and Thumairy. Notably, Saudi Arabia overlooks the sections of that same May 2021 Communication in which the FBI detailed how the Saudi Embassy controlled a network of "Saudi Sunni extremists operating inside the United States," including a "Southern California based network" led by Thumairy and another Saudi government official and diplomat, Mohamed al Muhanna, who worked under Thumairy. The Report describes Thumairy himself as a "hard core extremist." ECF 7584-1, at 4-5. Saudi Arabia completely ignores the FBI's subsequent July 2021 Electronic

---

[4] Plaintiffs filed a letter-motion pursuant to the applicable rules, Hon. Sarah Netburn Indiv. R. P. Civ. Cases, II.C., requesting a conference to address this discovery request and leave to file a formal motion that would include additional materials, presently deemed confidential, from the Metropolitan Police Service (MPS) production. Magistrate Judge Netburn did not hold a conference and denied Plaintiffs' letter-motion outright, resulting in this motion. Saudi Arabia ignores the procedural history of this motion when it claims that Plaintiffs' stated intent to rely on additional confidential materials "should not be taken seriously," ECF 8981 at 12. We are quite prepared to reemphasize the seriousness of our intent by filing additional MPS documents and other information in support of our formal motion to compel discovery.

Communication cited by Plaintiffs in their motion, which similarly sets forth the roles of Bayoumi and Thumairy and the Saudi intelligence agency in what the FBI described as the "Saudi (Wahhabi) / Salafi / militant network" that "was created, funded, directed and supported by the KSA [Kingdom of Saudi Arabia] and its affiliated organizations and diplomatic personnel within the U.S." ECF 8871-3 at EO 3482, 3490.

## CONCLUSION

Magistrate Judge Netburn's failure to require Saudi Arabia to provide truthful, complete interrogatory answers and further discovery encompassing its intelligence agency constitutes reversible error that needs to be corrected by this Court. The Second Circuit's holding in *In re 650 Fifth Ave. and Related Properties*, 934 F.3d 147, 159 (2d Cir. 2019), overturning a district court for its failure to order the United States government to produce discovery, is on point. Saudi Arabia attempts to distinguish that case based on its flawed premise that discovery here was "well developed," ECF 8981 at 14. Saudi Arabia should no longer be permitted to hide the truth through its carefully crafted, fraudulent discovery responses and evasion of key discovery of the Saudi intelligence agency.

Dated:  New York, New York
April 11, 2023

KREINDLER & KREINDLER LLP

By: /s/ *Steven R. Pounian*
Steven R. Pounian, Esq.
James P. Kreindler, Esq.
Andrew J. Maloney, Esq.
Megan W. Benett, Esq.
James Gavin Simpson, Esq.
485 Lexington Avenue
New York, New York 10017
Tel.: 212-687-8181
Email: spounian@kreindler.com
*Attorneys for Ashton Plaintiffs*

SPEISER KRAUSE, PC
Frank H. Granito, III, Esq.
Douglas A. Latto, Esq.
Jeanne M. O'Grady, Esq.
800 Westchester Avenue, Suite S-608
Rye Brook, New York 10573
Tel: (914) 220-5333
*Attorneys for Ashton/Burlingame Plaintiffs*

BAUMEISTER & SAMUELS, P.C.
Michel F. Baumeister, Esq.
Dorothea M. Capone, Esq.
140 Broadway, 46th Floor
New York, New York 10005
Tel: (212) 363-1200
*Attorneys for Ashton/Bauer Plaintiffs*